# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JENIKA MAYER,

       Plaintiff,

vs.                                                                                      No. CIV 18-0666 JB\SCY

BERNALILLO COUNTY; ERIC W.
SCHULER, Individually and in his official
capacity; THERESA BACA SANDOVAL,
Individually and in her official capacity; JOHN
OR JANE DOE BCSO SHERIFF OFFICERS,
A, B, C, D, E and F; MARILYN JONES;
GARY JONES; ROBERT LONG;
STEPHANIE LONG, and NATHANIEL
LONG,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Bernalillo County's Motion to

Dismiss Under Rule 1-012, filed July 19, 2018 (Doc. 12)("Motion"). The Court held a hearing on

September 25, 2018. The primary issues are: (i) whether the Defendant Bernalillo County is a

suable entity under New Mexico law, pursuant to N.M. Stat. Ann. § 4-46-1; (ii) whether N.M. Stat.

Ann. § 4-46-1, along with rule 17 of the Federal Rules of Civil Procedure, may limit the parties to

a § 1983 claim, requiring that all § 1983 claims against Bernalillo County be brought against the

Board of County Commissioners of the County of Bernalillo; and (iii) whether the Court should

allow Mayer leave to amend the Complaint to assert claims against the Board of County

Commissioners of the County of Bernalillo, when Mayer has not filed a Motion to Amend in

compliance with the Local Rules. The Court concludes that: (i) under New Mexico law, N.M.

Stat. Ann. § 4-46-1 requires that the county be sued in the name of the Board of County

Commissioners of the County of Bernalillo; (ii) pursuant to rule 17 and N.M. Stat. Ann. § 4-46-1,

§ 1983 claims against Bernalillo County must be brought against the Board of County Commissioners of the County of Bernalillo; and (iii) the Court will allow Mayer leave to amend to assert claims against the Board of County Commissioners of the County of Bernalillo. Accordingly, the Court grants the Motion to Dismiss in part, dismissing Defendant Bernalillo County without prejudice, and grants Mayer leave until December 24, 2018, to amend her complaint to substitute as a defendant the Board of County Commissioners of the County of Bernalillo.

## FACTUAL BACKGROUND

The Court draws its facts from Mayer's Complaint for Negligence Per Se, Civil Conspiracy, Intentional Infliction of Emotional Distress, Violation of New Mexico Tort Claims Act, and the Fourteenth Amendment of the U.S. Constitution ¶ 1, at 1, filed in state court April 11, 2018, filed in federal court July 12, 2018 (Doc. 1-1)("Complaint").[1] Bernalillo County removed the case to federal court. See Notice of Removal, filed July 12, 2018 (Doc. 1)("Notice of Removal"). The Court accepts Mayer's factual allegations as true for the limited purpose of deciding the Motion. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)("Iqbal")(clarifying the "tenet that a court must accept as true all of the [factual] allegations contained in a complaint" (alteration added)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007))); Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008)(concluding that, in the motion to dismiss posture,

---

[1] Mayer filed the Complaint on April 11, 2018, in state court in Mayer v. Bernalillo Cty., No. CIV D-202-2018-02880 (Second Judicial District Court, County of Bernalillo, State of New Mexico), and then Bernalillo County removed the case to federal court, see Notice of Removal ¶ 1, at 1.

a court must "accept as true all well-pleaded facts, as distinguished from conclusory allegations").

With that understanding of the allegations, Plaintiff Jenika Mayer is a resident of Bernalillo County, in the State of New Mexico. See Complaint ¶ 1, at 1. The Joneses (Gary Jones and Stephanie Jones), and the Longs (Robert Long, Stephanie Long, and Nathaniel Long)("Jones and Long Defendants") owned neighboring property in the same subdivision and were litigants in a state suit, Mayer v. Smith, 2015-NMCA-060, 350 P.3d 1191, concerning an easement crossing Mayer's property. See Complaint ¶¶ 16-17, at 3. In Mayer v. Smith, Mayer "brought suit against another neighbor [-- Susan Smith --] to prevent the cutting and removal of trees within the easement [over her property]." 2015-NMCA-060, ¶ 36, 350 P.3d at 1194. "As the trees grew in the easement, Plaintiff used her fence to include them in her property, resulting in a nine-to-eleven-foot area becoming inaccessible to Intervenors [-- the Jones and Long Defendants]." 2015-NMCA-060, ¶ 36, 350 P.3d at 1194. The Court of Appeals of New Mexico concluded that Mayer was "required to remove her fence from the easement." 2015-NMCA-060, ¶ 36, 350 P.3d at 1200. On March 2, 2015, in Mayer v. Smith, 2015-NMCA-060, ¶ 36, 350 P.3d 1191, the Court of Appeals of New Mexico remanded the case for proceedings consistent with the opinion, regarding the trees that Mayer had planted in the easement over her property and requiring Mayer to remove the trees. See Complaint ¶ 19, at 3 (citing Mayer v. Smith, 2015-NMCA-060, ¶ 36, 350 P.3d at 1200). Mayer contends that one of the outcomes of the Court of Appeals of New Mexico's decision "was the fact that Ms. Mayer still had the right to present her evidence after the Jones and Long Defendants appealed an involuntary dismissal as provided for by Rule 1-041(B) NMRA." Complaint ¶ 20, at 3 (emphasis in original). Mayer contends that:

> If a dismissal made under Rule 1-041(B) is reversed on appeal, the appellate court will remand a non-jury case to the district court for further proceedings, and the defendant (Ms. Mayer in that case) may then present any evidence she may have. (*See Bogle v. Potter*, 1961-NMSC-025, ¶ 19, 68 N.M. 239, 360 P.2d 650).

Complaint ¶ 21, at 3.

Mayer contends that the Jones and Long Defendants "could not abide the opinion from the Court of Appeals," Complaint ¶ 22, at 3, and that, before allowing Mayer to present any evidence, on October 13, 2015, the Jones and Long Defendants "knowingly filed an erroneous Completion of Briefing with the district court," informing the court that their Motion to Alter and Amend the Judgment was "ripe for adjudication." Complaint ¶ 24, at 4.[2] Mayer appealed the Altered and Amended Judgment. Complaint ¶ 26, at 4. Later in November, 2015, the Jones and Long Defendants entered Mayer's property "without notice," intending to cut the trees on the easement. Complaint ¶ 28, at 4. The Jones and Long Defendants "brought two deputies with them to prevent Ms. Mayer from interfering with those activities." Complaint ¶ 28, at 4. Mayer showed the deputies a copy of her appeal of the Altered and Amended Judgment, prompting the deputies to order the Jones and Long Defendants to leave, which they did. See Complaint ¶ 28, at 4.

Mayer contends that, sometime later, the Jones and Long Defendants communicated ex

---

[2]The New Mexico district court entered an amended judgment and order on October 22, 2015. See Jenika Mayer v. Susan Smith et al., N.M. Cts. Case Lookup, https://caselookup.nmcourts.gov/caselookup/app?component=cnLink&page=SearchResults&service=direct&session=T&sp=SD-202-CV-200907967 (last visited Nov. 26, 2018). Mayer appealed from the Amended Judgment and Order on November 16, 2015. See Jenika Mayer v. Susan Smith et al.

parte with Eric Schuler, an Assistant Bernalillo County Attorney.  See Complaint ¶ 29, at 5.  On December 30, 2015, Mr. Schuler emailed Annette Regan,[3] copying Mr. Schuler's supervisor, Theresa Baca Sandoval, and the Jones and Long Defendants' attorney, and informing Regan that, "if she got a call to keep the peace at 270 Skyland Blvd (Ms. Mayer's property), she should allow the people to cut down the trees."  Complaint ¶¶ 30-31, at 5.  Mr. Schuler did not send the email to Mayer or her attorney, and Mayer contends that the Jones and Long Defendants, Mr. Schuler, and Ms. Sandoval "conspired to keep this ex parte communication a secret from Ms. Mayer and her lawyer," Complaint ¶ 33, at 5; "Mr. Schuler had no duty to get involved and take sides in a civil matter," Complaint ¶ 34, at 5; "Mr. Schuler did not cite the correct statute in his ex parte email," Complaint ¶ 35, at 5; "Mr. Schuler did not bother to get all the facts before he made a legal conclusion," Complaint ¶ 36, at 5; "Mr. Schuler's legal conclusion was wrong," Complaint ¶ 37, at 5, and "Mr. Schuler did what the Jones and Long Defendants asked without any independent investigation on his part," Complaint ¶ 38, at 6.  Mayer contends that Ms. Sandoval did not "effectively monitor Mr. Schuler."  Complaint ¶ 39, at 6.

Mayer alleges that, on April 11, 2016, the Jones and Long Defendants came to her property and began to cut the trees within the easement, prompting her to call the Bernalillo County Sheriff's Office ("BCSO"), which sent an armed sergeant and five deputies to her property.  See Complaint ¶¶ 40-42, at 6.  Upon the sergeant and deputies' arrival, they did not speak with

---

[3]Mayer does not explain, in her Complaint, who Annette Regan is, and the Court was not able to confidently determine her position through its own research.  The Court infers that Regan is a Bernalillo County employee.

Mayer, but, acting on the email that Mr. Schuler sent to Regan in 2015, see Complaint ¶¶ 43-44, at 6, they ignored Mayer's pending appeal, and allowed the Jones and Long Defendants to "exercise the post-judgment self-help remedy of cutting down the trees," Complaint ¶ 50, at 7.

Mayer contends that: "The officers appeared in such large numbers to frighten and intimidate Ms. Mayer. The Defendants' intent was to cause as much emotional distress to Ms. Mayer as possible." Complaint ¶ 45, at 6. Mayer alleges that the Jones and Long Defendants knew she suffered from post-traumatic stress disorder ("PTSD"),[4] and that, as a direct consequence of their actions, she "suffered immediate and severe trauma." Complaint ¶¶ 46-47, at 6. Mayer alleges that she experienced "new and persistent PTSD symptoms" as a result of her trauma, which the Jones and Long Defendants caused, "including, but not limited to, depression, panic attacks, physical pain, mental anguish and grief that have not yet resolved." Complaint ¶ 48, at 7. Mayer contends that, on November 30, 2016, "the district court found that the Jones and Long Defendants had made an ex parte communication with the court when they filed their Completion of Briefing on October 13, 2015 and that the Alter [sic] and Amended Judgment was filed erroneously, and

---

[4]According to the Mayo Clinic,

> Post-traumatic stress disorder (PTSD) is a mental health condition that's triggered by a terrifying event -- either experiencing it or witnessing it. Symptoms may include flashbacks, nightmares and severe anxiety, as well as uncontrollable thoughts about the event.

Post-traumatic Stress Disorder (PTSD), Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/post-traumatic-stress-disorder/symptoms-causes/syc-20355967 (last visited Nov. 26, 2018).

the court vacated their judgment."  Complaint ¶ 27, at 4.[5]

## **PROCEDURAL BACKGROUND**

Bernalillo County removed the case to federal court on July 12, 2018.  See Notice of Removal ¶ 1, at 1.  In the Notice of Removal, Bernalillo County "exercises its right to remove this action from the Second Judicial Court, County of Bernalillo, State of New Mexico, where the case is now pending," asserting that the Court has original jurisdiction as provided in 28 U.S.C. § 1331, because Mayer's action, "upon information and belief, arises out of alleged violations of the Fourteenth Amendment [to the Constitution of the United States of America] (42 U.S.C. § 1983) . . . or other applicable federal statute."  Notice of Removal ¶¶ 1-2, at 1.  In filing the Notice of Removal, Bernalillo County did not waive jurisdictional issues and clarified that, instead, "Bernalillo County will be filing a dispositive motion within the time allowed by the Rules of Civil Procedure."  Notice of Removal at 1 n.1.  Bernalillo County waives service of process but does not waive any defense or jurisdictional argument.  See Notice of Removal ¶ 3, at 2.  Bernalillo County states that it timely filed the Notice of Removal and attaches and incorporates by reference the Complaint and a Copy of the New Mexico Courts Lookup page,[6] filed July 12, 2018 (Doc. 1-

---

[5]The New Mexico district court entered an "Order Denying Motion for Order to Show Cause, Vacating Amended Judgment and Directing the Parties to Brief the Issues Related to the Appropriate Form of Judgment to be Entered and Address Any Remaining Issues."  Jenika Mayer v. Susan Smith et al, N.M. Cts. Case Lookup, https://caselookup.nmcourts.gov/caselookup/app?component=cnLink&page=SearchResults&service=direct&session=T&sp=SD-202-CV-200907967 (last visited Nov. 26, 2018).

[6]The New Mexico Courts Lookup page refers to an online application that

gives access to New Mexico Supreme Court, Court of Appeals, District

2).  Complaint ¶¶ 5-6, at 2.  Bernalillo County states that the Jones and Long Defendants, "who have been served, consent to the filing of this Notice of Removal."  Complaint ¶ 8, at 2.

In the Complaint, Mayer asserts claims against Bernalillo County, Mr. Schuler, individually and in his official capacity as Assistant Bernalillo County Attorney, Ms. Sandoval, individually and in her official capacity as Deputy Bernalillo County Attorney, John or Jane Doe BCSO Sheriff Officers, A, B, C, D, E, and F, and the Jones and Long Defendants.  See Complaint at 1.  Mayer asserts the following claims: (i) negligence per se, against the Jones and Long Defendants for intentionally entering Mayer's property, and damaging and destroying her trees, see Complaint ¶ 53, at 7, and against the Defendant employees of Bernalillo County, who helped and approved of the Jones and Long Defendants' actions, see Complaint ¶ 55, at 8; (ii) civil conspiracy, against the Defendants,[7] for conspiring to achieve economic and strategic goals

---

Court, Magistrate Court and Municipal Court data.  Municipal court data is limited to criminal Domestic Violence and DWI historic convictions from September 1, 1991 onwards.

District and Magistrate case information is updated every day.  It is therefore, current to within 24 hours of the time data is entered into a court's database.  Cases filed prior to the completion of the statewide court automation project in June 1997, may exist in a separate database, depending on the individual court.

New Mexico Courts Case Lookup, Welcome to Case Lookup, https://caselookup.nmcourts.gov/caselookup/app (last visited Dec. 11, 2018).

[7]Mayer does not specify against which Defendants she asserts her civil conspiracy claim, but the Court infers that Mayer asserts the claim against all of the named Defendants. See Complaint ¶¶ 62-66, at 8-9.

benefiting the Defendants and their co-conspirators to Mayer's harm and detriment, <u>see</u> Complaint ¶¶ 62-66, at 8-9; (iii) intentional infliction of emotional distress against the Defendants[8] for intentionally or recklessly causing Mayer extreme, severe, and continuous mental distress, <u>see</u> Complaint ¶¶ 67-72, at 9; (iv) violation of the Fourteenth Amendment, against the Bernalillo County Defendants,[9] who, acting under color of state law, deprived Mayer of her clearly established constitutionally protected right to life, liberty, and property, without due process of law, <u>see</u> Complaint ¶¶ 73-75, at 9-10; and (v) violation of the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 through 41-4-27 ("NMTCA"), because the BCSO officers are subject to the NMTCA sovereign immunity waiver in § 41-4-12, and Bernalillo County is responsible and liable for its officer-employees' actions undertaken in their official capacity, and for its officer-employees' actions undertaken in reliance on communications from Mr. Schuler, a Bernalillo County employee -- specifically, the Bernalillo County Defendants' actions allowing the Jones and Long Defendants to engage in criminal activity, and failing to perform their duty to protect Mayer's property and right to due process, causing her harm, <u>see</u> Complaint ¶¶ 76-88, at 10-11. Accordingly, Mayer requests compensatory, punitive, and special damages, as well as attorneys' fees and costs, and any other relief the Court may deem just and proper. <u>See</u> Complaint at 12.

---

[8]Mayer does not specify against which Defendants she asserts her intentional-infliction-of-emotional-distress claim, but the Court infers that Mayer asserts the claim against all of the named Defendants. <u>See</u> Complaint ¶¶ 67-72, at 9.

[9]The Court concludes that, by Bernalillo County Defendants, Mayer refers to Bernalillo County, Mr. Schuler, Ms. Sandoval, and the John and Jane Doe BCSO Sheriff Officers.

On July 19, 2018, the Jones and Long Defendants answered Mayer's Complaint. See Answer of Marilyn Jones, Gary Jones, Robert Long, Stephanie Long, and Nathaniel Jones[10] to Plaintiff's Complaint, [Doc. 1-1 Complaint (filed 4/11/18 in State Court)], filed July 19, 2018 (Doc. 11)("Jones and Long Defendants Answer"). The Jones and Long Defendants "deny each and every allegation, statement, matter and thing asserted in Plaintiff's Complaint, except as expressly admitted or otherwise qualified or alleged." Jones and Long Defendants Answer at 1. The Jones and Long Defendants assert the following affirmative defenses: (1) collateral estoppel; (2) res judicata; and (3) failure to state a claim against the Jones and Long Defendants upon which relief can be granted. See Jones and Long Defendants Answer at 8. Bernalillo County has not, as of the date of this Memorandum Opinion and Order, filed an Answer.

### 1. The Motion.

Bernalillo County moves the Court, pursuant to rule 12(b)(2) and rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Mayer's claims against Bernalillo County. See Motion at 1. In the Motion, Bernalillo County argues that it "is not a viable defendant under New Mexico Law." Motion at 1. Bernalillo County asserts that it is not an entity which may be sued under N.M. Stat. Ann. § 4-46-1. See Motion at 1. Section 4-46-1 states:

> In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners of the county of ........., but this provision shall not prohibit county officers, when authorized by law, from suing in their name of office for the benefit of the county.

Motion at 1-2 (quoting N.M. Stat. Ann. § 4-46-1). Bernalillo County contends that, although no

_____

[10]The Answer's title incorrectly identifies Nathaniel Long as Nathaniel Jones.

Supreme Court of New Mexico or Court of Appeals of New Mexico case has interpreted § 4-46-1, decisions from courts outside of this district interpreting identical statutes "establish that dismissal is appropriate." Motion at 2 (citing <u>Calahan v. Jefferson Cty.</u>, 429 P.2d 301 (Colo. 1967); <u>John Deere Plow Co. v. Cty. of Phillips</u>, 48 P.2d 793 (Colo. 1935); <u>Bd. of Cty. Comm'rs v. Churning</u>, 35 P. 918 (Colo. App. 1894)). Bernalillo County argues that the District of New Mexico cases interpreting § 4-46-1 also counsel dismissal as appropriate. <u>See</u> Motion at 2 (citing <u>Gallegos v. Bernalillo Cty. Bd. of Cty. Comm'rs</u>, 272 F. Supp. 3d 1256 (D.N.M. 2017)(Browning, J.)("<u>Gallegos</u>"); <u>Wilson v. Cty. of Lea</u>, No. CIV 16-0328 MCA\GBW, 2016 WL 10539484 (D.N.M. May 16, 2016)(Armijo, C.J.); <u>Angel v. Torrance Cty. Sheriff</u>, No. Civ. 04-0195 BB/WPL (D.N.M. Aug. 23, 2005)(Black, J.)).

Bernalillo County argues that rule 17 of the Federal Rules of Civil Procedure "allows statutes like NMSA § 4-46-1 to control the capacity of governmental entities to be sued for federal claims." Motion at 4. Bernalillo County asserts that, in <u>Gallegos</u>, the Court questioned whether § 4-46-1 could limit the parties to a § 1983 claim, but that the parties in <u>Gallegos</u> did not raise a rule 17 issue. <u>See</u> Motion at 4. Bernalillo County requests that the Court adopt the reasoning of the United States Courts of Appeals for the Eighth and Fifth Circuits, that rule 17 in combination with § 4-46-1 "requires that all claims against the County, including its departments, be brought against the Board regardless of the character of those claims." Motion at 4. Bernalillo County analogizes to an Eighth Circuit case considering a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 ("ADA"), <u>see</u> <u>Lundquist v. Univ. of S.D. Sanford Sch. of Med.</u>, 705 F.3d 378 (8th Cir. 2013)("<u>Lundquist</u>"), in which the Eighth Circuit dismissed the ADA claims

against a defendant, because it was not a viable defendant under the State of South Dakota's laws. <u>See</u> Motion at 5. Bernalillo County also cites to <u>United States v. City of New York</u>, 683 F. Supp. 2d 225 (E.D.N.Y. 2010)(Garaufis, J.), <u>vacated on other grounds by</u> <u>United States v. City of New York</u>, 717 F.3d 72 (2d Cir. 2013), and to <u>Darby v. Pasadena Police Department</u>, 939 F.2d 311 (5th Cir. 1991)("<u>Darby</u>"), in support of its assertion that rule 17 dictates that state law determines capacity to be sued. <u>See</u> Motion at 6-7.

Bernalillo County requests, for the foregoing reasons, that the Court dismiss all claims against it with prejudice, pursuant to rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. <u>See</u> Motion at 7. "In other words, under NMSA § 4-46-1, a plaintiff may not sue the entire County for any cause of action; therefore, dismissal with prejudice as to this defendant is appropriate." Motion at 7.

### 2. **The Response**.

Mayer responds to the Motion. <u>See</u> Plaintiff's Response to Bernalillo County's Motion to Dismiss Under Rule 1-012, filed August 6, 2018 (Doc. 13)("Response"). In the Response, Mayer asserts that, if only state claims are involved, the proper entity to defend the suit is the Board of County Commissioners of the County of Bernalillo, but when claims under 42 U.S.C. § 1983 are made, the argument changes. <u>See</u> Response at 1.

Mayer does not directly respond to the legal aspects of the Motion's immunity argument. <u>See</u> Response at 1-2. Rather, Mayer states that, in footnote 4 of <u>Gallegos</u>, the Court "reviewed the relationship between state laws which limit jurisdiction like NMSA § 4-46-1 and the Supremacy Clause of the Constitution of the United States. The conclusion was that state laws cannot limit

- 12 -

jurisdiction in § 1983 claims."  Response at 1-2 (citing <u>Gallegos</u>, 272 F. Supp. 3d at 1269 n.4).

Mayer requests that, pursuant to rule 17(3) of the Federal Rules of Civil Procedure, the Court allow

her to amend her Complaint to assert claims against the Board of County Commissioners of the

County of Bernalillo, instead of against Bernalillo County.  <u>See</u> Response at 2.  Mayer quotes from

rule 17(3): "The court may not dismiss an action for failure to prosecute in the name of the real

party in interest until, after an objection, a reasonable time has been allowed for the real party in

interest to ratify, join, or be substituted into the action."  Response at 2 (quoting Fed. R. Civ. P.

17(3)).  Mayer argues, finally, that the United States Court of Appeals for the Tenth Circuit has

stated that the federal rules "erect a powerful presumption against rejecting pleadings for failure

to state a claim."  Response at 2 (quoting <u>Maez v. Mtn. States Tel. and Tel., Inc.</u>, 54 F.3d 1488,

1496 (10th Cir. 1995)).

     **3.**     **<u>The Reply</u>.**

     Bernalillo County replies to Mayer's arguments.  <u>See</u> Bernalillo County's Reply in Support

of its Motion to Dismiss at 1, filed August 20, 2018 (Doc. 14)("Reply").  Bernalillo County argues

that the Response's reliance on <u>Gallegos</u>' footnote 4 is misplaced, because the parties in <u>Gallegos</u>

did not brief the cases that the Motion cites and did not reference rule 17.  <u>See</u> Reply at 1-2.

Bernalillo County argues, accordingly, that <u>Gallegos</u> does not control and that it is legally

distinguishable, because the parties in <u>Gallegos</u> did not present the Court with a rule 17 argument,

or because <u>Gallegos</u> was decided in error based on rule 17 and the Motion's cited authority.

<u>See</u> Reply at 2.

     Bernalillo County argues that the Court should dismiss Bernalillo County from the case

- 13 -

with prejudice, because Mayer's rule 17(a)(3) real-party-in-interest argument does not apply. See Reply at 2-3. Bernalillo County asserts that Mayer "attempts to confuse Rule 17(a)(3) [the real-party-in-interest section] with Rule 17(b) [capacity to be sued]." Reply at 2. Bernalillo County contends that the two rule subsections are distinct and, furthermore, that rule 17(a)(3) does not involve an improperly named defendant, as is the case here. See Reply at 2. Bernalillo County argues that rule 17(a)(3) applies only "when the party prosecuting the case is not the real party in interest" and not when there is a suit against a non-viable defendant. Reply at 3.

Next, Bernalillo County asserts that Mayer's implied request to amend her Complaint disregards the New Mexico Local Rules, which require that the party filing a Motion to Amend send a copy to opposing counsel before filing, pursuant to D.N.M. LR-Civ. 7.1(a). See Reply at 4. Bernalillo County asserts that, additionally, D.N.M. LR-Civ. 15.1 requires that the filing party attach a copy of the proposed amended complaint to the motion to amend. See Reply at 4. Bernalillo County asserts that, because Mayer has not complied with D.N.M. LR-Civ. 7.1(a) and 15.1, the Court should deny her request to amend. See Reply at 4. Bernalillo County also argues that Maez v. Mountain States Telephone & Telegraph, Inc., to which Mayer cites for the assertion that there is a powerful presumption against rejecting pleadings, see Response at 2, is an outdated standard and that, instead, Iqbal and Robbins v. Oklahoma, 519 F.3d 1242 (10th Cir. 2008), control, see Reply at 4. Bernalillo County also argues that allowing Mayer to amend her Complaint "would very likely be futile," because it would inappropriately split claims between the state courts and this Court. Reply at 4. Bernalillo County argues, accordingly, that the Court should grant its Motion and dismiss it from the case with prejudice, "because no claim could ever be stated against

'the County' and there is no pending motion to amend."  Reply at 5.

### 4.    The Hearing.

The Court held a hearing on September 25, 2018.  See Draft Transcript of Motion Proceeding at 1:7-9 (taken Sept. 25, 2018)(Court)("Tr.").[11]  The Court began by stating that it would likely order Mayer to amend the Complaint to "drop out Bernalillo County" at least on the state law claims.  Tr. at 2:14-17 (Court).  The Court stated that it would not provide the parties with an immediate answer "about whether the county can be a proper defendant for the 1983 claim."  Tr. at 2:24-25 (Court).  Mayer responded that: "As far as amending the complaint, I think that's the appropriate remedy.  I'm happy to do it."  Tr. at 3:3-5 (Chisholm).

Mayer averred that whether a county is a suable entity under § 1983 is an issue "ripe for a decision, since the district here seems to be split on that issue."  Tr. at 3:12-13 (Chisholm).  The Court asked if this Court is the splitting court, and Mayer responded that the Court was the first to decide the issue in the District of New Mexico, and that "someone split" from it.  Tr. at 3:14-17 (Court, Chisholm).  The Court asked what it said in Gallegos' footnote 4 , since neither party quoted it in their briefing.  See Tr. at 3:20-23 (Court).[12]  Bernalillo County responded that the

---

[11]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited versions.  Any final transcript may contain slightly different page and/or line numbers.

[12]Footnote 4 of Gallegos states:

While § 4-46-1 limits state claims, and § 1983 itself bars claims against a detention center, § 4-46-1 cannot and does not limit § 1983 actions.  No cases specifically address § 4-46-1's ability to limit § 1983, but there are Supreme Court cases at least implying that, generally, states cannot limit § 1983 actions.  In Haywood v. Drown, 556 U.S. 729 (2009)("Haywood"),  a New York statute

divested its state courts of jurisdiction over § 1983 suits that sought damages against corrections officers. See 556 U.S. at 731. In the New York statute, "a prisoner seeking damages from a correction officer will have his claim dismissed for want of jurisdiction and will be left, instead, to pursue a claim for damages against an entirely different party (the State) in the Court of Claims -- a court of limited jurisdiction." 556 U.S. at 734. In this Court of Claims, "in addition to facing a different defendant, plaintiffs in that court are not provided with the same relief . . . . made available in 1983 actions brought in state courts of general jurisdiction." 556 U.S. at 734. In essence, the New York statute said, in a § 1983 case, the plaintiff cannot sue the corrections officer; instead, the plaintiff must sue the state. The state statute thus placed serious limits on whom a plaintiff could sue in a § 1983 action. The question presented was whether limiting § 1983 claims in the state courts in such a manner violated the Supremacy Clause. See 556 U.S. at 731. The Supreme Court held that the statute violated the Supremacy Clause. See 556 U.S. at 733.

The Supreme Court ruled that "state courts as well as federal courts are entrusted with providing a forum for the vindication of federal rights violated by state or local officials acting under color of state law." 556 U.S. at 735. The Supreme Court noted that "a State cannot employ a jurisdictional rule 'to dissociate [itself] from federal law because of disagreement with its content or a refusal to recognize the superior authority of its source.'" 556 U.S. at 736 (quoting Howlett v. Rose, 496 U.S. 356, 371 (1990)). "In other words, although States retain substantial leeway to establish the contours of their judicial systems, they lack authority to nullify a federal right or cause of action they believe is inconsistent with their local policies." 556 U.S. at 736. Addressing the New York statute, the Supreme Court held that "[t]he State's policy, whatever its merits, is contrary to Congress' judgment that *all* persons who violate federal rights while acting under color of state law shall be held liable for damages." 556 U.S. at 736-37 (emphasis in original). "We therefore hold that, having made the decision to create courts of general jurisdiction that regularly sit to entertain analogous suits, New York is not at liberty to shut the courthouse door to federal claims that it considers at odds with its local policy." 556 U.S. at 740. The New York statute "is effectively an immunity statute cloaked in jurisdictional garb. Finding this scheme unconstitutional merely confirms that the Supremacy Clause cannot be evaded by formalism." 556 U.S. at 742. The Supreme Court thus held that the New York statute could not limit § 1983 claims.

Because of Haywood, NMSA § 4-46-1 cannot limit § 1983 claims. It is true

Court, in footnote 4 of <u>Gallegos</u>, referred to <u>Haywood v. Drown</u>, 556 U.S. 729 (2009)("<u>Haywood</u>"), in which the State of New York attempted to limit prisoner claims by enacting a statute stating that prisoners could not bring § 1983 claims against individual corrections officers in courts of general jurisdiction in the State of New York. <u>See</u> Tr. at 3:24-4:27 (Huss). Bernalillo County averred that, instead, prisoners would have to go to a special court,

---

that <u>Haywood</u> is primarily about a state statute limiting § 1983 claims in state court, and the case does not directly address federal court. The reasoning of <u>Haywood</u>, however, that "[t]he State's policy, whatever its merits, is contrary to Congress' judgment that *all* persons who violate federal rights while acting under color of state law shall be held liable for damages," is applicable to both state and federal court. 556 U.S. at 736-37 (emphasis in original). "All persons" references the beginning of § 1983. 42 U.S.C. § 1983. If a state law, § 4-46-1, which says "[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners of the county," N.M. Stat. Ann. § 4-46-1, acted as a limit on § 1983, such a ruling would be contrary to the Supreme Court language that "[t]he State's policy, whatever its merits, is contrary to Congress' judgment that *all* persons who violate federal rights while acting under color of state law shall be held liable for damages," <u>Haywood</u>, 556 U.S. at 736-37 (emphasis in original). Just as New York could not say that, under § 1983, a plaintiff cannot sue a corrections officer, but must instead sue the state, New Mexico is not able to say, in a § 1983 context, that the plaintiff cannot sue BCMDC, but instead, must sue the board of county commissioners. <u>See</u> N.M. Stat. Ann. § 4-46-1. For these reasons, despite there not being a case specifically addressing whether § 4-46-1 can limit § 1983 claims, the Court concludes that § 4-46-1 does not impose the same limit on § 1983 claims that it imposes on state claims. <u>See</u> <u>Clayton v. Pioneer Bank</u>, [No. CIV 07-0680 JB/LAM,] 2008 WL 5787472, at *10 (Browning, J.)(holding that the New Mexico Legislature cannot limit state claims to only being decided in state court, thus precluding them from being joined with federal claims or brought in federal court in diversity; and stating "The appellate process, which New Mexico's Legislature created . . . contemplates, by its express language, exclusive jurisdiction over appeals from the New Mexico Human Rights Commission in the state district courts. The New Mexico Legislature cannot, however, deprive the federal court of jurisdiction that Congress has given it.").

<u>Gallegos</u>, 272 F. Supp. 3d at 1269 n.4.

where they could not "seek attorneys' fees, injunctive relief, and punitive damages even under 1983, because [they wouldn't] be able to name any individuals." Tr. at 4:8-11 (Huss). Bernalillo County asserted that the Supreme Court of the United States stated that, because of the Supremacy Clause, states cannot enact statutes attempting to limit federal causes of action. See Tr. at 4:15-17 (Huss). Bernalillo County averred that the Court stated in footnote 4 of Gallegos that Haywood is "persuasive as to what appellate courts might think about [N.M. Stat. Ann. § 4-46-1]." Tr. at 4:19-22 (Huss). Bernalillo County argued that, unlike the statute in Haywood, § 4-46-1 does not say that a plaintiff may not sue an individual, and get punitive damages and injunctive relief; instead, it controls the capacity to sue or be sued. See Tr. at 4:23-5:3 (Huss). Bernalillo County argued that the Fifth and Eighth Circuits have interpreted rule 17 of the Federal Rules of Civil Procedure to direct the Court to apply state law to determine capacity-to-be-sued questions. See Tr. at 5:18-6:5 (Huss)(citing Lundquist, 705 F.3d 378 (8th Cir. 2013), and Darby, 939 F.2d 311 (5th Cir. 1991)). Bernalillo County averred that Lundquist and Darby are the two most controlling cases that Bernalillo County has been able to find on this question. See Tr. at 6:12-13 (Huss). Bernalillo County averred that there is an interesting series of Colorado cases cited in the Motion, see supra at 10, demonstrating that Colorado courts have said that, if capacity-to-be-sued questions are not raised "and plaintiffs obtain judgments, that there may be questionable enforceability, if you haven't named an entity that could be sued." Tr. at 6:14-20 (Huss). Bernalillo County stated that it is within the statute of limitations, and that there is no relation back problem that would preclude amendment, but that it is advancing the N.M. Stat. Ann. § 4-46-1 argument in every case, in order to obtain uniform judgments and uniform caselaw. See Tr. at 6:25-7:7 (Huss).

Bernalillo County states that the Court's opinion in Gallegos is the only opinion to suggest that state law cannot dictate capacity to be sued under § 1983, but that Gallegos did not consider rule 17 of the Federal Rules of Civil Procedure. See Tr. at 7:8-10 (Huss). Bernalillo County avers that, typically, courts permit amendment without considering the issue. See Tr. at 7:13-15 (Huss). Bernalillo County cited to Lamendola v. Taos County Sheriff's Office, No. CIV 18-0163 KBM/SCY, 2018 WL 4258119 (D.N.M. Sept. 6, 2018)(Molzen, M.J.)("Lamendola"), in which the Honorable Karen B. Molzen, United States Magistrate Judge for the District of New Mexico, ordered supplemental briefing on the differences between the narrow analysis that "lots of courts" have given to the capacity-to-be-sued question, and the Gallegos opinion. Tr. at 7:14-20 (Huss). Bernalillo County asserted that Magistrate Judge Molzen found rule 17 and Lundquist and Darby persuasive and granted the defendant Taos County, New Mexico, Sheriff's Department's motion to dismiss, declining to extend footnote 4 of Gallegos to its context. See Tr. at 7:31-23 (citing 2018 WL 4258119, at *6). Bernalillo County averred that it does not oppose granting Mayer leave to amend her Complaint, "although there is no motion to amend or proposed amended complaint" before the Court. Tr. at 7:25-8:2 (Huss).

Bernalillo County read portions of the Court's analysis in footnote 4 of Gallegos. See Tr. at 8:10-10:9 (Huss)(quoting Gallegos, 272 F. Supp. 3d at 1269 n.4). Bernalillo County averred that the Court "said that, like New York, 4-46-1 might be a limitation on a 1983 case." Tr. at 10:11-12 (Huss). Bernalillo County argued, however, that N.M. Stat. Ann. § 4-46-1 does not limit § 1983 claims, and, that rule 17(b)(3) of the Federal Rules of Civil Procedure directs the court to determine who has the capacity to sue or be sued by looking to state law, which, in New Mexico,

means looking to N.M. Stat. Ann. § 4-46-1.  <u>See</u> Tr. at 10:13-17 (Huss).  Bernalillo County averred, accordingly, that "there is no way to limit an individual capacity claim, no way to limit attorneys' fees, no way to limit injunctive relief."  Tr. at 10:18-21 (Huss).  Bernalillo County argued that § 4-46-1 is not the limit that the court "was concerned with in [<u>Haywood</u>].  Instead, it's simply a capacity statute." Tr. at 10:21-23 (Huss).  The Court stated that it would agree that § 4-46-1 is not the same as the New York statute at issue in <u>Haywood</u>.  <u>See</u> Tr. at 10:24-25 (Court). The Court stated that it held, in <u>Gallegos</u>, that a party cannot sue, "for example a police department, because that's just a division or a portion, a parcel of an entity.  And you can't sue a corrections center; that's a building.  It's not really a separate governmental entity."  Tr. at 10:25-11:4 (Court). The Court stated that there is an entity called the County of Bernalillo, which "may nor may not be sued under state law," but that the Court is "a little concerned about saying the state can tell somebody under 1983 who has to be named."  Tr. at 11:7-10 (Court).  The Court stated that it is hesitant to say that a state may say a party has to sue the board of commissioners under § 1983, "if there actually is an entity called the County of Bernalillo," which the Court believes there is.  Tr. at 11:15-19 (Court).

Bernalillo County stated that there is another case, not binding on the Court, but which Bernalillo County believes is potentially persuasive, because "it comes out of New York four years after the [<u>Haywood</u>] case which also came out of New York," and that is <u>United States v. City of New York</u>, 683 F. Supp. 2d 225.  Tr. at 12:2-8 (Huss).  Bernalillo County averred that, in that case, the "City of New York in its charter had contained very, very similar language to that of 4-46-1 that said: '[']If you want to sue the City of New York, you can't sue, say, the fire department, or

other entities.[']"  Tr. at 12:12-15 (Huss).  Bernalillo County stated that the Honorable Nicholas G. Garaufis, United States District Judge for the Eastern District of New York looked at rule 17(b)(3) of the Federal Rules of Civil Procedure and used it to dismiss the various New York departments.  <u>See</u> Tr. at 12:17-21 (Huss).

Bernalillo County averred that it believes "there are a couple of August opinions in which [the Court] mentioned 4-46-1, at least in passing in other footnotes, that at least with respect to the Tort Claims Act, it applies to state claims."[13]  Tr. at 12:23-13:1 (Huss).  Bernalillo County argued that the Court has held that a department is not a person under 1983 and, therefore, cannot be subject to a 1983 claim, which "allows 4-46-1 to kind of be irrelevant in situations where a plaintiff has named a department."  Tr. at 13:4-8 (Huss).  Bernalillo County argued, however, that here, the application of rule 17(b)(3) "urges the Court to allow the state to decide its capacity to be sued."  Tr. at 13:9-11 (Huss).

Bernalillo County then referred the Court to <u>Lundquist</u>, in which the Eighth Circuit discussed that the Constitution of the State of South Dakota allows the state to decide "which entities can be sued and in which capacity."  Tr. at 13:11-17 (Huss).  Bernalillo County averred that, although, in <u>Lundquist</u>, the Eighth Circuit concluded that the State of South Dakota could not limit § 1983 claims, the Eighth Circuit concluded that the state could say: "Board of Regents, you

---

[13]The Court knows of one opinion from August, 2018, applying § 4-46-1 to the NMTCA in a footnote, although there may be more.  <u>See</u> <u>May v. Dona Ana Cty. Jail</u>, No. CIV 18-0126 JB/LF, 2018 WL 4031063, at *4 n.1 (D.N.M. Aug. 23, 2018)(Browning, J.)("The Court notes that, when May amends his complaint, the proper party to sue for NMTCA purposes may be the Board of County Commissioners of Dona Ana County and not the Dona Ana County Jail." ((citing N.M. Stat. Ann. § 4-46-1)).

have the authority to sue or be sued; School of Medicine, you don't."  Tr. at 13:17-20 (Huss).

Bernalillo County argued that although <u>Lundquist</u> considered a school of medicine and not a police

department, <u>Lundquist</u> stands for the proposition "that the delegation of authority to sue or be sued,

which is what 17(b)(3) directs the Court to look at, is controlled by the state statute."  Tr. at 13:20-

14:1 (Huss).

The Court stated, however, that it does "care, though, under 1983, [about] the ability of

people to sue -- to be able to sue state entities to vindicate federal constitutional rights."  Tr. at

14:11-13 (Court).  Bernalillo County responded that rule 17(b)(3) addresses both state and federal

law capacity-to-be-sued questions.  <u>See</u> Tr. at 14:14-15 (Huss).  The Court stated:

> It doesn't seem to [the Court] it would be inconsistent to say, in federal
> court you're going to have to be able to be -- you have to be a correct plaintiff.
> But under 1983, we're not going to necessarily be bound by federal law as to what
> is a correct defendant.

Tr. at 14:19-24 (Court).  Bernalillo County responded that rule 17(b) says "capacity to sue or be

sued," Tr. at 15:1-2 (quoting Fed. R. Civ. P. 17(b), and rule 17(b)(3) says "for all other parties by

the law of the state in which the court is located," Tr. at 15:2-4 (quoting Fed. R. Civ. P. 17(b)(3)).

Bernalillo County averred that, following rule 17's text, courts should look at what state law says

about the capacity to be sued.  <u>See</u> Tr. at 15:5-7 (Huss).  Bernalillo County argued that:

> [I]t would be a really interesting outcome if a court of limited jurisdiction, such
> as the federal district court, were to enter a judgment against Bernalillo County,
> which then . . . might be unenforceable because it's not an entity that could be
> sued, and the plaintiff went out to try and enforce that judgment.

Tr. at 15:11-18 (Huss).  Bernalillo County averred that, unless the Court maintains jurisdiction

over enforcement, the Court might enter judgment against Bernalillo County that would be

unenforceable in state court.  <u>See</u> Tr. at 15:18-24 (Huss).  Bernalillo County argues that, while the parties may still amend without facing a relation-back issue, Bernalillo County brings the issue to the Court's attention now, because "it comes up in a lot of other cases in the district, some of which have interesting statute of limitations questions, especially when they revolve around departments." Tr. at 16:3-9 (Huss).  Bernalillo County averred, finally, that if the Court elects to make a ruling on this issue, Bernalillo County would "take an interlocutory appeal on the question." Tr. at 16:22-23 (Huss).  Bernalillo County stated that "[i]f everybody agrees, [Bernalillo County is] ready to take that issue up on appeal if it will help clarify the law for the county and for the Court." Tr. at 17:12-14 (Huss).

The Court directed Mayer to amend her Complaint and add the Board of County Commissioners of the County of Bernalillo, at least as far as the state law claims, and stated that it would issue an opinion regarding the § 1983 claims.  <u>See</u> Tr. at 17:16-25 (Court).

     **5.**      **<u>The Notice of Supplemental Authorities.</u>**

After the hearing, Bernalillo County provided Defendant's Notice of Supplemental Authority, filed September 20, 2018 (Doc. 25)("Notice").  In the Notice, Bernalillo County directs the Court to <u>Lamendola</u>, in which, Bernalillo County avers, Magistrate Judge Molzen followed <u>Lundquist</u> and <u>Darby</u> to "hold that Rule 17 allows the State and its subdivisions to utilize a naming statute to control the specific governmental entity which one may sue." Notice at 1.  Bernalillo

County argues, therefore, that <u>Lamendola</u> is persuasive authority supporting the Motion's arguments, and the Motion's cited cases.

<u>**LAW REGARDING RULE 12(B)(2)**</u>

Motions to dismiss under rule 12(b)(2) test the plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction. See <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 153-54 (2d Cir. 1999). Rule 12(b)(2) "sets forth a defense based on 'lack of personal jurisdiction.'" <u>Fabara v. GoFit, LLC</u>, 308 F.R.D. 380, 398 (D.N.M. 2015)(Browning, J.)(quoting Fed. R. Civ. P. 12(b)(2)). In determining personal jurisdiction, a court must test not only the complaint's jurisdictional theory, but also the facts on which jurisdiction is predicated. See <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d at 154 (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction"). Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process requirements. See <u>Overton v. United States</u>, 925 F.2d 1282, 1283 (10th Cir. 1991); <u>Rambo v. Am. S. Ins.</u>, 839 F.2d 1415, 1417 (10th Cir. 1988); <u>Jemez Agency, Inc. v. CIGNA Corp.</u>, 866 F. Supp. 1340, 1342 (D.N.M. 1994)(Burciaga, J.).

The plaintiff need only make a prima facie showing of personal jurisdiction to defeat a rule 12(b)(2) motion to dismiss. See <u>OMI Holdings, Inc. v. Royal Ins. of Can.</u>, 149 F.3d 1086, 1090 (10th Cir. 1998). "A plaintiff may make this *prima facie* showing by demonstrating, by affidavit or other written materials, facts, that, if true, would support the exercise of personal jurisdiction

over defendant." <u>Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC</u>, 186 F. Supp. 2d 1158, 1160 (D. Kan. 2002)(Waxse, M.J.). At this stage of the proceedings, it is not for the court to resolve disputed facts. <u>See</u> <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d 42, 45 (1st Cir. 2002). Rather, the court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." <u>Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.</u>, 290 F.3d at 45 (quoting <u>Foster-Miller, Inc. v. Babcock & Wilcox Can.</u>, 46 F.3d 138, 145 (1st Cir. 1995)). <u>See</u> <u>Tomkins v. Exec. Comm. of S. Baptist Convention</u>, No. CIV 13-0840 JB/CG, 2015 WL 1569034, at *4 (D.N.M. March 31, 2015)(Browning, J.)(concluding that, in considering whether plaintiff has made a prima facie showing of personal jurisdiction over defendant, the Court must take the complaint's allegations as true to the extent the defendant's affidavits do not controvert them.). When "conflicting affidavits are presented, factual disputes are resolved in plaintiff's favor." <u>Behagen v. Amateur Basketball Ass'n of the U.S.A.</u>, 744 F.2d 731, 733 (10th Cir. 1984).

## LAW REGARDING PERSONAL JURISDICTION

When contested,[14] the party asserting the claim has the burden of proving personal jurisdiction. <u>See</u> <u>Wenz v. Memery Crystal</u>, 55 F.3d 1503, 1505 (10th Cir. 1995). To assert personal jurisdiction over a nonresident defendant, federal courts must satisfy state law and federal due process. <u>See</u> <u>Doering v. Copper Mountain, Inc.</u>, 259 F.3d 1201, 1209-10 (10th Cir. 2001). Under due process, the Court's jurisdiction exists if the defendants have "minimum contacts" with

---

[14]Personal jurisdiction can be waived. <u>See</u> <u>Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 703 (1982).

the forum state, which may rest on specific or general personal jurisdiction, and the exercise of personal jurisdiction must comport with "traditional notions of fair play and substantial justice." Dudnikov v. Chalk & Vermilion Fine Arts Inc., 514 F.3d 1063, 1070 (10th Cir. 2008)(quotation marks omitted). See Bristol-Myers, Squibb Co. v. Superior Court of Ca., S.F. Cty., 137 S. Ct. 1773, 1779-80 (2017)("Bristol-Myers"); Daimler AG v. Bauman, 571 U.S. 117, 126 (2014).

### 1.    **Burden of Proof.**

As already noted, the plaintiff bears the burden of proving personal jurisdiction. See Wenz v. Memery Crystal, 55 F.3d at 1505. When jurisdiction is "decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" of facts that would support the assertion of jurisdiction. Wenz v. Memery Crystal, 55 F.3d at 1505. "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavit." Behagen v. Amateur Basketball Ass'n of the U.S.A., 744 F.2d at 733. When, however, a defendant presents credible evidence through affidavits or other materials suggesting the absence of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine dispute of material fact on the issue. See Doe v. Nat'l Med. Servs., 974 F.2d 143, 145 (10th Cir. 1992). Only if the plaintiff meets the obligation of contesting the credible evidence that the defendant presents does the court resolve the factual disputes in the plaintiff's favor. See Wenz

v. Memery Crystal, 55 F.3d at 1505; Behagen v. Amateur Basketball Ass'n of the U.S.A., 744

F.2d at 733; Clark v. Meijer, Inc., 376 F. Supp. 2d 1077, 1082 (D.N.M. 2004)(Browning, J.).

> **2.**      **Due Process and Personal Jurisdiction.**

The personal-jurisdiction due process analysis is two-fold.  See Fabara v. GoFit, LLC, 308

F.R.D. at 400.  First, the defendant must have "minimum contacts" with the forum state such that

it "should reasonably anticipate being haled into court there."  Burger King Corp. v. Rudzewicz,

471 U.S. at 473-76.  Second, exercising personal jurisdiction over the defendant must comport

with "traditional notions of fair play and substantial justice."  Dudnikov v. Chalk & Vermilion

Fine Arts, Inc., 514 F.3d at 1070 (quotation marks omitted).  A defendant may have "minimum

contacts" with the forum state in one of two ways, providing a court with either general or specific

personal jurisdiction.  Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532-33

(10th Cir. 1996)(citations omitted).

> General jurisdiction is based on an out-of-state defendant's "continuous and
> systematic" contacts with the forum state, and does not require that the claim be
> related to those contacts.  Specific jurisdiction, on the other hand, is premised on
> something of a *quid pro quo:* in exchange for "benefitting" from some purposive
> conduct directed at the forum state, a party is deemed to consent to the exercise of
> jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078.  Thus, "[s]uch contacts may

give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or

specifically, solely for lawsuits arising out of particular forum-related activities."  Shrader v.

Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).

For a court to exercise specific jurisdiction "'the suit' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'" Bristol-Myers, 137 S. Ct. at 1780 (alterations and emphasis in Bristol-Myers)(quoting Daimler AG v. Bauman, 571 U.S. at 127). See Bristol-Myers, 137 S. Ct. at 1781 ("[T]here must be an 'affiliation between the forum and the underlying controversy,' principally, [an] activity or an occurrence that takes place in the forum State." (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)("Goodyear"))); Burger King Corp. v. Rudzewicz, 471 U.S. at 472 (citations and quotation marks omitted)(ruling that a court may assert specific jurisdiction "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." )). The Tenth Circuit has characterized this inquiry as a two-part test: "[F]irst . . . the out-of-state defendant must have 'purposefully directed' its activities at residents in the forum state, and second, . . . the plaintiff's injuries must 'arise out of' defendant's forum-related activities." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1071. The Supreme Court has recently emphasized that, "[f]or specific jurisdiction, a defendant's general connections with the forum are not enough." Bristol-Myers, 137 S. Ct. at 1781. In the tort context, a defendant has "purposefully directed" his activities at New Mexico or its residents when he or she has: (i) taken intentional action; (ii) the action was "expressly aimed" at New Mexico; and (iii) the action was taken with the knowledge that "the brunt of th[e] injury" would be felt in New Mexico. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1072 (quoting Calder v. Jones, 465 U.S. 783, 789-90 (1984)).

Although agreements alone are likely to be insufficient to establish minimum contacts, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities." TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d 1282, 1287-88 (10th Cir. 2007)(quotation marks omitted)(quoting Burger King Corp. v. Rudzewicz, 471 U.S. at 473, 478). The mere foreseeability of harm occurring in a particular forum will not support a finding of minimum contacts. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)(holding that, although "an automobile is mobile by its very design and purpose," thus indicating that it is foreseeable that a particular automobile may cause injury in a forum state, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause"). "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. at 297. As the Tenth Circuit has further explained, because "mere foreseeability" is not sufficient to establish minimum contacts, a plaintiff "must establish . . . not only that defendants foresaw (or knew) that the effects of their conduct would be felt in the forum state, but also that defendants undertook intentional actions that were expressly aimed at that forum state." Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1077.

General personal jurisdiction jurisprudence has "followed [a] markedly different trajector[y]" than specific personal jurisdiction. Daimler AG v. Bauman, 571 U.S. at 132. The

test for general personal jurisdiction turns on whether the defendant is "at home" within the forum state.  Daimler AG v. Bauman, 571 U.S. at 137.  For individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  Daimler AG v. Bauman, 571 U.S. at 137 (quoting Goodyear, 564 U.S. at 924).  For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction."  Daimler AG v. Bauman, 571 U.S. at 137 (quoting Goodyear, 564 U.S. at 924).  In Daimler AG v. Bauman, the Supreme Court rejected an argument that "continuous or systematic" contacts within a forum state were, in and of themselves, sufficient to subject a corporation to general personal jurisdiction. Daimler AG v. Bauman, 571 U.S. at 137-38.  In so doing, the Supreme Court reemphasized that a corporation is most often exposed to general personal jurisdiction only if that entity is incorporated in the forum state or if the forum state hosts the entity's principal place of business.  See Daimler AG v. Bauman, 571 U.S. at 138-39.

Once minimum contacts have been established, a court turns to traditional notions of fair play and substantial justice.

If [the defendant] is found to have the requisite minimum contacts with [the forum state], then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him does not offend "traditional notions of fair play and substantial justice."  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  [The defendant] bears the burden at this stage to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1080 (10th Cir. 2008).  We consider the following five factors, . . . in deciding whether the exercise of jurisdiction would be fair:

(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving

> convenient and effectual relief, (4) the interstate judicial system's
> interest in obtaining the most efficient resolution of controversies,
> and (5) the shared interest of the several states or foreign nations in
> furthering fundamental social policies.
>
> Id. (brackets omitted); see also OMI Holdings, Inc., 149 F.3d at 1095 (applying
> these factors in a case involving a Canadian corporation). "[T]he reasonableness
> prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's
> showing on minimum contacts, the less a defendant need show in terms of
> unreasonableness to defeat jurisdiction." TH Agric. & Nutrition, LLC, 488 F.3d at
> 1292 (internal quotation marks and brackets omitted).

Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1167 (10th Cir. 2011). The Supreme Court has

recently emphasized that, among the factors, the primary concern "is 'the burden on the

defendant.'" Bristol-Myers, 137 S. Ct. at 1780 (quoting World-Wide Volkswagen Corp. v.

Woodson, 444 U.S. at 292). "Assessing this burden obviously requires a court to consider the

practical problems resulting from litigating in the forum, but it also encompasses the more abstract

matter of submitting to the coercive power of a State that may have little legitimate interest in the

claims in question." Bristol-Myers, 137 S. Ct. at 1780.

> Even if the defendant would suffer minimal or no inconvenience from being forced
> to litigate before the tribunals of another State; even if the forum State has a strong
> interest in applying its law to the controversy; even if the forum State is the most
> convenient location for litigation, the Due Process Clause, acting as an instrument
> of interstate federalism, may sometimes act to divest the State of its power to render
> a valid judgment.

Bristol-Myers, 137 S. Ct. at 1780-81 (quoting World-Wide Volkswagen Corp. v. Woodson, 444

U.S. at 294).

In Silver v. Brown, 678 F. Supp. 2d 1187 (D.N.M. 2009)(Browning, J.), aff'd in part and rev'd in part, 382 F. App'x 723 (10th Cir. 2010)(unpublished),[15] the Court considered whether it had personal jurisdiction over defendants who allegedly slandered, defamed, and caused the plaintiff -- Michael Silver -- distress, by posting a blog on the internet that portrayed him in a negative light. See 678 F. Supp. 2d at 1204. The Court determined that it did not have personal jurisdiction over defendant Jack McMullen, because Silver failed to demonstrate that McMullen "was significantly associated with the blog or controlled it in any way." 678 F. Supp. 2d at 1212. The Court also concluded that it did not have personal jurisdiction over the blog post's author -- Matthew Brown -- because he was not domiciled in New Mexico, had not traveled to New Mexico, and did not transact business there. See 678 F. Supp. 2d at 1211. The Court said that Brown's blog posts similarly did not establish personal jurisdiction, because

> the blog is closer to an informative website than a commercial website. No services are offered, and Brown is not collecting revenue from the website. Brown does not interact with the people who post information on the blog. Brown, to the Court's knowledge, did not solicit negative postings on the website. Further, even though people in New Mexico can view the website, the blog is not a website that is directed solely at the people of New Mexico. The number of people who can access the website in New Mexico in comparison to those who are able to access the

---

[15]Silver v. Brown is an unpublished opinion, but the Court can rely on an unpublished opinion for the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that Silver v. Brown, Kiesling v. Troughton, Nard v. City of Oklahoma City, Douglas v. Norton, Mayfield v. Harvey County Sheriff's Department and White v. Utah have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion and Order.

website throughout the world, or even in the United States, according to the statistics that Silver provided at the hearing, is nominal.

678 F. Supp. 2d at 1211-12.

On appeal, the Tenth Circuit affirmed the Court's holding as to McMullen, but reversed its decision as to Brown. See 382 F. App'x at 727-32. In an opinion that the Honorable Monroe G. McKay, United States Circuit Judge for the Tenth Circuit, authored, and the Honorable Wade Brorby and the Honorable David M. Ebel, Senior United States Circuit Judges for the Tenth Circuit, joined, the Tenth Circuit applied the three-part test from Calder v. Jones to conclude that the Court had personal jurisdiction over Brown. See 382 F. App'x at 727-32. Judge McKay first explained that the posting the blog was "clearly an intentional act" designed to damage the plaintiff's reputation. 382 F. App'x at 729. Second, Judge McKay said that Brown had "expressly aimed his blog at New Mexico," where Silver, his business, and the majority of his customers were located. 382 F. App'x at 729. Judge McKay noted: "It was about a New Mexico resident and a New Mexico company. The blog complained of Mr. Silver's and [his business'] actions in the failed business deal. Those actions occurred mainly in New Mexico." 382 F. App'x at 729-30. Third, Judge McKay explained that Brown knew Silver would suffer the brunt of his injury in New Mexico, as the state was "unquestionably the center of his business activities." 382 F. App'x at 730.

In several other recent cases, the Court addressed whether it could assert general or specific jurisdiction over non-individual entities. In Fabara v. GoFit, LLC, a plaintiff -- injured by an allegedly defective exercise ball in New Mexico -- brought suit against the manufacturer, which

was incorporated and headquartered in Oklahoma.  See 308 F.R.D. at 408.  The manufacturer moved to dismiss the complaint, under rule 12(b)(2), arguing that the Court lacked general jurisdiction, because its contacts with New Mexico were neither continuous nor systematic.  See 308 F.R.D. at 384.  The plaintiff responded with photographs of the manufacturers' products in several stores, arguing that the manufacturer delivered the exercise balls into the stream of commerce with the expectation that New Mexico customers would purchase and use them.  See 308 F.R.D. at 389.  The Court rejected this theory, explaining that the manufacturer's contacts with New Mexico were not "so systematic and continuous as to make it essentially at home here." 308 F.R.D. at 397.  The Court noted that the manufacturer had almost no physical connections with New Mexico and that its New Mexico internet sales -- roughly $20,000.00 over nine years -- were insufficiently "substantial" to support general jurisdiction.  308 F.R.D. at 402-03.

In Diener v. Trapeze Asset Management, Inc., No. CIV 15-0566 JB\LAM, 2015 WL 8332933 (D.N.M. Nov. 30, 2015)(Browning, J.), the Court considered whether it had specific jurisdiction over a Canadian asset-management firm that maintained a passive website, placed its name in a third party's money-manager listing, mailed marketing materials to New Mexico, had telephone conversations with plaintiffs located in New Mexico, and ultimately entered into a contract with plaintiffs located in New Mexico.  See 2015 WL 8332933, at *1.  The Court concluded that it did not have specific jurisdiction for four primary reasons.  See 2015 WL 8332933, at *1.  First, the website was wholly passive and did not allow visitors "the opportunity to invest or interact with the site."  2015 WL 8332933, at *15.  Second, the third-party listing was similarly passive.  See 2015 WL 8332933, at *15.  Third, the Court noted that "phone calls and

- 34 -

letters are not necessarily sufficient in themselves to establish minimum contacts," noting that the alleged torts occurred in Canada. 2015 WL 8332933, at *17 (quoting <u>Benton v. Cameco Corp.</u>, 375 F.3d 1070, 1077 (10th Cir. 2004)). Fourth, the plaintiffs reached out to the defendants to create the contractual relationship, distinguishing the case from others finding purposeful availment. <u>See</u> 2015 WL 8332933, at *17 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. at 473).

Finally, in <u>Resource Associates Grant Writing & Evaluation Services, Inc. v. Southampton Union Free School District</u>, 193 F. Supp. 3d 1200 (D.N.M. 2016)(Browning, J.), the Court considered whether it had personal jurisdiction over a school district that had never conducted any business in New Mexico, had never sent a representative to New Mexico, and its only contacts with a New Mexico entity were via telephone and email correspondence that the New Mexico company had initiated. <u>See</u> 193 F. Supp. 3d at 1239. Highlighting the contractual nature of the particular contacts at issue, and that due process may be satisfied in contractual relations if the defendant "'reache[s] out' to the forum state," the Court concluded it could not exercise personal jurisdiction over the school district, because the school district did not "not reach out to New Mexico to enter into an agreement"; rather, the New Mexico entity had initiated the communications and contract. 193 F. Supp. 3d at 1241-43 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. at 479-85).

## <u>LAW REGARDING RULE (12)(B)(6)</u>

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests

the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). A court may also consider documents to which the complaint refers, if their adequacy is central to the plaintiffs' claims and their authenticity is unquestioned. See Armstrong v. N.M. Disability Det. Servs., 278 F. Supp. 3d 1193, 1201 n.3 (D.N.M. 2017)(Browning, J.)(concluding that the court properly considered notices attached to the motion and not to the complaint, because the complaint referenced them, their adequacy was central to the plaintiffs' claims, and their authenticity was unquestioned). See also GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)(Kelly, J.)("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered . . . .").

A complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))). At the motion-to-dismiss stage, the court does not weigh the evidence, and "is interested

only in whether it has jurisdiction and whether the [p]laintiffs plead a claim to relief that is plausible on its face." Begay v. Pub. Serv. Co. of N.M., 710 F. Supp. 2d 1161, 1199 (D.N.M. 2010)(Browning, J.).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted). See Duncan v. Citibank (S.D.), N.A., No. CIV. 06-0246 JB/KBM, 2006 WL 4063021, at *3 (D.N.M. June 30, 2006)(Browning, J.)(dismissing a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") cause of action from a complaint where the complaint alleged a single physical act, and not a pattern of racketeering activity, and a pattern of activity is one of the elements required to state a RICO claim).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some

plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). A court will not construe a plaintiff's pleadings "so liberally that it becomes his advocate." Bragg v. Chavez, No. CIV 07-0343 JB/WDS, 2007 WL 5232464, at *25 (D.N.M. Aug. 2, 2007)(Browning, J.). The Tenth Circuit stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d at 1247 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(internal citations omitted). See Gallegos, 278 F. Supp. 3d at 1259.

"When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017)(quoting Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004)). There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322; (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002); and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322. See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,

861 F.3d at 1103 (holding that the district court did not err by reviewing a seminar recording and a TV episode on a rule 12(b)(6) motion, which were "attached to or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their accuracy and authenticity"). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).

In Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion [to dismiss] with numerous documents, and the district court cited portions of those motions in granting the motion." 627 F.3d at 1186. The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment." 627 F.3d at 1186-87. In other cases, the Tenth Circuit has emphasized that, "[b]ecause the district court considered facts outside of the complaint . . . it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)." Nard v. City of Okla. City, 153 F. App'x 529, 534 n.4 (10th Cir. 2005)(unpublished). In Douglas v. Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), the Tenth Circuit addressed an untimely filed charge with the Equal Employment Opportunity Commission -- which the Tenth Circuit analogized to a statute of limitations -- and concluded that, because the requirement was not jurisdictional, the district court should have analyzed the question under rule 12(b)(6), and "because the district court considered evidentiary materials outside of Douglas' complaint, it

should have treated Norton's motion as a motion for summary judgment." 167 F. App'x at 704-05.

The Court has previously ruled that, when a plaintiff references and summarizes defendants' statements in a complaint, the Court cannot rely on documents containing those statements that the defendants attach in their briefing. See Mocek v. City of Albuquerque, No. CIV 11-1009 JB/KBM, 2013 WL 312881, at *50-51 (D.N.M. Jan. 14, 2013)(Browning, J.). The Court reasoned that the statements were neither incorporated by reference nor central to the plaintiff's allegations in the complaint, because the plaintiff cited the statements only to attack the defendant's reliability and truthfulness. See 2013 WL 312881, at *50-51. The Court has also previously ruled that, when determining whether to toll a statute of limitations in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters attached to a motion to dismiss, which show that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired. See Great Am. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500, at *3, *22-23 (D.N.M. Aug. 23, 2012)(Browning, J.)("Crabtree"). The Court in Crabtree determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the sufficiency of its contents alone, as the complaint did not incorporate the documents by reference or refer to the documents. See 2012 WL 3656500, at *22-23; Mocek v. City of Albuquerque, 2013 WL 312881, at *50 (refusing to consider statements that were not "central to [the plaintiff's] claims").

On the other hand, in a securities class action, the Court has ruled that a defendant's operating certification, to which the plaintiffs refer in their complaint, and which was central to

whether the plaintiffs adequately alleged a loss, falls within an exception to the general rule that courts only consider the complaint at the motion to dismiss stage, so the Court may consider the operating certification when ruling on the defendant's motion to dismiss without converting the motion into one for summary judgment. See Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Secs. Tr. 2006-3, 825 F. Supp. 2d 1082, 1150-51 (D.N.M. 2011)(Browning, J.). See also Sec'y & Exch. Comm'n v. Goldstone, 952 F. Supp. 2d 1060, 1217-18 (D.N.M. 2013)(Browning, J.)(considering, on a motion to dismiss, emails referenced in the complaint as "documents referred to in the complaint," which are "central to the plaintiff's claim" and whose authenticity the plaintiff did not challenge); Mata v. Anderson, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning, J.)(relying on documents outside of the complaint because they were "documents that a court can appropriately view as either part of the public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute").

## LAW REGARDING 42 U.S.C. § 1983

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or from a federal statute. See Nelson v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 did not create any substantive rights, but merely enforces existing constitutional and federal statutory rights . . . ."(internal

quotation marks, alteration, and citation omitted)).  Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.  See 42 U.S.C. § 1983.  To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).  The Court has noted:

> [A] plaintiff must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M. 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)). The Supreme Court has made clear that, in alleging a § 1983 action against a government agent in the agent's individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Iqbal, 556 U.S. at 676.

The Supreme Court has also clarified that there is no respondeat superior liability under § 1983.  See Iqbal, 556 U.S. at 675 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. Dep't of Social Servs. of City of

New York, 436 U.S. 658, 689 (1978). Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998). The Tenth Circuit has recognized that non-supervisory defendants may be liable if they knew or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability. See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012)(internal quotation marks omitted)(quoting 42 U.S.C. § 1983; Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006)).

Before the Supreme Court decided Iqbal, the Tenth Circuit held that supervisors are not liable under § 1983 "unless there is an affirmative link between the constitutional deprivation and the supervisor's exercise of control or direction, his personal participation, or his failure to supervise." Kiesling v. Troughton, 107 F.3d 880, 1997 WL 111256, at *2 (10th Cir. 1997)(unpublished table opinion)(citing Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988)). The Tenth Circuit reasoned that, because supervisors can be held liable only for their own constitutional acts or illegal policies, and not for their employees' torts, supervisory liability requires a showing that such policies were a "deliberate or conscious choice." Barney v. Pulsipher, 143 F.3d at 1307-08 (citations and internal quotation marks omitted). Cf. Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 404 (1997)("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." (emphasis in original)).

The Tenth Circuit has recognized that Iqbal limited, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations. See Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25-26 (D.N.M. 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)(Baldock, J.)). The language that may have altered the landscape for supervisory liability in Iqbal is as follows: "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. The Tenth Circuit in Dodds v. Richardson held:

> Whatever else can be said about Iqbal, and certainly much can be said, we conclude the following basis of § 1983 liability survived it and ultimately resolves this case: § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

614 F.3d at 1199 (quoting 42 U.S.C. § 1983). The Tenth Circuit noted, however, that "*Iqbal* may very well have abrogated § 1983 supervisory liability as we previously understood it in this circuit in ways we do not need to address to resolve this case." Dodds v. Richardson, 614 F.3d at 1200. It concluded that Iqbal did not alter "the Supreme Court's previously enunciated § 1983 causation and personal involvement analysis." Dodds v. Richardson, 614 F.3d at 1200. More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link . . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy . . . -- express or otherwise -- showing their authorization or approval of such misconduct.'" Dodds v.

Richardson, 614 F.3d at 1200-01 (quoting Serna v. Colo. Dep't of Corrs., 455 F.3d 1146, 1151 (10th Cir. 2006)).  The specific example that the Tenth Circuit used to illustrate this principle was Rizzo v. Goode, 423 U.S. 362 (1976), where the plaintiff sought to hold a mayor, a police commissioner, and other city officials liable under § 1983 for constitutional violations that unnamed individual police officers committed.  See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).  The Tenth Circuit noted that the Supreme Court in that case found a sufficient link between the police misconduct and the city officials' conduct, because there was a deliberate plan by some of the named defendants to "crush the nascent labor organizations." Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371). See Young v. City of Albuquerque, 77 F. Supp. 3d 1154, 1186-87 (D.N.M. 2014)(Browning, J.)(holding that the plaintiff failed to state a § 1983 claim against a city because "there is no indication that a municipal policy caused [a constitutional] violation"); Herrera v. Santa Fe. Pub. Sch., 41 F. Supp. 3d 1188, 1252 (D.N.M. 2014)(Browning, J.)(explaining that "[a] municipality will not be held liable under § 1983 solely because its officers inflicted injury").

## LAW REGARDING THE NMTCA

The New Mexico Legislature enacted the NMTCA, because it recognized "the inherent unfair and inequitable results which occur in the strict application of the doctrine of sovereign immunity."  N.M. Stat. Ann. § 41-4-2A.  The New Mexico Legislature, however, also recognized

> that while a private party may readily be held liable for his torts within the chosen ambit of his activity, the area within which the government has the power to act for the public good is almost without limit, and therefore government should not have the duty to do everything that might be done.

- 45 -

N.M. Stat. Ann. § 41-4-2A.  As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act."  N.M. Stat. Ann. § 41-4-2A.  The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty."  N.M. Stat. Ann. § 41-4-2C.

## 1.  <u>Section 41-4-4(A)</u>.

The NMTCA's § 41-4-4(A), which grants immunity and authorizes exceptions thereto, states:

> A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act [N.M. Stat. Ann. §§ 28-22-1 to 28-22-5] and by Sections 41-4-5 through 41-4-12 NMSA 1978.  Waiver of this immunity shall be limited to and governed by the provisions of Sections 41-4-13 through 41-4-25 NMSA 1978, but the waiver of immunity provided in those sections does not waive immunity granted pursuant to the Governmental Immunity Act.

N.M. Stat. Ann. § 41-4-2A.  Accordingly, a plaintiff may not sue a New Mexico governmental entity or its employees or agents, unless the plaintiff's cause of action fits within one of the exceptions that the NMTCA grants for governmental entities and public employees.  <u>See</u> N.M. Stat. Ann. §§ 41-4-5 through 41-4-12.  <u>See also</u> <u>Begay v. State</u>, 1985-NMCA-117, ¶ 10, 723 P.2d 252, 255[16] ("Consent to be sued may not be implied, but must come within one of the exceptions

---

[16]The Court predicts that the Supreme Court of New Mexico, if presented with the issue, would agree with <u>Begay v. State</u>, that, for a plaintiff to sue a governmental entity, the entity must come within one of the NMTCA's exceptions, and that a plaintiff may not imply the governmental

to immunity under the Tort Claims Act."), rev'd on other grounds by Smialek v. Begay, 1986-NMSC-049, ¶ 10, 721 P.2d 1306, 1308 (1986).  A plaintiff also may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity.  See Barreras v. N.M. Corr. Dep't, 2003-NMCA-027, ¶ 24, 62 P.3d 770, 776[17] ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act."); Chavez v. City of Albuquerque, 1998-NMCA-004, ¶ 11,

_____

entity's consent to suit.  Section 41-4-2 provides in part: "[I]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act."  N.M. Stat. Ann. § 41-4-2.  The NMTCA also states that governmental entities and public employees acting in the scope of their duties shall be immune from liability for torts except as the NMTCA waives.  See N.M. Stat. Ann. § 41-4-4.  The Supreme Court of New Mexico has consistently reaffirmed that, for a plaintiff to sue a governmental entity or public employee acting within the scope of his or her duties, an NMTCA immunity waiver must apply.  See, e.g., Thompson v. City of Albuquerque, 2017-NMSC-021, ¶ 6, 397 P.3d 1279, 1281; Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 1996-NMSC-021, ¶ 6, 916 P.2d 1313, 1313.

[17]The Court predicts that the Supreme Court of New Mexico, if presented with the issue, would agree with Barreras v. State of New Mexico Corrections Department that, absent affirmative legislation expressly confirming consent to be sued, New Mexico courts do not permit private lawsuits to enforce New Mexico constitutional rights if no NMTCA immunity waiver applies.  In Begay v. State, the Court of Appeals of New Mexico dismissed plaintiff's state constitutional claims against a governmental entity, because no NMTCA waiver applied.  See Begay v. State, 1985-NMCA-117, ¶ 14, 723 P.2d at 257 ("We have determined that plaintiffs may not sue the state without its consent and that there is no express waiver for the medical examiner under the Tort Claims Act.").  The Court notes that Begay v. State, as discussed supra n.15, clarifies that "[c]onsent to be sued may not be implied" under the NMTCA.  Begay v. State, 1985-NMCA-117, ¶ 10, 723 P.2d at 256.

952 P.2d 474, 477 (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution against a city, its employees, or its agents unless the NMTCA waives immunity)[18]; Rubio v. Carlsbad Mun. Sch. Dist., 1987-NMCA-127, ¶¶ 11-12, 744 P.2d 919, 922 (holding that no waiver of immunity exists for damages arising out of alleged educational malpractice claim against a school board)[19]; Begay v. State, 1985-NMCA-117, ¶ 14, 723 P.2d at 257 (finding that no waiver exists in the NMTCA for suit under Article II, § 11 of the New Mexico Constitution). Accordingly, if no specific NMTCA waiver can be identified, a plaintiff's complaint against the governmental entity or its employees must be dismissed. See Begay v. State, 1985-NMCA-117, ¶ 14, 723 P.2d at 255. Further, the NMTCA is the

> exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

N.M. Stat. Ann. § 41-4-17(A). A plaintiff thus "may not sue a New Mexico governmental entity, or its employees or agents, unless the plaintiff's cause of action fits within one of the exceptions

---

[18]For the reasons discussed supra n.15 and n.16, the Court concludes that the Supreme Court of New Mexico would, if presented with the issue, agree with this assertion in Chavez v. City of Albuquerque.

[19]The Court predicts that the Supreme Court of New Mexico, if presented with the issue, would agree with the result in Rubio v. Carlsbad Municipal School District, because none of the express waivers under §§ 41-4-5 to -12 permit recovery for damages arising out of educational malpractice claims, and § 41-4-4(A) clearly exempts governmental entities and public employees acting within the scope of their duties from liability except as waived in sections 41-4-5 to -12. See N.M. Stat. Ann. §§ 41-4-5 to -12. As discussed supra n.16, the Supreme Court of New Mexico requires an express NMTCA immunity waiver to permit an NMTCA suit against a governmental entity or a public employee acting within the scope of his or her duties.

- 48 -

to immunity that the NMTCA grants." <u>Pueblo of Pojoaque v. New Mexico</u>, 214 F. Supp. 3d 1028, 1087 (D.N.M. 2016)(Browning, J.)("<u>Pojoaque</u>"), <u>aff'd</u>, <u>Pueblo of Pojoaque v. New Mexico</u>, 863 F.3d 1226 (10th Cir. 2017). "A plaintiff also may not sue a governmental entity or its employees for a . . . damages claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity." <u>Pojoaque</u>, 214 F. Supp. 3d at 1087. "Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint [for damages] against the governmental entity or its employees must be dismissed." <u>Salazar v. City of Albuquerque</u>, No. CIV 10-0645 JB/ACT, 2013 WL 5554185, at *24 (D.N.M. 2013)(Browning, J.)(citing <u>Begay v. State</u>, 1985-NMCA-117, ¶ 10,723 P.2d at 255).

## LAW REGARDING NMTCA § 41-4-12

"Section 41-4-12 of the [NMTCA] provides a waiver of immunity for certain torts committed by law enforcement officers and for negligence that causes a specified tort." <u>Oliveros v. Mitchell</u>, 449 F.3d 1091, 1096 (10th Cir. 2006)(citing <u>Methola v. County of Eddy</u>, 1980-NMSC-145, ¶ 23, 622 P.2d 234, 238; <u>Caillouette v. Hercules, Inc.</u>, 1992-NMSC-008)., ¶ 18, 827 P.2d 1306, 1311). Section 41-4-12 provides:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12.

Thus, in order to state a tort claim under the waiver of immunity set out in Section 41-4-12, a plaintiff must demonstrate that the defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law.

Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 1996-NMSC-021, ¶ 7, 916 P.2d at 1316.

A law enforcement officer is a "full-time salaried public employee of a governmental entity whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor." N.M. Stat. Ann. § 41-4-3. "New Mexico courts have construed this definition strictly." Chavez-Rodriguez v. City of Santa Fe, No. CIV 07-633, 2009 U.S. Dist. LEXIS 47154, at *10 (D.N.M. April 20, 2009)(Browning, J.). See, e.g., Montes v. Gallegos, 812 F. Supp. 1165, 1172 (D.N.M. 1992)(Parker, J.)(holding that the mayor is not a law enforcement officer under the NMTCA, notwithstanding his statutory authority and obligation to exercise law enforcement functions); Anchondo v. Corr. Dep't, 1983-NMSC-051, ¶ 14, 666 P.2d 1255, 1258 (holding that the Secretary of Corrections and the Warden of a state penitentiary are not law enforcement officers under the NMTCA); Dunn v. McFeeley, 1999-NMCA-084, ¶ 25, 984 P.2d 760, 767[20] (holding that the Office of the Medical Investigator's Medical Investigator

---

[20]The Court predicts that the Supreme Court of New Mexico, if presented with the issue, would agree with the result in Dunn v. McFeeley that the Office of the Medical Investigator's Medical Investigator and the crime laboratory technician in Dunn v. McFeeley are not law-enforcement officers under the NMTCA. Section 41-4-3 states that a law-enforcement officer's principal duties under law are to hold persons accused of a criminal offense in custody, to maintain

and the crime laboratory technician are not law enforcement officers under the NMTCA), <u>cert.</u>

<u>denied</u>, No. 25,764, 981 P.2d 1207 (1999); <u>Coyazo v. State</u>, 1995-NMCA-056 ¶ 20, 897 P.2d 234,

238 (holding that the public defender and his staff are not law enforcement officers under §

41-4-3(D)); <u>Callaway v. N.M. Dep't of Corr.</u>, 1994-NMCA-049, ¶¶ 11-12, 875 P.2d at 397

(holding that correctional officers at a penitentiary are not law enforcement officers under the

NMTCA, notwithstanding their statutory power to make arrests);[21] <u>Vigil v. Martinez</u>, 1992-

_____

public order or make arrests, or are members of the national guard when the governor calls them
to active duty.  <u>See</u> N.M. Stat. Ann. § 41-4-3.  In <u>Chavez-Rodriguez v. City of Santa Fe</u>, the Court
stated that New Mexico courts construe the § 41-4-3 definition strictly.  <u>See</u> 2009 U.S. Dist. LEXIS
47154, at *10.  The Court of Appeals of New Mexico concluded that the complaint contained no
allegations that the principal duties of the medical investigator and crime scene technician related
to law enforcement.  <u>See</u> <u>Dunn v. McFeeley</u>, 1999-NMCA-084, ¶¶ 24-25, 984 P.2d 760, 767.
Furthermore, in <u>Begay v. State</u>, the Court of Appeals of New Mexico concluded that a medical
investigator is not a law-enforcement officer and the Supreme Court of New Mexico did not alter
that determination when it reversed <u>Begay v. State</u> on other grounds.  <u>See</u> <u>Smialek v. Begay</u>, 1986-
NMSC-049, 721 P.2d 1306.  Although the Court is reluctant to read too much into a denial of a
petition for certiorari, the Supreme Court of New Mexico did deny the petition from <u>Dunn v.</u>
<u>McFeeley</u>, suggesting a disinclination to reconsider the Court of Appeals of New Mexico's
decision.

    [21]While the Court is reluctant to read too much into a denial of a petition of certiorari, the
Court predicts that the Supreme Court of New Mexico would, if presented with the issue, conclude
that corrections officers are not law-enforcement officers under the NMTCA, and the Court bases
its prediction, at least in part, on the fact that the Supreme Court of New Mexico denied the petition
for certiorari in <u>Callaway v. New Mexico Department of Corrections</u>.  <u>See</u> <u>Callaway v. N.M. Dep't</u>
<u>of Corr.</u>, 118 N.M. 90, 879 P.2d 91 (unpublished table decision)(denying certiorari).  The Court
discussed <u>Callaway v. New Mexico Department of Corrections</u> in <u>Lymon v. Aramark Corp.</u>, 728
F. Supp. 2d at 1255-56.

    In <u>Anchondo v. Corrections Department</u>, the Supreme Court of New Mexico
received a certified question from the Honorable Juan G. Burciaga, United States
District Judge for the District of New Mexico, asking: "Are the Secretary of
Corrections and the Warden of the State Penitentiary in Santa Fe 'law enforcement
officers within the meaning of Section 41-4-3(D), NMSA 1978?" 100 N.M. at 109,

666 P.2d at 1256.  The Supreme Court of New Mexico found that the Secretary of Corrections and the Warden are not law-enforcement officers.  See 100 N.M. at 109, 666 P.2d at 1256.  The Supreme Court of New Mexico explained:

> From looking at the statutes, we see that neither the Secretary of Corrections nor the Warden engage in any of the traditional duties of "law enforcement officers."  They do not deal directly with the daily custodial care of prison inmates.  Moreover, because they do not have commissions, they have no power to make arrests or to take people into custody should a violation of the public order occur.  They are merely administrative officers appointed by the governor to oversee, administer, and supervise the state's corrections system.

100 N.M. at 109-10, 666 P.2d at 1256-57.  "To determine whether positions are of a law enforcement nature, this Court will look at the character of the principal duties involved, those duties to which employees devote the majority of their time." Anchondo v. Corr. Dep't, 100 N.M. at 110, 555 P.2d at 1257.

Lymon v. Aramark Corp., 728 F. Supp. 2d at 1255-56.  In Callaway v. New Mexico Department of Corrections, the Court of Appeals of New Mexico referenced the statutory duties of prison guards as set forth in N.M. Stat. Ann. § 33-2-15:

> The employees of the penitentiary shall perform such duties in the charge and oversight of the penitentiary, care of the property belonging thereto, and in the custody, government, employment and discipline of the convicts as shall be required of them by the corrections division [corrections department] or the warden, in conformity with law and rules and regulations prescribed for the government of the penitentiary.

Callaway v. N.M. Dep't of Corr., 1994-NMCA-049, ¶ 10, 875 P.2d at 397 (internal quotation marks omitted)(quoting N.M. Stat. Ann. § 33-2-15).  The principal statutory duties of corrections officers, pursuant to § 33-2-15, are supervisory, administrative, and custodial, but they do not "hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor."  N.M. Stat. Ann. § 41-4-3.  Although corrections officers do hold in custody persons who have already been convicted, § 41-4-3 specifies that a law-enforcement officer "hold[s] in custody any person accused of a criminal offense."  N.M. Stat. Ann. § 41-4-3.

NMCA-033, ¶ 20, 832 P.2d 405, 412 (holding that probation and parole officers are not law enforcement officers under the NMTCA).[22]  See also Johnson v. Holmes, 377 F. Supp. 2d 1069, 1083 (D.N.M. 2004)(Browning, J.)("Akin to a law enforcement officer is, as a matter of law,

---

[22]The Court predicts that the Supreme Court of New Mexico, if presented with the issue, would agree with Vigil v. Martinez that probation and parole officers are not law-enforcement officers under the NMTCA.  The Court of Appeals of New Mexico explained in Rayos v. State ex rel. New Mexico Department of Corrections, Adult Probation and Parole Division:

> In the more than twenty years since Vigil was decided, the New Mexico Legislature has not amended the statute to include probation and parole officers within the definition of law enforcement officers.  Moreover, every subsequent state and federal decision -- both published and unpublished -- on the "law enforcement officer" waiver has followed Vigil, albeit with little meaningful analysis or none at all.  See, e.g., Limacher, 2008-NMCA-163, ¶ 17, 145 N.M. 344, 198 P.3d 370; Coyazo, 1995-NMCA-056, ¶ 17, 120 N.M. 47, 897 P.2d 234; Trask v. Franco, 446 F.3d 1036, 1048 (10th Cir. 2006); Ricks v. N.M. Adult Prob. & Parole Dep't, No. CV-11-608, slip op. at 32-33 (D.N.M. Aug. 9, 2012); Wells v. N.M. Adult Prob. & Parole, No. CV-09-150, slip op. at 3 (D.N.M. Feb. 5, 2010); Kenney v. New Mexico, No. CV-07-0422, slip op. at 8 (D.N.M. Oct. 2, 2007).  Against this backdrop, there simply has been no change in the law to warrant a departure from Vigil.  See Trujillo v. City of Albuquerque, 1998-NMSC-031, ¶ 34, 125 N.M. 721, 965 P.2d 305 (noting, in relevant part, that before overturning precedent, we must consider "whether the principles of law have developed to such an extent as to leave the old rule no more than a remnant of abandoned doctrine" and "whether the facts have changed in the interval from the old rule to reconsideration so as to have robbed the old rule of justification" (internal quotation marks and citation omitted)).  Thus, our sole task here is to determine whether the facts have so changed that the principal duties of probation and parole officers now fall within one of the three relevant categories of principal duties of law enforcement officers enumerated in Section 41-4-3(D) of the TCA.

Rayos v. State ex rel. N.M. Dep't of Corr., Adult Prob. & Parole Div., 2014-NMCA-103, ¶ 11, 336 P.3d 428, 432, cert. denied, Rayos v. State, 2014-NMCERT-010, 339 P.3d 426 (unpublished table decision), cert. quashed, Rayos v. State, 2015-NMCERT-007, 368 P.3d 2 (unpublished table decision).

insufficient to waive sovereign immunity under § 41-4-12 NMSA 1978."), aff'd, 455 F.3d 1133 (10th Cir. 2006).

The New Mexico Court of Appeals has held that corrections officers who hold convicted persons in custody are not law enforcement officers under § 41-4-3(D), which defines law enforcement officer as used in § 41-4-12. See Callaway v. N.M. Dep't of Corr., 1994-NMSC-049, ¶ 12, 875 P.2d at 397 (stating "we affirm the trial court's determination that corrections officers are not law enforcement officers under Section 41-4-3(D)"). In Anchondo v. Corrections Department, the Supreme Court of New Mexico received a certified question from the Honorable Juan G. Burciaga, United States District Judge for the District of New Mexico, asking: "Are the Secretary of Corrections and the Warden of the State Penitentiary in Santa Fe 'law enforcement officers' within the meaning of Section 41-4-3(D), NMSA 1978?" 1983-NMSC-051, ¶ 1, 666 P.2d at 1255. The Supreme Court of New Mexico found that the Secretary of Corrections and the Warden are not law enforcement officers. See 1983-NMSC-051, ¶ 7, 666 P.2d at 1256. The Supreme Court of New Mexico explained:

> From looking at the statutes, we see that neither the Secretary of Corrections nor the Warden engage in any of the traditional duties of "law enforcement officers." They do not deal directly with the daily custodial care of prison inmates. Moreover, because they do not have commissions, they have no power to make arrests or to take people into custody should a violation of the public order occur. They are merely administrative officers appointed by the governor to oversee, administer, and supervise the state's corrections system.

<u>Anchondo v. Corr. Dep't</u>, 1983-NMSC-051, ¶ 7, 666 P.2d at 1256.

## <u>LAW REGARDING CERTIFICATION TO THE TENTH CIRCUIT</u>

Congress has given the Courts of Appeals "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. The restriction of appellate review to final decisions "prevents the debilitating effect on judicial administration caused by piecemeal appellate disposition of what is, in practical consequence, but a single controversy." <u>Eisen v. Carlisle & Jacquelin</u>, 417 U.S. 156, 170 (1974). Various prescriptions for appeal from interlocutory rulings supplement the general rule requiring final decisions. In 1958, Congress enacted 28 U.S.C. § 1292(b), which empowers the district courts to certify certain pivotal and debatable decisions for immediate review:

> When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: <u>Provided</u>, <u>however</u>, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b). The Supreme Court of the United States has understood the procedure that 28 U.S.C. § 1292(b) established to "confer on district courts first line discretion to allow interlocutory appeals." <u>Swint v. Chambers Cty. Comm'n</u>, 514 U.S. 35, 47 (1995).

1.      **<u>Controlling Questions of Law</u>.**

Although the lower courts have provided various definitions of "controlling question of law," there are a few informal rules. 28 U.S.C. § 1292(b). "Question of law" refers to a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to whether the party opposing summary judgment had raised a genuine issue of material fact." Ahrenholz v. Bd. of Tr. of Univ. of Ill., 219 F.3d 674, 676 (7th Cir. 2000)(Posner, J.). It does not include questions requiring a Court of Appeals to "delve beyond the surface of a record in order to determine the fact." McFarlin v. Conseco Servs., LLC, 381 F.3d 1251, 1259 (11th Cir. 2004). "The legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." McFarlin v. Conseco Servs., LLC, 381 F.3d at 1259.

A legal issue need not be dispositive to be controlling, but it must at least "materially affect the outcome of the case." In re City of Memphis, 293 F.3d 345, 351 (6th Cir. 2002). "A 'controlling question' has a broader definition than it is typically accorded in other situations, and it can include not only those issues that will resolve the action in its entirety but also those that are dispositive in other respects, such as whether a particular claim exists." 2 Fed. Proc., L. Ed. § 3:215. An issue that could determine the amount of recovery, for example, may be certified. See Junco v. E. Air Lines, Inc., 399 F. Supp. 666, 667 (S.D.N.Y. 1975)(Knapp, J.)(certifying issue that could have "decisive effect" on the amount of recovery, which was the only remaining issue). A controlling question of law would generally constitute reversible error on final appeal if the district court arrived at the wrong legal conclusion. See P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp., 161 F. Supp. 355, 358 (D.N.J. 2001)(Walls, J.).

Discovery issues do not often involve controlling questions of law. See 10B Fed. Proc., L.Ed. § 26:958. "Questions of this sort, involving the discretion of the judge in conducting pretrial discovery proceedings, should not be reviewed by an appellate court at this stage of a litigation except where there has been a manifest abuse of discretion." Atl. City Elec. Co. v. A. B. Chance Co., 313 F.2d 431, 434 (2d Cir. 1963). See White v. Nix, 43 F.3d 374 (8th Cir. 1994)("[T]he discretionary resolution of discovery issues precludes the requisite controlling question of law."); Dorato v. Smith, 163 F. Supp. 3d 837, 892-93 (D.N.M. 2015)(Browning, J.); Certain Underwriters at Lloyd's, London, Subscribing to Policy Number 501/NM03ACMB v. Nance, No. CIV 04-0937 JB/WDS, 2006 WL 4109675, at *3 (D.N.M. Aug. 24, 2006)(Browning, J.)("The phrase 'question of law' as used in 28 U.S.C. § 1292(b) does not refer to a particular application of facts to the law, but rather 'has reference to a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine.'").

2. **Substantial Ground for Difference of Opinion.**

Substantial ground for difference of opinion does not exist merely because courts have disagreed on an issue:

> There is substantial ground for difference of opinion which supports a certificate for an interlocutory appeal if a trial court rules in a manner which appears contrary to the rulings of all courts of appeals which have reached the issue, if the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

2. Fed. Proc., L.Ed. § 3:218 (footnotes omitted)(collecting cases). That a court confronts an issue of first impression does not present substantial ground for difference of opinion. See Krangel v. Gen. Dynamics Corp., 968 F.2d 914, 916 (9th Cir. 1992); Dorato v. Smith, 163 F. Supp. 3d at 880-81 (stating that confronting an issue of first impression does not mean that substantial ground for difference of opinion exists). "The mere fact that a substantially greater number of judges have resolved the issue one way rather than another does not, of itself, tend to show that there is no substantial ground for difference of opinion." Max Daetwyler Corp. v. Meyer, 575 F. Supp. 280, 283 (E.D. Pa. 1983)(Pollak, J.). An attorney's contention that one precedent rather than another should apply does not merit interlocutory appeal. See Singh v. Daimler-Benz, AG, 800 F. Supp. 260, 263 (E.D. Pa. 1992)(Newcomer, J.), aff'd, 9 F.3d 303 (3d Cir. 1993).

**3.      Materially Advance the Litigation's Ultimate Termination.**

Interlocutory review is appropriate "only in extraordinary cases where decision might avoid protracted and expensive litigation." Robbins Co. v. Lawrence Mfg. Co., 482 F.2d 426, 429-30 (9th Cir. 1973). An immediate appeal advances this termination if it "would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." Coates v. Brazoria Cty., Tex., 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013)(Costa, J.)(quoting Orson, Inc. v. Miramax Film Corp., 867 F. Supp. 319, 322 (E.D. Pa. 1994)(Joyner, J.)). "When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate termination of the litigation." In re City of Memphis, 293 F.3d at 351 (quoting White v. Nix, 43 F.3d at 378).

The determination whether an appeal will materially advance the litigation's termination "properly turns on pragmatic considerations, assessed by reviewing the 'procedural and substantive status of the case with respect to the progress or completion of discovery, the disposition of pretrial motions, the extent of the parties' preparation for trial, and the nature and scope of the requested relief.'" 2 Fed. Proc., L. Ed. § 3:219 (quoting Fed. Deposit Ins. v. First Nat. Bank of Waukesha, Wis., 604 F. Supp. 616, 620 (E.D. Wis. 1985)(Warren, J.)).  Cases appropriate for certification involve "a defense disputing the right to maintain the action," on which a decision could swiftly end the lawsuit.  Fed. Hous. Fin. Agency v. UBS Ams., Inc., 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012)(Cote, J.).   See Certain Underwriters at Lloyd's, London, Subscribing to Policy No. 501/NM03ACMB v. Nance, 2006 WL 4109675, at *3 (denying an interlocutory appeal after the court had already decided the issue that the movant sought to appeal).

## LAW REGARDING AMENDMENTS

"While Rule 15 governs amendments to pleadings generally, rule 16 of the Federal Rules of Civil Procedure governs amendments to scheduling orders."  Bylin v. Billings, 568 F.3d 1224, 1231 (10th Cir. 2009)(citing Fed. R. Civ. P. 16(b)).  When a court has not entered a scheduling order in a particular case, rule 15 governs amendments to a plaintiff's complaint.  See Fed. R. Civ. P. 15.  When a scheduling order governs the case's pace, however, amending the complaint after the deadline for such amendments implicitly requires an amendment to the scheduling order, and rule 16(b)(4) governs changes to the scheduling order.  See Bylin v. Billings, 568 F.3d at 1231.

Rule 15(a) of the Federal Rules of Civil Procedure provides:

**(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within:

> **(A)** 21 days after serving it, or
>
> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under rule 12(b), (e), or (f), whichever is earlier.

**(2) Other Amendments.** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a)(bold and italics in original). Further, the local rules provide that, with respect to motions to amend a pleading, "[a] proposed amendment to a pleading must accompany the motion to amend." D.N.M. LR-Civ. 15.1.

Under rule 15(a), the court should freely grant leave to amend a pleading where justice so requires. See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.); Youell v. Russell, No. CIV 04-1396 JB\WDS, 2007 WL 709041, at *1-2 (D.N.M. Feb. 14, 2007)(Browning, J.); Burleson v. ENMR-Plateau Tele. Coop., No. CIV 05-0073 JB\KBM, 2005 WL 3664299, at *1-2 (D.N.M. Sept. 23, 2005)(Browning, J.). The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . [,] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given. Fomen v. Davis, 371 U.S. 178, 182 (1962). See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001); In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a) where the proposed "amendment would be futile." Jefferson Cty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999). See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80. An amendment is "futile" if the pleading, "as amended, would be subject to dismissal." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)). A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed." In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)). See Youell v. Russell, 2007 WL 709041, at *2-3; Lymon v. Aramark Corp., No. CIV 08-0386 JB\DJS, 2009 WL 1299842 (D.N.M. Feb. 4, 2009)(Browning, J.). The Tenth Circuit has also noted:

> It is well settled in this circuit that untimeliness alone is a sufficient reason to deny leave to amend, see Woolsey v. Marion Laboratories, Inc., 934 F.2d 1452, 1462 (10th Cir. 1991); Las Vegas Ice & Cold Storage Co. v. Far West Bank, 893 F.2d 1182, 1185 (10th Cir. 1990); First City Bank v. Air Capitol Aircraft Sales, 820 F.2d 1127, 1133 (10th Cir. 1987), especially when the party filing the motion has no adequate explanation for the delay, Woolsey, 934 F.2d at 1462. Furthermore, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." Las Vegas Ice, 893 F.2d at 1185.

<u>Frank v. U.S. W., Inc.</u>, 3 F.3d at 1365-66.[23]  The longer the delay, "the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend."  <u>Minter v. Prime Equip. Co.</u>, 451 F.3d at 1205 (citing <u>Steir v. Girl Scouts of the USA</u>, 383 F.3d 7, 12 (1st Cir. 2004)).  Undue delay occurs where the plaintiff's amendments "make the complaint 'a moving target.'"  <u>Minter v. Prime Equip. Co.</u>, 451 F.3d at 1206 (quoting <u>Viernow v. Euripides Dev. Corp.</u>, 157 F.3d 785, 799-800 (10th Cir. 1998)).  "[P]rejudice to the opposing party need not also be shown."  <u>Las Vegas Ice & Cold Storage Co. v. Far W. Bank</u>, 893 F.2d at 1185.  "Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial."  <u>Las Vegas Ice & Cold Storage Co. v. Far W. Bank</u>, 893 F.2d at 1185 (quoting <u>State Distribs., Inc. v. Glenmore Distilleries Co.</u>, 738 F.2d 405 (10th Cir. 1984)).  Along the same vein, the court will deny amendment if the party learned of the facts upon which its proposed amendment is based and nevertheless unreasonably delayed in moving to amend its complaint.  <u>See</u> <u>Pallottino v. City of Rio Rancho</u>, 31 F.3d 1023, 1027 (10th Cir. 1994)(noting motion to amend filed "was not based on new evidence unavailable at the time of the original filing").

---

[23]The Court notes that there is older authority in the Tenth Circuit that seems to be to the contrary.  <u>See</u> <u>R.E.B., Inc. v. Ralston Purina Co.</u>, 525 F.2d 749, 751 (10th Cir. 1975)("Lateness does not of itself justify the denial of the amendment.").  <u>Minter v. Prime Equipment Co</u>. seems to clarify that the distinction is between "delay" and "undue delay."  <u>Minter v. Prime Equipment Co.</u>, 451 F.3d at 1205-06.  Delay is undue "when the party filing the motion has no adequate explanation for the delay."  <u>Minter v. Prime Equipment Co.</u>, 451 F.3d at 1206.

Refusing leave to amend is generally justified only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. See Castleglen, Inc. v. Resolution Tr. Corp., 984 F.2d 1571, 1585 (10th Cir. 1993)(citing Foman v. Davis, 371 U.S. at 182). Again, the matter is left to the Court's discretion. See Frank v. U.S. W., Inc., 3 F.3d at 1365-66. See Duncan v. Manager, Dep't of Safety, City & Cty. of Denver, 397 F.3d 1300, 1315 (10th Cir. 2005)(quoting Frank v. U.S. West, Inc., 3 F.3d at 1365-66, and stating that resolving the issue whether to allow a plaintiff to file a supplement to his complaint is "well within the discretion of the district court"). "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" B.T. ex rel. G.T. v. Santa Fe Pub. Schs., No. CIV 05-1165 JB\RLP, 2007 WL 1306814, at *2 (D.N.M. March 12, 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)). "Specifically, the . . . Tenth Circuit has determined that district courts should grant leave to amend when doing so would yield a meritorious claim." Burleson v. ENMR-Plateau Tel. Co-op., No. CIV. 05-0073 JB\KBM, 2005 WL 3664299, at *2 (D.N.M. Sept. 23, 2005)(Browning, J.)(citing Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001)).

## ANALYSIS

The Court concludes that: (i) Bernalillo County is a person under 42 U.S.C. § 1983; (ii) pursuant to rule 17 and N.M. Stat. Ann. § 4-46-1, § 1983 claims against Bernalillo County must be brought against the Board of County Commissioners of the County of Bernalillo, because rule 17(b) of the Federal Rules of Civil Procedure requires the application of state law to capacity-

to-be-sued determinations under 42 U.S.C. § 1983 and N.M. Stat. Ann. § 4-46-1 describes the State of New Mexico's capacity-to-be-sued law for counties; and (iii) the Court will allow Mayer leave to amend to assert claims against the Board of County Commissioners of the County of Bernalillo. Accordingly, the Court grants the Motion to Dismiss and grants Mayer leave until December 24, 2018, to move to amend her Complaint to add as a Defendant the Board of County Commissioners of the County of Bernalillo.

## I.     <u>BERNALILLO COUNTY IS A PERSON UNDER § 1983.</u>

Bernalillo County is a person for the purposes of § 1983 and, therefore, is subject to suit.

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. Local governmental units are subject to suit under § 1983, because they are deemed "persons". <u>Boyer v. Bd. of Cty. Comm'rs of the Cty. of Johnson Cty.</u>, 922 F. Supp. 476 (D. Kan. 1996)(Crow, J.)(quoting <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. at 690). <u>See</u> <u>Cox v. Glanz</u>, 800 F.3d 1231, 1254 (10th Cir. 2015) ("2015) ("Under <u>Monell</u>, a local governmental unit such as a municipality or a county, like Tulsa County, 'is a person subject to § 1983 liability, . . . .'" (quoting <u>McDonald v. Wise</u>, 769 F.3d 1202, 1215 (10th Cir. 2014))).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by

the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. at 48. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)(quoting 42 U.S.C. § 1983). Thus, "a governmental entity that is an arm of the state for Eleventh Amendment to the Constitution of the United States' purposes is not a 'person' for section 1983 purposes." McLaughlin v. Bd. of Trs. of State Colleges of Colo., 215 F.3d 1168, 1172 (10th Cir. 2000)(citation omitted)(quoting 42 U.S.C. § 1983). "In general, the Eleventh Amendment does not extend to political subdivisions of the state, such as counties or municipalities." Hobock v. Grant Cty., 216 F.3d 1087, 2000 WL 807225, at *1 (10th Cir. 2000)(unpublished table opinion)(quoting Elam Constr., Inc. v. Reg'l Transp. Dist., 129 F.3d 1343, 1345 (10th Cir. 1997)). A county may, however, enjoy Eleventh Amendment immunity if it "operates as an arm of the state, i.e., an alter ego or instrumentality of the state." Hobock v. Grant Cty., 2000 WL 807225, at *1 (quoting Elam Constr., Inc. v. Reg'l Transp. Dist., 129 F.3d at 1345). "Whether a governmental entity is entitled to Eleventh Amendment immunity turns on the characterization of the entity under state law, the guidance and control exercised by the state, the degree of state funding, and the entity's ability to provide for its own financing by levying taxes and issuing bonds." Sonnenfeld v. City & Cty. of Denver, 100 F.3d 744, 749 (10th Cir. 1996). "However, 'the most important consideration is whether a judgment against the entity would be paid from the state treasury.'" Hobock v. Grant Cty., 2000 WL 807225, at *1 (quoting Elam Constr., Inc. v. Reg'l Transp. Dist., 129 F.3d at 1345). Municipalities and local governments are "persons" who may be sued under § 1983. Monell v. Dep't of Soc. Servs. of City of New

<u>York</u>, 436 U.S. at 690.

      In the State of New Mexico, counties do not operate as the state's arms or instrumentalities and, instead, operate as independent political subdivisions.  See <u>Daddow v. Calsbad Mun. Sch. Dist.</u>, 1995-NMSC-032, ¶ 23, 898 P.2d 1235, 1243 ("School districts operate independently, like counties and municipalities.").  Counties levy taxes and issue bonds, <u>see</u>, <u>e.g.</u>, N.M. Stat. Ann. §§ 4-38-17, 4-49-7, and counties cover the risks of constitutional violations that law enforcement officers acting within the scope of their duties committed, <u>see</u>, <u>e.g.</u>, §§ 41-4-3(C), 41-4-12, 41-4-20(A)(1)(a).  The New Mexico Legislature stated: "All counties are granted the same powers that are granted municipalities except for those powers that are inconsistent with statutory or constitutional limitations placed on counties."  N.M. Stat. Ann. § 4-37-1.  The New Mexico Legislature also stated: "A municipality is a body politic and corporate [and] . . . may: (A) sue or be sued . . . ."  N.M. Stat. Ann. § 3-18-1.  <u>See</u>, <u>e.g.</u>, <u>Tenorio v. San Miguel Det. Ctr.</u>, No. CIV 15-0349 LF/WPL, 2016 WL 9819588, at *5 (D.N.M. Aug. 11, 2016)(Fashing, M.J.)("Under New Mexico law, counties are granted the same powers as municipalities, and therefore may sue and be sued.").  In fact, § 4-46-1, which requires that the county sue or be sued in the name "the board

of county commissioners of the county of . . . (or add (alteration in original)?" contemplates that

a county is an entity with a separate legal existence and subject to suit.  N.M. Stat. Ann. § 4-46-1.

## II.     RULE 17(B)[24] OF THE FEDERAL RULES OF CIVIL PROCEDURE REQUIRES APPLICATION OF STATE LAW TO CAPACITY-TO-BE-SUED DETERMINATIONS UNDER § 1983.

Bernalillo County contends that, although Monell v. Department of Social Services of City

of New York states that municipalities and local government units are subject to suit under § 1983,

---

[24]Rule 17 of the Federal Rules of Civil Procedure states, in relevant part:

**(a)     Real Party in Interest.**

(1)     *Designation in General*.  An action must be prosecuted in the name of the real party in interest.  The following may be sued in their own names without joining the person for whose benefit the action is brought:

(A)     an executor;

(B)     an administrator;

(C)     a guardian;

(D)     a bailee;

(E)     a trustee of an express trust;

(F)     a party with whom or in whose name a contract has been made for another's benefit; and

(G)     a party authorized by statute.

(2)     *Action in the Name of the United States for Another's Use or Benefit*.  When a federal statute so provides, an action for another's use or benefit must be brought in the name of the United States.

see <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. at 690, rule 17(b)(3)[25] of the

Federal Rules of Civil Procedure's directive to look to state law in determining capacity-to-be-

sued questions could nonetheless render a local government unit a non-suable entity, <u>see</u> Motion

---

      (3)     *Joinder of the Real Party in Interest*.  The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

   (b)    **Capacity to Sue or be Sued.**  Capacity to sue or be sued is determined as follows:

      (1)     for an individual who is not acting in a representative capacity, by the law of the individual's domicile;

      (2)     for a corporation, by the law under which it was organized; and

      (3)     for all other parties, by the law of the state where the court is located, except that:

          (A)     a partnership or other unincorporated association with no such capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws; and

          (B)     28 U.S.C. §§ 754 and 959(a) govern the capacity of a receiver appointed by a United States court to sue or be sued in a United States court.

Fed. R. Civ. P. 17(a)-(b).

[25]Because a county is neither an "individual not acting in a representative capacity," nor a "corporation," rule 17(b)(3), "for all other parties," guides the determination of a county's capacity-to-be-sued.  Fed. R. Civ. P. 17.

at 4 (arguing that rule 17 of the Federal Rules of Civil Procedure "allows statutes like NMSA § 4-46-1 to control the capacity of governmental entities to be sued for federal claims.").  Bernalillo County argues that Lundquist and Darby, two out-of-circuit cases, pursuant to rule 17(b), apply state law to capacity determinations under § 1983.  In Lundquist, the plaintiff commenced an action alleging that her former employer, the University of South Dakota Sanford School of Medicine ("School of Medicine"), violated the ADA.  The district court granted the School of Medicine summary judgment "on the ground that it lacked the capacity to be sued under state law and Rule 17(b) of the Federal Rules of Civil Procedure."  Lundquist, 705 F.3d at 379.  On appeal, the plaintiff did not contest that the School of Medicine lacked capacity to sue and to be sued under the State of South Dakota law.  See Lundquist, 705 F.3d at 380.  "Instead, she argues that her claims should not have been dismissed under Rule 17(b) because they fall within an exception to the general rule that state law controls this issue . . . Fed. R. Civ. P. 17(b)(3)(A)."  Lundquist, 705 F.3d at 380.  Rule 17(b)(3)(A) provides: "a partnership or other unincorporated association with no capacity under that state's law may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws . . . ."  Fed. R. Civ. P. 17(b)(3)(A)(emphasis in original).  Lundquist asserted that the School of Medicine is a partnership that may be sued in its common name.  See Lundquist, 705 F.3d at 380.  The district court concluded that the School of Medicine is not a partnership, but the Eighth Circuit advanced a "more basic reason the exception in Rule 17(b)(3)(A) does not apply in this case."  Lundquist, 705 F.3d at 380.  The Eighth Circuit stated: "When state law *does* grant such an entity the capacity to sue or be sued, but specifies the manner in which that capacity may be exercised, state law

limitations on the manner of exercise apply." Lundquist, 705 F.3d at 380-81 (emphasis in original)(citing Arbor Hill Concerned Citizens Neighborhood Ass'n v. City of Albany, 250 F. Supp. 2d 48, 61-62 (N.D.N.Y. 2003)(Hurd, J.)). The Eighth Circuit concluded that:

> The South Dakota legislature did not deny the University and its School of Medicine the capacity to sue and be sued. Rather, the legislature mandated that the capacity resides in the Board of Regents, the unit of government that controls the University. Thus, the School of Medicine only has the capacity to be sued in an action against the Board of Regents, whether that action asserts federal claims against the School of Medicine as a stand-alone entity, or as a 'partnership' with Sanford Health.

Lundquist, 705 F.3d at 381 (quoting Fed. R. Civ. P. 17(b)(3)(A)).

Bernalillo County asserts that the County lacks the capacity to be sued under New Mexico law. See Motion at 5. Although the Court agrees with Bernalillo County's assertion that Lundquist is highly analogous, the Court concludes that Bernalillo County misreads N.M. Stat. Ann. § 4-46-1 in reaching its conclusion that the County "lacks the capacity to be sued." Motion at 4. The New Mexico Legislature permits counties to sue and be sued so long as suit is brought in the name of the board of county commissioners. See N.M. Stat. Ann. § 4-46-1. Lundquist, therefore, is highly analogous to this case. Like the School of Medicine, Bernalillo County may sue or be sued, so long as a specified party -- in this case, the board of county commissioners, is named. See N.M. Stat. Ann. § 4-46-1 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be the board of county commissioners . . . ."). Bernalillo County, therefore, does not fit within the rule 17(b)(3)(A) exception for partnerships or unincorporated associations with no capacity under state law and the New Mexico state law limitations on suits against counties apply to federal claims brought under § 1983.

Bernalillo County argues that the Fifth Circuit has also concluded that rule 17 of the Federal Rules of Civil Procedure requires the application of state law to capacity-to-be-sued determinations with regard to federal claims. See Motion at 6. The New Mexico Legislature has not granted Bernalillo County the capacity to engage in separate litigation, but Mayer contends that § 1983 confers capacity-to-be-sued on Bernalillo County as a municipality, which is a person under § 1983. See Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. at 690. The Fifth Circuit in Darby found that the police department against which the plaintiff sought to bring suit lacked "jural existence," because the City of Pasadena never granted it the capacity to engage in separate litigation. 939 F.3d at 314. Darby contended that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, grants the police department, as a City of Pasadena agent, "jural existence" and hence the capacity to be sued. 939 F.2d at 314. Darby contended that Title VII "overrides local law and grants him the right to sue the [police] department as an independent entity." Darby, 939 F.2d at 314. The Fifth Circuit disagreed, concluding:

> Congress, in enacting Title VII, created a cause of action for victims of discrimination. This made all covered employers liable for any discrimination that they might occasion. It did not, however, speak to whether a plaintiff should name a subdivision or the ultimate employer on the first page of his complaint, and it did not provide an exception to the normal rule that a government entity may choose the level at which it will pursue and defend all lawsuits involving it.

Darby, 939 F.2d at 314.

Bernalillo County also asks the Court to consider United States v. City of New York, in which Judge Garaufis dismissed all claims, including a Title VII claim, against the Fire Department of the City of New York and the New York City Department of Citywide Administrative Services based on rule 17(b)(3) and New York City law, stating that claims for the

violation of any law shall be brought in the City of New York's name, and not in any agency's name. See Motion at 5. In United States v. City of New York, Judge Garaufis concludes that, "[u]nder Rule 17(b)(3) of the Federal Rules of Civil Procedure, a party's amenability to suit in federal court is determined by the law of the state in which the district court is located." United States v. City of New York, 683 F. Supp. 2d at 243.

Bernalillo County contends that, "[b]ecause the Rule 17 issue does not appear to have come before the Tenth Circuit, this Court should rely on the precedent from the Eighth and Fifth Circuits and find that New Mexico law prohibits any claim, state or federal, against a county department or 'the County.'" Motion at 6-7. The Court disagrees with Bernalillo County's assertion that the rule 17 issue has not come before the Tenth Circuit, which has addressed the rule 17 issue in recent unpublished decisions, which accord with the Fifth and Eight Circuits' decisions. In Mayfield v. Harvey County Sheriff's Department, 732 F. App'x 685 (10th Cir. 2018)(unpublished), the Tenth Circuit stated: "As the district court recognized, for parties who are not individuals or corporations, the capacity to be sued is determined 'by the law of the state where the court is located.'" 732 F. App'x at 688 (quoting Fed. R. Civ. P. 17(b)(3)). In Mayfield v. Harvey County Sheriff's Department, the Tenth Circuit looks to Kansas law, which states that subordinate government agencies do not have the capacity to sue or be sued, and concludes that, because the Harvey County Sheriff's Department lacks the capacity to be sued under Kansas law, it cannot be sued under federal law. See Mayfield v. Harvey Cty. Sheriff's Dep't, 732 F. App'x at 688. In White v. Utah, No. 00-4109, 2001 WL 201980 (10th Cir. March 1, 2001), the Tenth Circuit stated: "The law of the state in which the district court sits governs the capacity of a governmental entity to sue or to

be sued." 2001 WL 201980, at *1. The Tenth Circuit concludes that, in Utah, "a statute expressly provides that a county may sue or be sued, see U.C.A. § 17-50-302(2)(a), but there is no statutory or case authority supporting a direct action against a county's subdivisions, including its jails." White v. Utah, 2001 WL 201980, at *1. The Tenth Circuit concludes that the district court properly dismissed the plaintiff's federal and state claims against the Salt Lake County, Utah, Jail. 2001 WL 201980, at *1.

Bernalillo County also points the Court to a District of New Mexico case considering rule 17, and following Lundquist and Darby "to hold that Rule 17 allows the State and its subdivisions to utilize a naming statute to control the specific governmental entity which one may sue." Notice at 1. In Lamendola, Magistrate Judge Molzen stated that "the Taos County Sheriff's Office submits that the Tenth Circuit has not yet addressed the interplay of Rule 17 and a state naming statute. The Court's own research comports with Defendant's position." Lamendola, 2018 WL 425119, at *4. Magistrate Judge Molzen considered Lundquist and Darby and asserted that "[t]he analyses of various district courts and secondary sources are also in accord with that of the Fifth and Eighth Circuits." Lamendola, 2018 WL 425119, at *4. Magistrate Judge Molzen also concluded that

> the Court must satisfy itself that application of § 4-46-1 does not place significant limitations on Plaintiff's ability to pursue his federal causes of action. While a state may limit *state* causes of action, it cannot, through a naming statute or otherwise, effectively undermine a Plaintiff's ability to assert a federal cause of action.

Lamendola, 2018 WL 425119, at *4 (emphasis in original)(citing Haywood, 556 U.S. at 736)(holding that a New York statute which divested state courts of jurisdiction over § 1983 suits seeking damages against corrections officers was unconstitutional, and warning that states "lack

authority to nullify a federal right or cause of action they believe is inconsistent with their local

policies").  Magistrate Judge Molzen considered footnote 4 of <u>Gallegos</u>,[26] in which the Court

explained:

> Just as New York is not able to say, in a § 1983 context, a plaintiff cannot sue a
> corrections officer, but must instead sue the state, New Mexico is not able to say,
> in a § 1983 context, that the plaintiff cannot sue BCMDC, but instead, must sue the
> board of county commissioners.

<u>Lamendola</u>, 2018 WL 425119, at *4 (quoting <u>Gallegos</u>, 272 F. Supp. 3d at 1269 n.4).

Magistrate Judge Molzen stated that § 4-46-1 is unlike the New York statute at issue in

<u>Haywood</u>, because,

> here, Plaintiff may still maintain the same causes of action and obtain the same
> relief in the same court and under the same federal statutes based upon the
> purported actions of the Taos County Sheriff's Office.  Section 4-46-1 merely
> dictates that he do so by naming the Taos County Board of County
> Commissioners as his defendant, rather than the subordinate county entity which
> he chose to name in his Complaint.

<u>Lamendola</u>, 2018 WL 425119, at *6.  The Court agrees that, by incorporating the capacity test

from § 4-46-1, rule 17 of the Federal Rules of Civil Procedure does not alter the causes of action

or relief that Mayer could obtain based on Bernalillo County's purported actions.  Rather, § 4-46-1

merely dictates that Mayer name the Board of County Commissioners of the County of Bernalillo

---

[26]In footnote 4 in <u>Gallegos</u>, the Court expressed its sensitivity to states restricting Congress'
words "any person" in the Civil War legislation of § 1983.  In <u>Gallegos</u>, no one mentioned rule 17
in their briefing, or at the hearing, and the Court did not mention it in its footnote.  The Court
remains vigilant, as it was in <u>Gallegos</u>, to states taking away a § 1983 plaintiff's ability to sue a
person that exists.  On the other hand, Bernalillo County is correct that, if that person can still be
sued, as § 4-46-1 allows, then its concerns are mitigated.  The Court thinks <u>Gallegos</u> still stands
for the idea that a limit exists on a state's power to preclude a § 1983 plaintiff from suing a person
in any name.  However, Bernalillo County -- however named -- will pay if there is a judgment, so
the Court's concerns are eliminated or at least sufficiently mitigated.

as his defendant, rather than the county itself. "Ultimately, [a] County may choose the level at which it will defend all lawsuits against it." Lamendola, 2018 WL 4258119, at *6. Section 4-46-1 does not undermine Mayer's state or federal actions, and the section's plain language requires Mayer to name the Board of County Commissioners of the County of Bernalillo as the defendant. Accordingly, the Court will grant the Motion in part, permitting Mayer leave to amend her Complaint to substitute the Board of County Commissioners of the County of Bernalillo for Bernalillo County.

### III.     THE COURT WILL DENY BERNALILLO COUNTY'S REQUEST THAT THE COURT ALLOW AN INTERLOCUTORY APPEAL.

Bernalillo County averred, at the hearing, that, if the Court elects to make a ruling regarding whether rule 17 requires the application of state law to capacity-to-be-sued questions arising under § 1983, Bernalillo County would "take an interlocutory appeal on the question." Tr. at 16:22-23 (Huss). Bernalillo County stated that, "[i]f everybody agrees, [Bernalillo County is] ready to take that issue up on appeal if it will help clarify the law for the county and for the Court." Tr. at 17:12-14 (Huss). The Court will deny Bernalillo County's oral request for an interlocutory appeal. District judges may certify an order to the Courts of Appeals when they determine "that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). See Dorato v. Smith, 163 F. Supp. 3d at 858. This case does not satisfy these conditions.

First, an interlocutory appeal must involve a "controlling question of law."     28

U.S.C. § 1292(b).  See Certain Underwriters at Lloyd's, London, Subscribing to Policy Number

501/NM03ACMB v. Nance, 2006 WL 4109675, at *3 ("The phrase 'question of law' as used in

28 U.S.C. § 1292(b) does not refer to a particular application of facts to the law, but rather 'has

reference to a question of the meaning of a statutory or constitutional provision, regulation, or

common law doctrine." (quoting 28 U.S.C. § 1292(b))); Ahrenholz v. Bd. of Tr. of the Univ. of

Ill., 219 F.3d at 676 (stating that a "question of law" involves a "question of the meaning of a

statutory or constitutional provision, regulation, or common law doctrine").  The question that

Bernalillo County wants to appeal is whether rule 17(b) of the Federal Rules of Civil Procedure

requires the application of state law to capacity-to-be sued questions under federal claims, such as

claims arising under 42 U.S.C. § 1983.  Bernalillo County's question is a pure question of law free

from factual contest.  See Ahrenholz v. Bd. of Tr. of the Univ. of Ill., 219 F.3d at 676.

Second, however, Bernalillo County has not shown that substantial ground for difference

of opinion exists.  Uncertain precedent, especially in the face of conflicting opinions, may be one

element that suggests that substantial ground for difference of opinion exists.  See Adams v.

Cyprus Amax Minerals Co., 149 F.3d 1156, 1157-58 & n.1 (10th Cir. 1998)(allowing an

interlocutory appeal where four circuits had ruled on the issue presented but the Tenth Circuit had

not).  Nevertheless, that a court confronts an issue of first impression does not mean that substantial

ground for difference of opinion exists.  See Krangel v. Gen. Dynamics Corp., 968 F.2d at 916;

Dorato v. Smith, 163 F. Supp. 3d at 880-81.  Here, no substantially conflicting case law exists.

The Fifth and Eighth Circuits have interpreted rule 17 of the Federal Rules of Civil Procedure to

direct the Court to apply state law to determine capacity-to-be-sued questions.  See Lundquist, 705

F.3d 378 (8th Cir. 2013); <u>Darby</u>, 939 F.2d 311 (5th Cir. 1991)).  Magistrate Judge Molzen's opinion comports with the Fifth and Eighth Circuit decisions.  <u>See</u> <u>Lamendola</u>, 2018 WL 425119, at *4.  After reviewing substantial caselaw, the Court also identified two unpublished Tenth Circuit opinions in accordance with the Fifth and Eight Circuit decisions.  <u>See</u>  <u>Mayfield v. Harvey Cty. Sheriff's Dep't</u>, 732 F. App'x at 688; <u>White v. Utah</u>, 2001 WL 201980, at *1.  Bernalillo County does not point to an on-point case, from another court, with which the Court had to disagree.  Presented with a rule 17 question, the Court clarified its own opinion, and is also in agreement with the Fifth and Eight Circuits.  A disagreement created only by the Court's prior opinion in <u>Gallegos</u>, in which rule 17 was not addressed, is not enough to create a substantial ground for difference of opinion.

Finally, Bernalillo County does not show that an interlocutory appeal will materially advance the litigation's ultimate termination.  The Court's decision to allow Mayer leave to amend her Complaint and assert her claims against the Board of County Commissioners of the County of Bernalillo will not lead to protracted litigation and extensive discovery.  If it wants to fight over the details, it can, but Bernalillo County -- not the Court -- will delay the case's resolution.  Bernalillo County attempts to appeal the Court's ruling, not save the Court any work.

An interlocutory appeal will only prolong the district court litigation and the time before which Bernalillo County may appeal.  If, even after Mayer properly asserts claims against the Board of County Commissioners for the County of Bernalillo, Bernalillo County disagrees with the Court's application of the law to this case's facts, Bernalillo County may raise its arguments on appeal once the Court enters final judgment.  <u>See</u> <u>Certain Underwriters at Lloyd's, London,</u>

Subscribing to Policy No. 501/NM03ACMB v. Nance, 2006 WL 4109675, at *3 (denying an interlocutory appeal after the Court had already decided the issue that the movant wanted to appeal).  The Court will therefore not allow Bernalillo County to appeal the Court's ruling under § 1292(b).

## IV.    MAYER MAY AMEND HER COMPLAINT TO ASSERT HER STATE AND FEDERAL CLAIMS AGAINST THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF BERNALILLO.

Mayer requests that, pursuant to rule 17(3), the Court allow her to amend her Complaint to assert claims against the Board of County Commissioners of the County of Bernalillo instead of against Bernalillo County.  See Response at 2.  Mayer quotes from rule 17(3): "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  Response at 2 (quoting Fed. R. Civ. P. 17(3)).  Mayer argues, finally, that the Tenth Circuit has stated that the federal rules "erect a powerful presumption against rejecting pleadings for failure to state a claim."  Response at 2 (quoting Maez v. Mtn. States Tel. & Tel., Inc., 54 F.3d at 1496).

Bernalillo County asserts that Mayer's implied request to amend her Complaint disregards D.N.M. LR-Civ. 7.1(a) and 15.1.  See Reply at 4.  D.N.M. LR-Civ. 7.1(a) requires that the party filing a Motion to Amend send a copy to opposing counsel before filing.  See Reply at 4 (citing D.N.M. LR-Civ. 7.1(a).  Bernalillo County asserts that, additionally, D.N.M. LR-Civ. 15.1 requires that the filing party attach a copy of the proposed amended complaint to the motion to amend.  See Reply at 4.  Bernalillo County asserts that, because Mayer has not complied with D.N.M. LR-

Civ. 7.1(a) and 15.1, the Court should deny her request to amend.  See Reply at 4.  Bernalillo County also argues that <u>Maez v. Mtn. States Tel. & Tel., Inc.</u>, to which Mayer cites for the assertion that there is a powerful presumption against rejecting pleadings, <u>see</u> Response at 2, is an outdated standard and that, instead, <u>Iqbal</u> and <u>Robbins v. Oklahoma</u>, control.  See Reply at 4.  Bernalillo County also argues that allowing Mayer to amend her Complaint "would very likely be futile," because it would inappropriately split claims between the state courts and the Court.  Reply at 4.  Bernalillo County argues, accordingly, that the Court should grant its Motion and dismiss it from the case with prejudice, "because no claim could ever be stated against 'the County' and there is no pending motion to amend," and the real issue is not that Bernalillo County is not the real-party-in-interest, but that it does not have the capacity to be sued.  Reply at 5.

At the hearing, the Court began by stating that it would likely order Mayer to amend her Complaint to "drop out Bernalillo County" at least on the state law claims.  Tr. at 2:14-17 (Court). Mayer responded that: "As far as amending the complaint, I think that's the appropriate remedy. I'm happy to do it."  Tr. at 3:3-5 (Chisholm).  Bernalillo County stated that they are within the statute of limitations and that there is no relation-back problem that would preclude amendment, but that they are advancing the N.M. Stat. Ann. § 4-46-1 argument in every case, to obtain uniform judgments and uniform caselaw.  <u>See</u> Tr. at 6:25-7:7 (Huss).  Bernalillo County stated that, typically, courts permit amendment without considering the rule 17 capacity-to-be-sued issue. <u>See</u> Tr. at 7:13-15 (Huss).  Bernalillo County averred that it does not oppose granting Mayer leave to amend her Complaint, "although there is no motion to amend or proposed amended complaint" before the Court.  Tr. at 7:25-8:2 (Huss).

The Court has not entered a scheduling order.  <u>See</u> Order by Magistrate Judge Steven C. Yarbrough Finding Good Cause Under Fed. R. Civ. P. 16(B)(2) To Delay the Entry of a Scheduling Order for the Reasons Set Forth on the Record During the Rule 16 Scheduling Conference Held On 9/20/18, filed September 21, 2018 (Doc. 28).  When a court has not entered a scheduling order in a particular case, rule 15 governs amendments to a plaintiff's complaint.  <u>See</u> Fed. R. Civ. P. 15.  Under rule 15(a) of the Federal Rules of Civil Procedure, a court should freely grant leave to amend a pleading where justice so requires.  <u>See</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. at 579-80; <u>Youell v. Russell</u>, 2007 WL 709041, at *1-2; <u>Burleson v. ENMR-Plateau Tele. Coop.</u>, 2005 WL 3664299, at *1-2.  The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . [,] repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  <u>Fomen v. Davis</u>, 371 U.S. at 182.  <u>See</u>  <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. at 579-80; <u>Curley v. Perry</u>, 246 F.3d at 1284.  A court should deny leave to amend under rule 15(a) where the proposed "amendment would be futile."  <u>Jefferson Cty. Sch. Dist. v. Moody's Investor's Serv.</u>, 175 F.3d at 859.  <u>See</u> <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. at 579-80.  An amendment is "futile" if the pleading, "as amended, would be subject to dismissal."  <u>In re Thornburg Mortg., Inc. Sec. Litig.</u>, 265 F.R.D. at 579-80 (citing <u>TV Commc'ns Network, Inc. v. Turner Network Television, Inc.</u>, 964 F.2d at 1028).  Although Bernalillo County contends that amendment would be futile, because Bernalillo County lacks capacity to be sued, <u>see</u> Reply at 5, the Court does not agree.  Section 4-46-1 provides: "In all suits or proceedings by or against a

county, the name in which the county shall sue or be sued shall be the board of county commissioners . . . ." N.M. Stat. Ann. § 4-46-1. Section 4-46-1 is a naming statute -- it provides that, to sue the county, a plaintiff must name the board of county commissioners. If Mayer, who neither party disputes is within the statute of limitations, amends her Complaint to assert claims against the Board of County Commissioners of the County of Bernalillo as § 4-46-1 requires, there is no dispute that the Board of County Commissioners of the County of Bernalillo has the capacity to be sued. Amendment would not be futile, and Bernalillo County has alleged no undue delay, bad faith, or dilatory motive on Mayer's part. Bernalillo County averred at the hearing that it does not oppose granting Mayer leave to amend her Complaint, "although there is no motion to amend or proposed amended complaint" before the Court. Tr. at 7:25-8:2 (Huss). Nevertheless, the Court detects no prejudice to the Board of County Commissioners of the County of Bernalillo. The Court concludes that eleven days is sufficient time for Mayer to replace Bernalillo County with the Board of Commissioners of the County of Bernalillo in her Complaint. Accordingly, the Court will grant Mayer leave to amend her Complaint and add the Board of County Commissioners of the County of Bernalillo as defendant. Cf. Lamendola, 2018 WL 4258119, at *6 (concluding that the plaintiff should be granted leave to move to amend his complaint to add as defendant the Board of County Commissioners of Taos County); Darby, 939 F.2d at 315 (holding that the district court abused its discretion when it denied the plaintiff leave to amend his complaint to add the city as a defendant, where the city had notice of the claim against it, because the plaintiff had sued the city's police department). This leave extends only to change the name "Bernalillo County" to "Board of County Commissioners of the County of Bernalillo." If Mayer wants to make any other changes to her

pleading, she needs to move for leave to amend, amend the proposed pleading, and comply with D.N.M. LR-Civ. 7.1(a) and 15.1.

**IT IS ORDERED** that: (i) Defendant Bernalillo County's Motion to Dismiss Under Rule 1-012, filed July 19, 2018 (Doc. 12), is granted in part, as the Court dismisses Defendant Bernalillo County without prejudice; and (ii)  all claims in the Plaintiff's Complaint for Negligence Per Se, Civil Conspiracy, Intentional Infliction of Emotional Distress, Violation of New Mexico Tort Claims Act, and the Fourteenth Amendment of the U.S. Constitution, filed July 12, 2018 (Doc. 1-1), against Defendant Bernalillo County are dismissed; (iii) Bernalillo County is dismissed from the case; (iv) Plaintiff Jenika Mayer is granted leave until December 24, 2018, to amend her Complaint to add as a Defendant the Board of County Commissioners of the County of Bernalillo; and (v) if Mayer wants to make any other changes to her Complaint, other than adding the Board of County Commissioners of the County of Bernalillo, she must fully comply with D.N.M. LR-Civ. 7.1(a) and 15.1 and move for leave to amend and file the amended pleading.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alex Chisholm
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Brandon Huss
Mark L. Drebing
New Mexico Association of Counties
Santa Fe, New Mexico

--and--

Patrick F. Trujillo
Sandoval County
Bernalillo, New Mexico

    *Attorneys for Defendant Bernalillo County*

Cynthia L. Weisman
Mark Dow
Melanie L. Ben
Bauman, Dow & Stambaugh, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Marilyn Jones, Gary Jones, Robert Long, Stephanie Long, and Nathaniel Long*