# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JENIKA MAYER,

     Plaintiff,

vs.                                                                      No. CIV 18-0666 JB\SCY

BERNALILLO COUNTY; ERIC W.
SCHULER, Individually and in his official
capacity; THERESA BACA SANDOVAL,
Individually and in her official capacity; JOHN
OR JANE DOE BCSO SHERIFF OFFICERS,
A, B, C, D, E and F; MARILYN JONES;
GARY JONES; ROBERT LONG;
STEPHANIE LONG, and NATHANIEL
LONG,

     Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Jones and Long Defendants' First

Amended Request for Judicial Notice in Support of Their Motion to Dismiss, filed September 21,

2018 (Doc. 30)("Request"); and (ii) the Motion to Dismiss by Defendants Marilyn Jones, Gary

Jones, Robert Long, Stephanie Long, and Nathaniel Jones[1] [sic] and Memorandum in Support,

filed September 21, 2018 (Doc. 31)("Motion").  The primary issues are: (i) whether the Court may

or must take judicial notice of the documents which Defendants Marilyn Jones, Gary Jones, Robert

Long, Stephanie Long, and Nathanial Long -- collectively, the Jones and Long Defendants -- list

in the Request, when all the listed documents were filed with the Court of Appeals of New Mexico

and with the Second Judicial District Court of Bernalillo County, New Mexico; (ii) whether

Plaintiff Jenika Mayer states a plausible claim for relief against the Jones and Long Defendants in

---

[1]The Motion title incorrectly identifies Nathanial Long as Nathaniel Jones.

her Amended Complaint for Negligence Per Se, Civil Conspiracy, Intentional Infliction of Emotional Distress, Violation of New Mexico Tort Claims Act, and the Fourteenth Amendment of the U.S. Constitution ¶ 1, at 1, filed December 24, 2018 (Doc. 45)("Complaint"), where Mayer's claims are based on her assertion that the Jones and Long Defendants trespassed on her land, and the Court of Appeals of New Mexico earlier determined that the land in question is an easement belonging to the Jones and Long Defendants; (iii) whether, under New Mexico law, collateral estoppel bars Mayer from relitigating the easement's existence, because in a 2011 affidavit, see Affidavit of Jenika Mayer (executed Nov. 7, 2011), filed September 21, 2018 (Doc. 30-2)("Mayer Aff.")(listing Marilyn Jones, Gary Jones, Robert Long, and Stephanie Long as intervenors), Mayer admits knowing of the easement before purchasing her property, the Court of Appeals of New Mexico determined, in a 2015 decision, that a twenty-foot easement exists, see Mayer v. Smith, 2015-NMCA-060, 350 P.3d 1191, dated October 8, 2015, filed in state court October 13, 2015, filed in federal court September 21, 2018 (Doc. 30-5)("2015 Court of Appeals Opinion"), and in 2017, the state district court stated that the Court of Appeals of New Mexico's decision definitively establishes the twenty-foot easement's existence, see Mayer v. Smith, D-202-CV-2009-07967, Memorandum Opinion and Order, filed in state court April 17, 2017, filed in federal court September 21, 2018 (Doc. 30-9)("Dist. Ct. MOO") and (iv) whether, if either state or federal collateral estoppel applies, it bars Mayer from relitigating the easement's existence. The Court concludes that: (i) the Court will take judicial notice of the documents attached to the Motion and listed in the Request, while being careful not to take judicial notice of the statements in the documents for the truth of the matters asserted therein; (ii) Mayer's Complaint states a claim

against the Jones and Long Defendants for negligence per se and civil conspiracy, because whether they trespassed on her land has not been determined in a valid, final judgment on the merits to which the Court must give preclusive effect, (iii) Mayer's Complaint does not state a claim against the Jones and Long Defendants for intentional infliction of emotional distress; and (iv) under New Mexico and federal law, Mayer is not collaterally estopped from relitigating the easement's existence. Accordingly, the Court grants the Request and grants the Motion in part and denies the Motion in part.

## FACTUAL BACKGROUND[2]

---

[2]Rather than addressing the Request in the Procedural Background, the Court discusses it here, so that the Court may incorporate into the Factual Background the facts of which it takes judicial notice. Regarding the Request, normally, the sufficiency of a complaint must rest on its contents alone. See Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010). The Jones and Long Defendants, however, have requested the Court to consider a number of documents attached to their Motion, which, they assert, are matters of public record and therefore are documents of which the Court may take judicial notice. See Request at 1; Motion at 7 (citing Wright & Miller, Federal Practice & Procedure § 1357 (3d ed. 2018)). When ruling on a motion to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). The United States Court of Appeals for the Tenth Circuit stated that facts subject to judicial notice, which may be considered in a rule 12(b)(6) motion without converting the motion into a motion for summary judgment, include "another court's publicly filed records 'concerning matters that bear directly upon the disposition of the case at hand.'" Hodgson v. Farmington City, 675 F. App'x 838, 840-41 (10th Cir. 2017)(unpublished)(quoting United States v. Ahidley, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)("Although we are not obligated to do so, we may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.")). See St. Louis Baptist Temple, Inc. v. F.D.I.C., 605 F.2d 1169, 1172 (10th Cir. 1979)("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

In Tal v. Hogan, 453 F.3d 1244 (10th Cir. 2006), the Tenth Circuit stated:

The Court draws its facts from Mayer's Complaint.[3]  Defendant Bernalillo County removed

Ordinarily, consideration of material attached to a defendant's answer or motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties notice and an opportunity to present relevant evidence.  Fed. R. Civ. P. 12(b); David v. City & Cty. of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996).  However, facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment.  See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1278 n.1 (10th Cir. 2005)(citing 27A Fed. Proc., L. Ed. § 62:520 (2003)).  This allows the court to "take judicial notice of its own files and records, as well as facts which are a matter of public record."  Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by* McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).  However, "[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein."  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

Tal v. Hogan, 453 F.3d at 1264 n.24.  The Court concludes that the attachments to the Motion are all matters of public record, filed in the Second Judicial District Court, and/or the Court of Appeals of New Mexico, and, therefore, the Court will consider them.  Accordingly, the Court grants the Request, and  has incorporated the contents from the documents listed in the Request into its Factual Background, careful not to consider the statements in the documents for the truth of the matter asserted, unless they fall within a hearsay exception.

[3]Mayer filed a Complaint for Negligence Per Se, Civil Conspiracy, Intentional Infliction of Emotional Distress, Violation of New Mexico Tort Claims Act, and the Fourteenth Amendment of the U.S. Constitution, filed in state court April 11, 2018, filed in federal court July 12, 2018 (Doc. 1-1)("Original Complaint").  On December 24, 2018, Mayer filed an Amended Complaint, in response to Mayer v. Bernalillo County, No. CIV 18-0666 JB\SCY, 2018 WL 6594231 (D.N.M. Dec. 13, 2018)(Browning, J.), filed December 13, 2018 (Doc. 43)(dismissing Defendant Bernalillo County and permitting Mayer to amend the Complaint to assert claims against the Board of County Commissioners of the County of Bernalillo).  See Amended Complaint for Negligence Per Se, Civil Conspiracy, Intentional Infliction of Emotional Distress, Violation of New Mexico Tort Claims Act, and the Fourteenth Amendment of the U.S. Constitution, filed December 24, 2018 (Doc. 45)("Complaint")(asserting claims against the Board of County Commissioners of the County of Bernalillo, Eric W. Schuler, individually and in his official capacity, Theresa Baca Sandoval, individually and in her official capacity, John or Jane Doe Sheriff Officers A, B, C, D, and E, Marilyn Jones, Gary Jones, Robert Long, Stephanie Long, and Nathanial Long).  The

the case to federal court.  See Notice of Removal, filed July 12, 2018 (Doc. 1)("Notice of Removal").  The Court accepts Mayer's factual allegations as true for the limited purpose of deciding the Motion.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)("Iqbal")(clarifying the "tenet that a court must accept as true all of the [factual] allegations contained in a complaint")(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008)(concluding that, in the motion to dismiss posture, a court must "accept as true all well-pleaded facts, as distinguished from conclusory allegations").  The Court also incorporates facts from the public record documents attached to the Motion.  See supra n.2.

With that understanding of the allegations, Mayer is a resident of Bernalillo County.  See Complaint ¶ 1, at 1.  The Jones and Long Defendants owned neighboring property in the same subdivision and were litigants in a state suit filed July 1, 2009, Mayer v. Jones, No. CIV D-202-2009-07967 (Second Judicial District Court, County of Bernalillo, State of New Mexico), filed in state court July 1, 2009, filed in federal court September 21, 2018 (Doc. 30-1)("State Complaint").  The State Complaint names Susan Smith as the sole Defendant.  See State Complaint at 1.  The Jones and Long Defendants intervened in the action to enforce the easement.  See Mayer Aff. at 1.  In the Mayer Aff., Mayer attests that she owns Lot 5-1B, and has "always acknowledged the

Amended Complaint is identical to the Original Complaint, except that it replaces Defendant Bernalillo County with Defendant Board of County Commissioners of the County of Bernalillo.

existence of the 1979 twenty (20) foot easement along the north and west edges of Lot 5-1B.[4]"
Mayer Aff. ¶¶ 1-2, at 1.

On January 31, 2012, the Honorable Clay Campbell, District Judge for the Second Judicial District Court, State of New Mexico, held a bench trial in <u>Mayer v. Jones</u>. See <u>Mayer v. Jones</u>, No. CIV D-202-2009-07967, Transcript of Proceedings (dated Dec. 28, 2012), filed in federal court September 21, 2018 (Doc. 30-3)("Transcript of Proceedings"). On January 31, 2012, Judge Campbell granted Mayer's motion for a directed verdict. See Judgment, filed in state court March 20, 2012, filed in federal court September 21, 2018 (Doc. 30-4)("Second Judicial District Judgment"). Judge Campbell concluded that Mayer's estate is the servient estate, the Long Defendants' estate is the dominant estate, and the easement is historically restricted to "occasional use as a hiking trail . . . and restricted use (2 to 3 times a year) as a vehicle trail for the cutting and collecting of firewood on [the Longs'] property." Second Judicial District Judgment ¶¶ 2-4, at 2. Judge Campbell concluded that the Longs had "no authority to cut any trees in the easement or to bring heavy construction equipment upon it," and, therefore, that Mayer's "fence along the tree line within the easement will remain." Second Judicial District Judgment ¶ 5, at 2.

The Jones and Long Defendants appealed Judge Campbell's directed verdict to the Court of Appeals of New Mexico, and the Court of Appeals of New Mexico issued an opinion on March 2, 2015. See 2015 Court of Appeals Opinion. The Court of Appeals of New Mexico stated: "As

---

[4]The 2015 Court of Appeals Opinion indicates that Mayer owns Lot or Tract 5-1B, the Jones Defendants own Lot or Tract 5B, and the Long Defendants own Lot or Tract 5C. See 2015 Court of Appeals Opinion at 1-2. The Court does not accept this fact as true but states it here to clarify the alleged significance of references to 5-1B, 5B, or 5C in the pleadings.

the trees grew in the easement, Plaintiff used her fence to include them in her property, resulting in a nine-to-eleven-foot area becoming inaccessible to Intervenors." 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 4, 350 P.3d at 1194. The Court of Appeals of New Mexico concluded that Mayer is "required to remove her fence from the easement." 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 3, 350 P.3d at 1200. The Court of Appeals of New Mexico remanded the case for proceedings consistent with the 2015 Court of Appeals Opinion regarding the trees that Mayer had planted in the easement over her property and requiring Mayer to remove the trees. See Complaint ¶ 19, at 3 (citing 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 35, 350 P.3d at 1200). Mayer contends that, one of the outcomes of the 2015 Court of Appeals Opinion "was the fact that Ms. Mayer still had the right to present her evidence after the Jones and Long Defendants appealed an involuntary dismissal as provided for by Rule 1-041(B) NMRA." Complaint ¶ 20, at 3 (emphasis in original). Mayer contends:

> If a dismissal made under Rule 1-041(B) is reversed on appeal, the appellate court will remand a non-jury case to the district court for further proceedings, and the defendant (Ms. Mayer in that case) may then present any evidence she may have. (*See Bogle v. Potter*, 1961-NMSC-025, ¶ 19, 68 N.M. 239, 360 P.2d 650).

Complaint ¶ 21, at 3. The Supreme Court of New Mexico denied a writ of certiorari on April 30, 2015. See Mayer v. Jones, 2015-NMCERT-004, 348 P.3d 694 (Table). See also Motion at 4 n.2.

On October 13, 2015, the Court of Appeals of New Mexico issued a Mandate to District Court Clerk, filed in federal court September 21, 2018 (Doc. 30-5)("October, 2015 Mandate"). The mandate finalized the March 2, 2015 Court of Appeals Opinion, attached a copy of the opinion, and remanded the case to the district court for further proceedings consistent with that decision. See October, 2015 Mandate ¶ 2, at 1. Mayer contends that the Jones and Long

Defendants "could not abide the opinion from the Court of Appeals," Complaint ¶ 22, at 3, and that, before allowing Mayer to present any evidence, on October 13, 2015, the Jones and Long Defendants "knowingly filed an erroneous Completion of Briefing with the district court," informing the court that their Motion to Alter and Amend the Judgment was "ripe for adjudication." Complaint ¶ 24, at 4.

On October 22, 2015, the state district court issued an Amended Judgment and Order, filed in federal court September 21, 2018 (Doc. 30-6)("October Amended Judgment"). [5] In the October Amended Judgment, the Second Judicial District Court withdrew the Second Judicial District Judgment and entered a judgment and order identifying the twenty-foot wide easement as belonging to the Jones and Long Defendants and ordering: "Jenika Mayer shall remove from the easement the fence that she has placed in the easement," that she "shall not interfere with the rights of . . . [the Jones and Long Defendants], their invitees, or their grantees, to their rights of ingress and egress," or to remove trees that have grown in the easement or to maintain and improve the easement." October Amended Judgment ¶¶ 3-4, at 1-2. Ultimately, the October Amended Judgment granted the Jones and Long Defendants "rights of ingress and egress over the easement to Tracts 5B and 5C for household and non-commercial purposes." October Amended Judgment ¶ 7, at 2.

---

[5]The New Mexico district court entered an amended judgment and order on October 22, 2015. See Jenika Mayer v. Susan Smith et al, N.M. Cts. Case Lookup, https://caselookup.nmcourts.gov/caselookup/app?component=cnLink&page=SearchResults&service=direct&session=T&sp=SD-202-CV-200907967 (last visited Nov. 26, 2018). Mayer appealed from the October Amended Judgment on November 16, 2015. See Jenika Mayer v. Susan Smith et al.

Mayer appealed the October Amended Judgment. See Complaint ¶ 26, at 4. Later in November, 2015, the Jones and Long Defendants entered Mayer's property "without notice," intending to cut the trees on the easement. Complaint ¶ 28, at 4. The Jones and Long Defendants "brought two deputies with them to prevent Ms. Mayer from interfering with those activities." Complaint ¶ 28, at 4. Mayer showed the deputies a copy of her appeal of the October Amended Judgment, prompting the deputies to order the Jones and Long Defendants to leave, which they did. See Complaint ¶ 28, at 4.

Mayer contends that, sometime later, the Jones and Long Defendants communicated ex parte with Eric Schuler, an Assistant Bernalillo County Attorney. See Complaint ¶ 29, at 5. On December 30, 2015, Mr. Schuler emailed Annette Regan,[6] copying Mr. Schuler's supervisor, Theresa Baca Sandoval, and the Jones and Long Defendants' attorney, and informing Regan that, "if she got a call to keep the peace at 270 Skyland Blvd (Ms. Mayer's property), she should allow the people to cut down the trees." Complaint ¶¶ 30-31, at 5. Mr. Schuler did not send the email to Mayer or to her attorney, and Mayer contends that the Jones and Long Defendants, Mr. Schuler, and Ms. Sandoval "conspired to keep this ex parte communication a secret from Ms. Mayer and her lawyer," Complaint ¶ 33, at 5; that "Mr. Schuler had no duty to get involved and take sides in a civil matter," Complaint ¶ 34, at 5; that "Mr. Schuler did not cite the correct statute in his ex parte email," Complaint ¶ 35, at 5; that "Mr. Schuler did not bother to get all the facts before he

---

[6]Mayer does not explain, in her Complaint, who Annette Regan is, and the Court has not been able to confidently determine her position through its own research. The Court infers that Regan is a Bernalillo County employee.

made a legal conclusion," Complaint ¶ 36, at 5; that "Mr. Schuler's legal conclusion was wrong," Complaint ¶ 37, at 5; and that "Mr. Schuler did what the Jones and Long Defendants asked without any independent investigation on his part," Complaint ¶ 38, at 6. Mayer contends that Ms. Sandoval did not "effectively monitor Mr. Schuler." Complaint ¶ 39, at 6.

Mayer alleges that, on April 11, 2016, the Jones and Long Defendants came to her property and began to cut the trees on the easement, prompting her to call the Bernalillo County Sheriff's Office ("BCSO"), which sent an armed sergeant and five deputies to her property. Complaint ¶¶ 40-42, at 6. Upon the sergeant and deputies' arrival, they did not speak with Mayer, but, acting on the email that Mr. Schuler sent to Regan in 2015, see Complaint ¶ 43-44, at 6, they ignored Mayer's pending appeal, and allowed the Jones and Long Defendants to "exercise the post-judgment self-help remedy of cutting down the trees," Complaint ¶ 50, at 7.

Mayer contends: "The officers appeared in such large numbers to frighten and intimidate Ms. Mayer. The Defendants' intent was to cause as much emotional distress to Ms. Mayer as possible." Complaint ¶ 45, at 6. Mayer alleges that the Jones and Long Defendants knew that she suffered from post-traumatic stress disorder ("PTSD"),[7] and that, as a direct consequence of their actions, she "suffered immediate and severe trauma." Complaint ¶¶ 46-47, at 6. Mayer alleges

---

[7]According to the Mayo Clinic, "[p]ost-traumatic stress disorder (PTSD) is a mental health condition that's triggered by a terrifying event -- either experiencing it or witnessing it. Symptoms may include flashbacks, nightmares and severe anxiety, as well as uncontrollable thoughts about the event." Post-traumatic Stress Disorder (PTSD), Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/post-traumatic-stress-disorder/symptoms-causes/syc-20355967 (last visited Nov. 26, 2018).

that she experienced "new and persistent PTSD symptoms" as a result of her trauma, which the Jones and Long Defendants caused, "including, but not limited to, depression, panic attacks, physical pain, mental anguish and grief that have not yet resolved."  Complaint ¶ 48, at 7.

On November 30, 2016, the Second Judicial District Court issued an Order Denying Motion for Order to Show Cause, Vacating Amended Judgment and Directing the Parties to Brief the Issues Related to the Appropriate Form of Judgment to Be Entered and Address Any Remaining Issues, filed in federal court September 21, 2018 (Doc. 30-7)("Order Vacating Judgment").  In the Order Vacating Judgment, the Second Judicial District Court concluded that the October Amended Judgment relied on an ex parte communication and an inaccurate Notice of Completion of Briefing.  See Order Vacating Judgment at 2.  Furthermore, according to Mayer, she had not received adequate time to file a Motion to Amend.  See Order Vacating Judgment at 2.  Accordingly, Judge Campbell vacated the October Amended Judgment and ordered all parties to file a renewed Motion to Amend Judgment within fifteen days, because "an Amended Judgment needs to be entered consistent with the decision by the Court of Appeals."  Order Vacating Judgment at 2-3.

On December 16, 2016, the Jones and Long Defendants filed, in the Second Judicial District Court, a Motion to Enter Amended Judgment and Order, filed in federal court September 21, 2018 (Doc. 30-8)("Motion to Enter Amended Judgment").  Then, on April 17, 2017, the Second Judicial District Court of Bernalillo County entered a Memorandum Opinion and Order denying the Motion to Enter Amended Judgment, which stated: "Intervenors move for entry of a final judgment and order on the Court of Appeals mandate filed October 13, 2015.  The motion is

denied because the Court of Appeals remanded this matter for further proceedings and some issues have yet to be determined." Dist. Ct. MOO at 1. Although the Dist. Ct. MOO concludes that the 2015 Court of Appeals Opinion established that the "Plaintiff's fence, which is inside the twenty-foot easement, is encroaching and must be removed," Dist. Ct. MOO at 2, the Dist. Ct. MOO stated that the 2015 Court of Appeals Opinion "did not determine the fate of the trees within Plaintiff's fence nor did the Court of Appeals determine whether the dominant estate holders [ -- the Jones and Long Defendants -- ] have subjected the servient estate [ -- Mayer's estate -- ] to an additional burden not contemplated by the grant of easement." Dist. Ct. MOO at 2. The Dist. Ct. MOO set the matter "for a continuation of the bench trial that was truncated by the improper granting of a dismissal in Plaintiff's favor." Dist. Ct. MOO at 2. On April 11, 2018, Mayer filed her Complaint in the Second Judicial District Court. See Complaint at 1.

In the Complaint, Mayer asserts claims against the Board of County Commissioners of the County of Bernalillo, Mr. Schuler, individually and in his official capacity as Bernalillo County Attorney, Ms. Sandoval, individually and in her official capacity as Deputy Bernalillo County Attorney, John or Jane Doe Bernalillo County Sheriff's Office ("BCSO") Sheriff Officers, A, B, C, D, E, and F, and the Jones and Long Defendants. See Complaint at 1. Mayer asserts the following claims: (i) negligence per se, against the Jones and Long Defendants for intentionally entering Mayer's property, and damaging and destroying her trees, see Complaint ¶ 53, at 7, and against the Defendant employees of Bernalillo County, who helped and approved of the Jones and

Long Defendants' actions, <u>see</u> Complaint ¶ 55, at 8; (ii) civil conspiracy, against the Defendants,[8] for conspiring to achieve economic and strategic goals benefiting the Defendants and their co-conspirators to Mayer's harm and detriment, <u>see</u> Complaint ¶¶ 62-66, at 8-9; (iii) intentional infliction of emotional distress against the Defendants[9] for intentionally or recklessly causing Mayer extreme, severe, and continuous mental distress, <u>see</u> Complaint ¶¶ 67-72, at 9; (iv) violation of the Fourteenth Amendment to the Constitution of the United States of America against the Bernalillo County Defendants, who, acting under color of state law, deprived Mayer of her clearly established constitutionally-protected right to life, liberty, and property, without due process of law, <u>see</u> Complaint ¶¶ 73-75, at 9-10; and (v) violation of the New Mexico Tort Claims Act, N.M. Stat. Ann. §§ 41-4-1 through 41-4-27 ("NMTCA"), against the Bernalillo County Defendants, because the BCSO officers are subject to the NMTCA sovereign immunity waiver in § 41-4-12, and Bernalillo County is responsible and liable for its officer-employees' actions undertaken in their official capacity, and for its officer-employees' actions undertaken in reliance on communications from Mr. Schuler, a Bernalillo County employee -- specifically, the Bernalillo County Defendants' actions allowing the Jones and Long Defendants to engage in criminal activity, and failing to perform their duty to protect Mayer's property and right to due process,

---

[8]Mayer does not specify against which Defendants she asserts her civil conspiracy claim, but the Court infers that Mayer asserts the claim against all of the named Defendants. <u>See</u> Complaint ¶¶ 62-66, at 8-9.

[9]Mayer does not specify against which Defendants she asserts her intentional-infliction-of-emotional-distress claim, but the Court infers that Mayer asserts the claim against all of the named Defendants. <u>See</u> Complaint ¶¶ 67-72, at 9.

causing her harm, <u>see</u> Complaint ¶¶ 76-88, at 10-11.  Accordingly, Mayer requests compensatory, punitive, and special damages, as well as attorneys' fees and costs, and any other relief the Court may deem just and proper.  <u>See</u> Complaint at 12.

## PROCEDURAL BACKGROUND

Bernalillo County removed the case to federal court on July 12, 2018.  <u>See</u> Notice of Removal ¶ 1, at 1.  In the Notice of Removal, Bernalillo County "exercises its right to remove this action from the Second Judicial Court, County of Bernalillo, State of New Mexico, where the case is now pending," asserting that the Court has original jurisdiction as provided in 28 U.S.C. § 1331, because Mayer's action, "upon information and belief, arises out of alleged violations of the Fourteenth Amendment (42 U.S.C. § 1983) . . . or other applicable federal statute."  Notice of Removal ¶¶ 1-2, at 1.  In filing the Notice of Removal, Bernalillo County does not waive jurisdictional issues and clarifies that, instead, "Bernalillo County will be filing a dispositive motion within the time allowed by the Rules of Civil Procedure."  Notice of Removal at 1 n.1. Bernalillo County waives service of process but does not waive any defense or jurisdictional argument.  <u>See</u> Notice of Removal ¶ 3, at 2.  Bernalillo County states that it timely files the Notice of Removal and attaches and incorporates by reference the Original Complaint and a Copy of the New Mexico Courts Lookup page (dated July 12, 2018),[10] filed July 12, 2018 (Doc. 1-2).  <u>See</u>

---

[10]The New Mexico Courts Lookup page refers to an online application that

gives access to New Mexico Supreme Court, Court of Appeals, District Court, Magistrate Court and Municipal Court data.  Municipal court data is limited to criminal Domestic Violence and DWI historic convictions from September 1, 1991 onwards.

Notice of Removal ¶¶ 5-6, at 2.  Bernalillo County states that the other named Defendants, Marilyn Jones, Gary Jones, Robert Long, Stephanie Long, and Nathanial Long, "who have been served, consent to the filing of this Notice of Removal."  Notice of Removal ¶ 8, at 2.

On January 2, 2019, the Jones and Long Defendants answered Mayer's Complaint.  See Answer of Marilyn Jones, Gary Jones, Robert Long, Stephanie Long, and Nathaniel Jones [sic] to Plaintiff's Amended Complaint (Doc. 45), filed January 2, 2019 (Doc. 48)("Jones and Long Defendants Answer").[11]  The Jones and Long Defendants "deny each and every allegation, statement, matter and thing asserted in Plaintiff's Complaint, except as expressly admitted or otherwise qualified or alleged."  Answer at 1.  The Jones and Long Defendants assert the following affirmative defenses: (1) collateral estoppel; (2) res judicata; and (3) that Mayer fails to state a claim against the Jones and Long Defendants upon which relief can be granted.  See Answer at 8.

---

District and Magistrate case information is updated every day.  It is, therefore, current to within 24 hours of the time data is entered into a court's database.  Cases filed prior to the completion of the statewide court automation project in June 1997, may exist in a separate database, depending on the individual court.

New Mexico Courts Case Lookup, Welcome to Case Lookup, https://caselookup.nmcourts.gov/caselookup/app (last visited Dec. 11, 2018).

[11]On July 19, 2018, the Jones and Long Defendants answered Mayer's Original Complaint.  See Answer of Marilyn Jones, Gary Jones, Robert Long, Stephanie Long, and Nathaniel Jones[11] [sic] to Plaintiff's Complaint, [Doc. 1-1 Complaint (filed 4/11/18 in State Court)], filed July 19, 2018 (Doc. 11)("Original Answer").  After Mayer filed her amended Complaint, see Complaint at 1, the Jones and Long Defendants filed an amended Answer, changing only the name of the Defendant Bernalillo County to Defendant Board of County Commissioners of the County of Bernalillo.  See Jones and Long Defendants Answer at 1.

- 15 -

Bernalillo County has not, as of the date of this Memorandum Opinion and Order, filed an Answer.

1.      **The Motion.**

The Jones and Long Defendants move the Court, pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, based on collateral estoppel, to dismiss Mayer's claims against them. See Motion at 1. In the Motion, the Jones and Long Defendants argue that Mayer's first suit against them, in Mayer v. Jones (the "2009 State Court Proceeding"), see State Complaint at 1, is still pending, and that Mayer's claims in the Complaint and in the 2009 State Court Proceeding "hinge on her assertion that the Jones and Longs trespassed on an easement on Plaintiff's property," Motion at 1-2. The Jones and Long Defendants assert that the Court of Appeals of New Mexico already determined that the Jones and Long Defendants own a preexisting easement in writing, over Mayer's property, "so there can be no trespass as a matter of law." Motion at 2. The Jones and Long Defendants assert that Mayer is collaterally estopped from attacking or circumventing the Court of Appeals of New Mexico's decision, which was final, and that, accordingly, the Court

> should dismiss Plaintiff's claims against the Jones and Long Defendants in the instant action (Negligence Per Se (based on trespass), Civil Conspiracy, and Intentional Infliction of Emotional Distress) as a matter of law based on (1) the decisions of the NMCA; and (2) the pending 2009 State Court Proceeding on the two (2) remaining issues identified by State District Judge Campbell in his 10/22/15 Amended Judgment (based on the 10/13/15 Mandate from the NMCA). Moreover, Plaintiff admitted in a 2011 affidavit filed in the pending 2009 State Court Proceeding that she knew of the easement even before she bought the property in 2002.

Motion at 2.

The Jones and Long Defendants begin by asserting that Mayer bought her property in 2002,

knowing about the easement's existence.  See Motion at 2 (quoting Mayer Aff. ¶¶ 1-3, at 1).  The

Jones and Long Defendants assert that Mayer filed her claims in the 2009 State Court Proceeding

against another neighbor, Smith, to prevent Smith from cutting and removing the trees which

Mayer planted on the easement.  See Motion at 3.  The Jones and Long Defendants assert that

Mayer used trees which she planted in the easement as fence posts and claimed the fenced area

was her property, thereby encroaching on the twenty-foot easement by nine to eleven feet and

rendering those nine to eleven feet inaccessible to the Jones and Long Defendants.  See Motion at

3.

      The Jones and Long Defendants reviewed the procedural history of the case and argue that,

"based on 10/1315 [sic] NMCA Mandate, and the 11/30/16 NMCA Order, between **October 2016**

**and November 2016,** the Jones and Long Defendants cut trees in their easement (April of 2016)."

Motion at 6 (emphasis in Motion)(citing Complaint ¶ 40, at 6).  The Jones and Long Defendants

conclude, based on the procedural history, that the Complaint "is a collateral attack on the 3/2/15

NMCA Opinion, and must therefore be dismissed as a matter of law.  The pending 2009 State

Court Proceeding before Judge Campbell is not before this Court, so this Court has no jurisdiction

over the two remaining issues in the State Court Proceeding."  Motion at 5.

      The Jones and Long Defendants argue that the Dist. Ct. MOO restates and definitively

establishes the Court of Appeals of New Mexico's "final and binding decision on seven issues,"

which are:

     1.     The language granting the easement is unambiguous, clearly expresses the
          intent of the parties, and reference to extrinsic evidence of intent is
          unnecessary to determine the scope, nature location, duration, or purposes

of the easement.

2.      The easement is twenty feet wide, provides for ingress and egress, for personal use, and for household and non-commercial uses.

3.      The easement is unlimited in duration.

4.      The easement is an appurtenant easement. The dominant estate holders are Jones, their families, heirs, and assigns.

5.      Division of the dominant estate did not extinguish the rights to the easement. The easement serves the entire dominant estate, now comprised of Tracts 5B and 5C.

6.      The dominant estate holders must have access to the easement's full twenty-foot width.

7.      Plaintiffs fence, which is inside the twenty-foot easement, is encroaching and must be removed.

Motion at 5-6 (quoting Dist. Ct. MOO at 1-2). The Jones and Long Defendants reference Mayer's argument in her Complaint that when the Court of Appeals of New Mexico remanded two issues to the state district court -- the fate of the trees, and such other matters as the 2015 Court of Appeals Opinion may require -- that one of the other matters "was the fact that Ms. Mayer still had the right to present her evidence after the Long and Jones litigants appealed an involuntary dismissal as provided for by Rule 1-041(B) NMRA." Motion at 8 (emphasis in Complaint)(quoting Complaint ¶ 20, at 3). The Jones and Long Defendants allege that Mayer misinterprets N.M.R.A. 1-041(B), which states:

Unless the court in its order for dismissal otherwise specifies, a dismissal under this paragraph and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 1-019 NMRA, operates as an adjudication upon the merits.

Motion at 8 (quoting N.M.R.A. 1-041(B)). Accordingly, the Jones and Long Defendants argue

that Mayer may not present collateral evidence under N.M.R.A. 1-041(B) "on issues that were already adjudicated on the merits in the pending 2009 State Court Proceeding and in the related NMCA proceedings." Motion at 8. The Jones and Long Defendants cite to Herbert v. Sandia & Loan Ass'n, 1971-NMSC-064, ¶¶ 6-7, 486 P.2d 65, 67, for the proposition that a judgment entered for a defendant pursuant to a motion for a directed verdict at the close of a plaintiff's case -- as in the Second Judicial District Judgment -- constitutes a judgment on the merits, unless the court otherwise specifies. See Motion at 8. See also Motion at 9 n.5 (stating that rule 41(b) of the Federal Rules of Civil Procedure is similar to N.M.R.A. 1-041(B) in that a directed verdict in a bench trial operates as an adjudication on the merits). In the 2015 Court of Appeals Opinion, the Court of Appeals of New Mexico reversed the Second Judicial District Judgment and remanded two issues to the state district court, which remain for decision in the pending 2009 State Court Proceeding. See Motion at 8. The 2015 Court of Appeals Opinion "did not specifically or obviously request the cause [sic] to be remanded so that Plaintiff could have an opportunity to present her evidence." Motion at 9.

From this procedural history, the Jones and Long Defendants conclude that "there has already been an adjudication on the merits (except for the two pending remaining issues identified therein), and all evidence before the state trial court has been taken into consideration." Motion at 9. The Jones and Long Defendants argue that, even if the Court determines Mayer may present collateral evidence, that evidence should be presented in the 2009 State Court Proceeding and only on the two issues identified as pending. See Motion at 9. The Jones and Long Defendants assert that the two pending issues are the fate of the trees, and whether the Jones and Long Defendants

had subjected Mayer to an additional burden that the easement's grant did not contemplate.  See Motion at 10.

Next, the Jones and Long Defendants state that, because the Court of Appeals of New Mexico has determined that the Jones and Long Defendants own the easement, they cannot, as a matter of law, trespass on the easement and, therefore, collateral estoppel bars Mayer's claims against them.  See Motion at 10.  "Under New Mexico law, a party must meet the four factors of collateral estoppel before it is applied to a particular case."  Motion at 10-11.  The Jones and Long Defendants list the four factors as:

> (1) The party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, (4) the issue was necessarily determined in the prior litigation.

Motion at 11 (internal quotation marks omitted)(quoting Shovelin v. Cent. N.M. Elec. Co-op, Inc., 1993-NMSC-015, ¶ 10, 850 P.2d 996, 1000 ("Shovelin")).

First, the Jones and Long Defendants assert that Mayer is the plaintiff in both the 2009 State Court Proceeding and the present lawsuit, so she is a party in the prior proceeding, satisfying the first factor.  See Motion at 11.  Second, the Jones and Long Defendants assert that the cause of action in this federal case is different from the cause of action in the 2009 State Court Proceeding.  See Motion at 11.  In the 2009 State Court Proceeding, Mayer brought the following claims: trespass to land and chattels, negligence per se, and petition for temporary and permanent injunction.  See Motion at 11.  In this federal action, Mayer alleges negligence per se, civil conspiracy, and intentional infliction of emotional distress complaints against the Jones and Long Defendants.  See Motion at 11.  The Jones and Long Defendants allege that, although Mayer

alleges negligence per se in both complaints, in the State Complaint, she alleges negligence per se against Smith, and not against the Jones and Long Defendants. See Motion at 11. Third, the Jones and Long Defendants assert that the issue whether the Jones and Long Defendants trespassed on the easement when they entered to cut down Mayer's trees was already litigated in the 2009 State Court Proceeding. See Motion at 12. The Jones and Long defendants argue that, because the Court of Appeals of New Mexico and the state district court concluded that the easement was valid, there could be no trespass or negligence per se resulting from trespass, and that these rulings occurred after a 2012 bench trial. See Motion at 12. The Jones and Long Defendants assert that the trespass issue was sufficiently litigated when Mayer and the Jones and Long Defendants filed witness lists, Mayer filed proposed findings of facts and conclusions of law, the Jones and Long Defendants filed proposed judgments, the state district court entered a judgment, and the Jones and Long Defendants appealed that judgment to the Court of Appeals of New Mexico. See Motion at 12. Fourth, the Jones and Long Defendants argue that the easement's existence and ownership "was necessarily determined" in the prior litigation, when the state district court issued the Order Vacating Judgment. Motion at 12.

The Jones and Long Defendants next argue that, if the Court determines that federal law applies, they meet the elements of collateral estoppel under federal law. See Motion at 13 (citing Scheufler v. Gen. Host Corp., 881 F. Supp. 492, 495 (D. Kan. 1995)(Theis, J.)("The required elements of collateral estoppel, including mutuality, reflect concerns of fairness, judicial economy, and finality. . . . . These are procedural concerns, which the federal law addresses with its own requirements.")). The Jones and Long Defendants state the United States Court of Appeals for the

Tenth Circuit's criteria for collateral estoppel to apply:

> "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) <u>the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action</u>." <u>U.S v. Rogers</u>, 960 F.2d 1501, 1508 (10th Cir. 1992).

Motion at 13 (emphasis in Motion)(quoting <u>Florence v. Rios</u>, No. Civ. 07-00380-REB-KLM, 2008 WL 538677, at *5 (D. Colo. Feb. 25, 2008)(Blackburn, J.)). The Jones and Long Defendants argue that they satisfy all four federal collateral estoppel elements. <u>See</u> Motion at 13.

The Jones and Long Defendants next argue that Mayer's negligence per se, civil conspiracy, and intentional infliction of emotional distress claims fail because the Jones and Long Defendants have a legal right to be on the easement. <u>See</u> Motion at 14. The Jones and Long Defendants assert that Mayer grounds her negligence per se claim against them in their alleged violation of the New Mexico trespass statute in N.M. Stat. Ann. § 30-14-1(D). <u>See</u> Motion at 14 (citing Complaint ¶ 54, at 7). The Jones and Long Defendants argue that, because they were not "upon the lands of another without prior permission," Mayer cannot sustain her negligence per se claim against them. Motion at 15 (quoting N.M. Stat. Ann. § 30-14-1(D)).

The Jones and Long Defendants assert that, to sustain a civil conspiracy claim under New Mexico law, Mayer must show: "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." Motion at 15 (quoting <u>Ettenson v. Burke</u>, 2001-NMCA-003, ¶ 12, 17 P.3d 440, 445). The Jones and Long Defendants argue that Mayer fails to show a conspiracy among the Jones and Long Defendants and the Bernalillo County

Defendants, when Mayer called the BCSO; that Mayer fails to provide "specific wrongful acts" done pursuant to the alleged conspiracy; and that Mayer fails to show she was damaged as a result of those acts. Motion at 15 (internal quotation marks omitted)(quoting <u>Ettenson v. Burke</u>, 2001-NMCA-003, ¶ 12, 17 P.3d at 445). The Jones and Long Defendants assert that, while they cut the trees on the easement, they did not remove them, and so Mayer cannot claim that they performed a wrongful act. <u>See</u> Motion at 16.

Next, the Jones and Long Defendants argue that Mayer's claim against them for intentional infliction of emotional distress fails, because Mayer cannot show reckless or intentional conduct on their part, when the Jones and Long Defendants have a right to be on and use the easement. <u>See</u> Motion at 16-17. The Jones and Long Defendants also argue that "there is insufficient evidence to support the view that any alleged emotional distress experienced by Plaintiff due to the Jones/Long Defendants' actions was severe." Motion at 17. For the foregoing reasons, the Jones and Long Defendants "respectfully request the Court to dismiss this action as to these Defendants, and for such other and further relief as the Court deems just and proper." Motion at 18.

> ## 2. **The Response.**

Mayer responds to the Motion. <u>See</u> Plaintiff's Response to Defendant's, Jones and Longs, Motion to Dismiss, filed October 9, 2018 (Doc. 33)("Response"). Mayer begins by asserting that the Motion may be moot, because Mayer is amending her Complaint pursuant to the Court's ruling on Bernalillo County's Motion to Dismiss Under Rule 1-012, filed July 19, 2018 (Doc. 12). <u>See</u> Response at 1. Mayer states that, to the extent the Motion is not moot, she addresses its

arguments and the exhibits accompanying the request for judicial notice.  See Response at 1.

Mayer asserts that the documents attached to the Request, of which the Jones and Long Defendants request that the Court take judicial notice, violate the 2015 Court of Appeals Opinion, which provides the law of the case.  See Response at 1.  Mayer asserts that the 2015 Court of Appeals Opinion remanded the case for proceedings concerning the trees' fate and for other matters, including whether the "servient estate is subjected to additional burdens when the use of the servient estate is curtailed or destroyed by the manner in which the easement is used."  Response at 2 (quoting 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 17, 350 P.3d at 1200).  Mayer asserts that the Court of Appeals of New Mexico left to the state district court whether cutting the trees on the easement additionally burdens the servient estate "when Ms. Mayer is given the opportunity to present her case."  Response at 2.

Mayer asserts that the Court of Appeals of New Mexico

informed the litigants that the verdict which was appealed was "actually a motion for involuntary dismissal as provided for by Rule 1-041(B) NMRA.  Garcia v. Am. Furniture Co., 1984-NMCA-090, ¶ 3, 101 N.M. 785, 689 P.2d 934 (stating that, in a non-jury trial, "motion for a directed verdict was, in effect, a motion to dismiss under . . . Rule [1-041(B)]").

Response at 2 (quoting 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 7, 350 P.3d at 1194).  Mayer asserts that, under N.M.R.A. 1-041(B), she may put on her case and offer evidence after remand.  See Motion at 2-3.  Mayer contends that the Jones and Long Defendants knew this rule, and deliberately violated the Court of Appeals of New Mexico's decision by pursuing the "post-judgment self-help remedy of cutting down the trees."  Response at 3.

Mayer next argues that the Jones and Long Defendants have refused to provide a boundary

survey for the easement, and instead, opted to intervene in Mayer's lawsuit against Smith. See Response at 4-5. Mayer states that "[t]o this day Defendants have refused to have a boundary survey done." Response at 5. Mayer contends that, without a boundary survey, "this Court, like the district court and court of appeals before it cannot intelligently rule on any aspect of the easement location or the fate of the trees or any damages that might flow from the location of the actual easement and the actions of Defendants." Response at 5. Mayer concludes her Response by stating that "[t]here was never any doubt that there is [a] 20 foot easement cross[ing] Mayer's property. The element of proof that is lacking is the actual location of the property line and the easement." Response at 6. Mayer contends that, because without a boundary survey, the Jones and Long Defendant's arguments are premature, the Court should deny the motion. See Response at 6.

**3.      The Reply.**

The Jones and Long Defendants reply to Mayer's Response. See Reply by Defendants Jones and Long to Plaintiff Mayer's Response to Their Motion to Dismiss, filed October 23, 2018 (Doc. 34)("Reply"). In the Reply, the Jones and Long Defendants begin by asserting that Mayer does not explain why their Motion might be moot if Mayer amends her complaint. See Reply at 1. The Jones and Long Defendants argue that Mayer admits that the 2015 Court of Appeals Opinion is final as to seven issues, and that it is the law of the case. See Reply at 2. The Jones and Long Defendants assert that the two remaining issues are within the state court's jurisdiction, and that Mayer has improperly brought these issues in federal court. See Response at 2.

The Jones and Long Defendants deny Mayer's allegation that they deliberately violated the

2015 Court of Appeals Opinion when, between October, 2015, and November, 2016, they cut down the trees within the easement. See Response at 2. The Jones and Long Defendants contend that, in cutting down the trees during that time period, they relied on the October Amended Judgment, "which required Plaintiff Mayer not to interfere with Defendants' right to remove the trees that have grown in the easement." Response at 3. The Jones and Long Defendants acknowledge that the Order Vacating Judgment vacated the October Amended Judgment, but contend that, at the time they removed the trees, they did not deliberately ignore the Court of Appeals of New Mexico's decision. See Response at 3.

The Jones and Long Defendants next assert that they provided a map indicating the easement's boundary during the 2012 bench trial before Judge Campbell. See Response at 3. The Jones and Long Defendants assert that a surveyor conducted a boundary survey, identified survey markings and property corners, and produced a map which the Jones and Long Defendants presented at trial. See Response at 3. The Jones and Long Defendants contend that Mayer "did not present any documentation or provide any surveys of her own property to dispute the boundaries presented by the Jones Defendants." Response at 3. The Jones and Long Defendants assert that "[t]he court accepted the boundary survey into evidence, did not require the parties to conduct a survey, and made a decision based on the boundary survey provided by the Jones Defendants." Response at 3.

The Jones and Long Defendants argue that Mayer refuses to follow the 2015 Court of Appeals Opinion by refusing to remove her fence, and that, while Mayer contends that she will remove her fence once she knows her property's boundaries, she has refused to conduct her own

survey.  <u>See</u> Response at 3.

### 4. **The Hearing.**

The Court held a hearing on January 7, 2019.  <u>See</u> Draft Transcript of Motion Proceedings at 1 (taken January 7, 2019)(Court)("Tr.").[12]  The Court began by noting that its Memorandum Opinion and Order on the Motion is near completion.  <u>See</u> Tr. at 2:19-21 (Court).  The Court then asked the Jones and Long Defendants whether there are any federal claims asserted against them, and the Jones and Long Defendants responded that there are none.  <u>See</u> Tr. at 3:16-19 (Court, Dow).  The Court asked whether, if the Court's jurisdiction over the case is federal question jurisdiction, it should apply New Mexico collateral estoppel or federal collateral estoppel.  <u>See</u> Tr. at 3:20-22 (Court); <u>id.</u> at 3:24-4:1 (Court).  The Jones and Long Defendants responded that they "briefed them both," but that they believe "collateral estoppel is a substantive issue."  Tr. at 4:2-5 (Dow).  The Jones and Long Defendants averred that there "is a little bit of difference . . . [between] the state collateral estoppel issues and the federal."  Tr. at 4:9-12 (Dow). The Jones and Long Defendants asserted that, for federal collateral estoppel, the Court must determine whether Mayer had a "full and fair opportunity to litigate."  Tr. at 4:12-14 (Dow).

The Court stated that it is inclined to use state collateral estoppel in this circumstance.  <u>See</u> Tr. at 5:2-5 (Court).  The Court indicated that it is "concerned about" the finally adjudicated element of collateral estoppel under New Mexico law.  Tr. at 5:14-15 (Court).  The Court expressed surprise that the parties agreed that the law-of-the-case doctrine applies in this case, noting that the

---

[12]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

- 27 -

doctrine is "fairly fluid in New Mexico." Tr. at 5:22-25 (Court). The Court stated that, if the state case "were to go back to the Court of Appeals, [the Court does not] think that there is anything that would bind them. And if it would bounce up to the Supreme Court, [the Court does not] think there is anything that would bind them on law of the case." Tr. at 6:1-5 (Court). The Court stated that, until there is a final adjudication, one element of collateral estoppel remains unsatisfied. See Tr. at 6:6-8 (Court).

The Jones and Long Defendants averred that they addressed the final adjudication issue under N.M.R.A. 1-041(B). See Tr. at 6:9-10 (Dow). The Jones and Long Defendants asserted that, under N.M.R.A. 1-041(B), "unless the court, trial court, or the Court of Appeals in its dismissal otherwise [ ] specifies, [it] operates as an adjudication upon the merits." Tr. at 6:11-15 (Dow). The Court pointed to the Order Vacating Judgment, concluding that "there is no valid and enforceable amended judgment in the case." Tr. at 7:1-2 (Court)(quoting Order Vacating Judgment at 2). The Jones and Long Defendants responded that, "under New Mexico law, it does not need to be a final judgment. It needs to be a final adjudication on the issue of the easement, which it is." Tr. at 7:10-13 (Dow). The Court responded that the problem with that formulation "is that could be revisited at any time." Tr. at 7:14-15 (Court). The Court noted that, although it is skeptical that a state appellate court will revisit the issue of the easement's existence, "from a power standpoint, they have the ability to revisit that at any time." Tr. at 7:14-16 (Court); id. at 7:18-20 (Court). The Court noted that the trial judge may be bound at the current time by the Court of Appeals of New Mexico's decision, but that the Court does not "see anything that would bind the Court of Appeals from relooking at this." Tr. at 7:22-8:2 (Court).

The Jones and Long Defendants asserted that "this is stronger than the law of the case," because the Court of Appeals of New Mexico "made an affirmative determination that the easement is not ambiguous as a matter of law. Which is just like, I would think, a summary judgment determination." Tr. at 8:6-10 (Dow). The Jones and Long Defendants asserted that, under N.M.R.A. 1-041(B), "it operates as a final adjudication on the merits." Tr. at 8:11-12 (Dow). The Court asked whether N.M.R.A. 1-041(B) dismissal preceded the Order Vacating Judgment. See Tr. at 8:16-18 (Court). The Court noted that, after entry of the Order Vacating Judgment, Mayer moved to enter an amended judgment and order, and the Dist. Ct. MOO denied that Motion to Enter Amended Judgment. See Tr. at 8:19-22 (Court). The Court stated that the Motion contends that the 2015 Court of Appeals Opinion "is final for collateral estoppel purposes regarding whether the Jones and Long Defendants own a preexisting written easement, so there can be no trespass as a matter of law, and then whether Mayer's fence encroaches on that easement." Tr. at 8:22-9:3 (Court). The Court noted that the Response "seems to agree" that the 2015 Court of Appeals Opinion "provides the law of the case in this matter." Tr. at 9:4-6 (Court). The Court noted that it does not see another doctrine that would make the adjudication in the 2015 Court of Appeals Opinion final, and that, if the applicable doctrine is "not law of the case, [the Court does not] know what it is." Tr. at 9:6-8 (Court). The Court noted that the 2015 Court of Appeals Opinion does not dispose of any claims, and the Court asked, accordingly, whether "all originally asserted claims in the state suit remain pending entry of a valid amended judgment," Tr. at 9:8-13 (Court). The Jones and Long Defendants responded that the Court of Appeals of New Mexico adjudicated seven issues, see supra at 17-18, which "operates as a full merits

adjudication . . . ." Tr. at 9:15-19 (Dow).  The Court noted that <u>Silva v. State</u>, 1987-NMSC-107, 745 P.2d 380, indicates that collateral estoppel under New Mexico law applies only where there has been a final judgment.  <u>See</u> Tr. at 10:22-11:1 (Court).  The Court asked what the status of the state court proceedings is.  <u>See</u> Tr. at 11:4-5 (Court).

The Jones and Long Defendants stated that, "in reading Judge Campbell's" opinion, "he has essentially said these seven issues, which include a full determination of the easement issue, [have] been determined."  Tr. at 11:9-13 (Dow).  The Jones and Long Defendants averred that Judge Campbell will take new evidence only on two issues: the fate of the easement's trees and whether any additional burden has been placed on the servient estate.  <u>See</u> Tr. at 11:13-17 (Dow). The Jones and Long Defendants next stated that "it's clear in New Mexico law that the issue preclusion does not require" a final judgment and that the Supreme Court of New Mexico's use of that word in <u>Silva v. State</u> "was unartful."  Tr. at 11:20-22 (Dow).  The Court responded that "there is other language" in Supreme Court of New Mexico decisions "that says finally adjudicated."  Tr. at 12:2-3 (Court).  The Court stated that "there are some cases and formulations of the New Mexico collateral estoppel that say finally adjudicated."  Tr. at 12:4-6 (Court).  The Court stated that it did not agree the Supreme Court of New Mexico was inartful in using the phrase final judgment "if the other formulations say finally adjudicated, which is clearly what the federal collateral estoppel requires."  Tr. at 12:7-10 (Court).  The Court indicated that, if the state proceeding is not final, "then it's fairly clear . . . you cannot knock out a 1983 claim here with an ongoing state case."  Tr. at 12:12-14 (Court).

The Jones and Long Defendants stated that, if the Court does apply collateral estoppel in

the case, the Court will be placed in a difficult position, and will have to apply law contrary to the Court of Appeals of New Mexico, or have to stay the case, or have to abstain from deciding it. <u>See</u> Tr. at 12:20-25 (Dow). The Court responded that abstention doctrines may come into play, but at least on collateral estoppel, the state case does not appear to be final. <u>See</u> Tr. at 13:1-6 (Court). The Jones and Long Defendants informed the Court that there is a mediation scheduled between the parties in state court. <u>See</u> Tr. at 13:7-10 (Dow). The Jones and Long Defendants then asserted that the difference between res judicata and collateral estoppel, or issue preclusion, is that res judicata requires a final judgment. <u>See</u> Tr. at 13:13-16 (Dow). The Jones and Long Defendants argued that, under N.M.R.A. 1-041(B), the Court of Appeals of New Mexico made a merits determination after an issue was fully and completely litigated, and that the issues which the Court of Appeals addressed were "fairly substantive." Tr. at 13:18-23 (Dow). The Jones and Long Defendants averred that "Judge Campbell is not going to review the issue." Tr. at 14:9-10 (Dow). The Court agreed that Judge Campbell is not likely to revisit the issue. <u>See</u> Tr. at 14:11 (Court).

Mayer contended that "the issue before the district court [is that] the intervenors, the defendants here, were claiming that the easement on the property was either an easement in gross or an easement of necessity." Tr. at 15:1-5 (Chisholm). Mayer contended that she said from the beginning that it is an easement appurtenant and that she does not deny it is twenty feet. <u>See</u> Tr. at 15:6-8 (Chisholm). Mayer contends that, while she does not dispute the easement exists and is twenty feet, she does not know where the easement is located. <u>See</u> Tr. at 16:1-5 (Chisholm). Mayer contends that there is no boundary survey. <u>See</u> Tr. at 16:4 (Chisholm). Mayer contends that the Jones and Long Defendants conducted a "stake survey," and "refused to get a boundary

survey." Tr. at 16:8-9 (Chisholm).  Mayer alleged:

> CHISHOLM:  So there is a stake survey.  So we know where the stakes are -- we know where three stakes are -- but we don't know if those stakes are accurate. And what we need -- what this Court needs, what everybody in this case needs is a recordable boundary survey that would be acceptable to any title company. Then we know where the 20 feet is; then we know whether trespass is a legitimate claim or not.

Tr. at 16:12-19 (Chisholm).[13]

Mayer alleged that defendants cut the trees, because they "couldn't tolerate" the Court of Appeals of New Mexico reserving the trees' fate to the state district court.  Tr. at 17:5-8 (Chisholm).  Mayer contends that the case is in federal court, because Mayer's due process right to put on evidence why her trees should not be cut was violated when the Jones and Long Defendants spoke to their attorney, and communicated with the county attorney to get an email "saying, well, if someone comes out and wants to cut the trees, let them cut the trees."  Tr. at 17:11-20 (Chisholm).  Mayer contended that there is a difference between a clear twenty-foot easement, and a twenty-foot easement allowing for a ten-foot road and ten feet "of buffer between the road and the house on the plaintiff's property."  Tr. at 17:21-25 (Chisholm).  Mayer indicated that, apart from the § 1983 action, the "rest of this stuff can't be resolved without a survey."  Tr. at 18:6-9 (Chisholm).

The Court stated that the Court needs to decide the collateral estoppel issue and remarked

---

[13]The Court was unable to determine the difference between a stake survey and a boundary survey.  See, e.g., FAQ, Cardinal Surveying and Mapping, https://www.cardinalsurveying.com/f-a-q/ (last visited January 8, 2019)("Q: What is the difference between a 'Stake Survey' and a 'Boundary Survey'? A: Nothing! 'Stake Survey' is a common name for the legal term of 'Boundary Survey.'").

- 32 -

that Mayer seems "to concede that the 2015 Court of Appeals of New Mexico opinion provides the law of the case in this matter." Tr. at 18:23-19:2 (Chisholm). Mayer responded that Mayer agrees that the 2015 Court of Appeals Opinion provides the law of the case and that the Court of Appeals of New Mexico left the trees' fate to the district court. See Tr. at 19:7-11 (Chisholm). Mayer also conceded that the Jones and Long Defendants own a preexisting written easement, and that Mayer's fence encroaches on that easement. See Tr. at 20:2-8 (Court, Chisholm). Mayer asserted that the lack of boundary survey is the issue. See Tr. at 20:8-9 (Chisholm). Mayer conceded that the 2015 Court of Appeals Opinion decides the easement's existence and the fence's encroachment "so that it cannot be revisited either by a district court or by this court[.]" Tr. at 20:11-14 (Court, Chisholm). The Court stated that the "law of the case doctrine in New Mexico [seems to allow] the Court of Appeals or the Supreme Court down the road to relook at these issues . . ." Tr. at 20:24-21:2 (Court). Mayer agreed that the doctrine allows that ability but averred that the Court of Appeals of New Mexico "made a policy decision" which the Court of Appeals of New Mexico is unlikely to revisit. Tr. at 21:7-10 (Chisholm). Mayer averred that "there are other issues that the Court could come back and, and the county might want to visit, like that 20-foot easement, even if it was completely plowed under is still not kosher for a county road ordinance." Tr. at 21:19-23 (Chisholm). The Court agreed that the Court of Appeals of New Mexico is unlikely to revisit the decision but stated that it has the power to revisit it. See Tr. at 22:12-14 (Court). Mayer then informed the Court that all state law claims remain pending. See Tr. at 22:15-19 (Court, Chisholm). Mayer averred that the increase in the easement's use when Jones sold part of the dominant estate to the Longs is impermissible and creates an extra burden

on the servient estate.  See Tr. at 23:8-12 (Chisholm).  Mayer requested that the Court "hold off on making a decision, order the defendants to pay for a boundary survey that can be filed with the title company, and everybody will abide by that survey."  Tr. at 26:18-21 (Chisholm).  Mayer then informed the Court that on January 1, 2019, the state court issued a "dismissal for lack of prosecution," and both parties agreed to reinstate it.  Tr. at 27:4-9 (Chisholm, Dow).  Mayer also requested that the Court "stay everything until [it gets] a report back on the mediation -- or, I mean, ideally nothing is going to get done without a survey."  Tr. at 27:10-14 (Chisholm).

Bernalillo County then commented that the "county attorneys at issue in the Complaint, Mr. Schuler and Theresa Baca [Sandoval], haven't been served with the original complaint or the amended complaint."  Tr. at 28:24-29:2 (Huss).  Bernalillo County averred that, if Mr. Schuler and Ms. Sandoval  are served, they "would bring qualified immunity to the Court immediately, arguing there is no clearly established law that supports a claim against them under the facts alleged in the complaint."  Tr. at 29:3-7 (Huss).  Bernalillo County then stated that Bernalillo County would "ask for a stay of all the proceedings, pending adjudication of that question."  Tr. at 29:7-9 (Huss).  The Court stated that "we certainly are kind of deciding the state law issues first in this case before we decide the federal questions.  And we have some concern, given qualified immunity, whether any federal claim can survive here."  Tr. at 29:18-23 (Court).

The Jones and Long Defendants then asserted that they provided a survey and monuments of the original survey that the district court accepted, whereas Mayer has never provided a survey.  See Tr. at 30:8-14 (Dow).  The Court asked why the Jones and Long Defendants, rather than Mayer, provided the survey.  See Tr. at 30:20-23 (Court).  The Jones and Long Defendants replied

- 34 -

that the state district court entered an order, in 2010, requiring the parties to share a survey.[14]  See Tr. at 30:24-31:2 (Dow).  The Jones and Long Defendants averred that the survey issue is a "state court issue . . . ."  Tr. at 31:9-10 (Dow).  Mayer then reasserted that the survey provided is a stake survey and not a boundary survey.  See Tr. at 31:25-32:2 (Chisholm).

The Court then stated its inclination to deny the motion, concluding that not all the elements of collateral estoppel are met.  See Tr. at 32:13-16 (Court).  The Court stated that, "[u]ntil that state proceeding is resolved, [the Court doesn't think it has] the ability to grant collateral estoppel on any of the issues."  Tr. at 32:17-19 (Court).  The Court agreed that some of the issues will never be relitigated, but does not think it can give them collateral estoppel effect until they are brought to a conclusion.  See Tr. at 32:19-23 (Court).  The Court indicated that it would attempt to get an opinion to the parties before the state court mediation on Wednesday morning, July 9, 2019, but that it wants to think "about some of the things [ ] said today."  Tr. at 33:3-15 (Court).  The Court indicated that it is still inclined to deny the motion.  See Tr. at 33:21-22 (Court).  Finally, the Court indicated that Mayer should serve the Defendants against whom Mayer wants to assert federal claims, because the Court's jurisdiction depends upon there being federal claims.  See Tr. at 34:4-13 (Court).

## LAW REGARDING RULE (12)(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests

---

[14]The Court assumes that the parties mean that the state district court entered an order requiring the parties to share the cost of a survey.

the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994).  A court may also consider documents to which the complaint refers, if their adequacy is central to the plaintiffs' claims and their authenticity is unquestioned.  See Armstrong v. N.M. Disability Determination Servs., 278 F. Supp. 3d 1193, 1201 n.3 (D.N.M. 2017)(Browning, J.)(concluding that the court properly considered notices attached to the motion and not to the complaint, because the complaint referenced them, their adequacy was central to the plaintiffs' claims, and their authenticity was unquestioned).  See also GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997)("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered . . . .").

A complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff."  (internal quotation marks omitted)(quoting Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006)).  At the motion-to-dismiss stage, the court does not weigh the

evidence, and "is interested only in whether it has jurisdiction and whether the [p]laintiffs plead a claim to relief that is plausible on its face." Begay v. Pub. Serv. Co. of N.M., 710 F. Supp. 2d 1161, 1199 (D.N.M. 2010)(Browning, J.).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp v. Twombly, 550 U.S. at 555 (citation omitted). See Duncan v. Citibank (S.D.), N.A., No. CIV 06-0246 JB/KBM, 2006 WL 4063021, at *3 (D.N.M. June 30, 2006)(Browning, J.)(dismissing a civil Racketeer Influenced and Corrupt Organizations Act (RICO) cause of action from a complaint where the complaint alleged a single physical act, and not a pattern of racketeering activity, and a pattern of activity is one of the elements required to state a RICO claim).

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). "Thus, the mere metaphysical possibility

that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(emphasis omitted). A court will not construe a plaintiff's pleadings "so liberally that it becomes his advocate." Bragg v. Chavez, No. CIV 07-0343 JB/WDS, 2007 WL 5232464, at *25 (D.N.M. Aug. 2, 2007)(Browning, J.). The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d at 1247 (internal citations omitted)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). See Gallegos v. Bernalillo Cty. Bd. of Cty Comm'rs, 278 F. Supp. 3d 1245, 1259 (D.N.M. 2017)(Browning, J.).

"When a party presents matters outside of the pleadings for consideration, as a general rule 'the court must either exclude the material or treat the motion as one for summary judgment.'" Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017)(quoting Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004)). There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322; (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002); and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor

Issues & Rights, Ltd., 551 U.S. at 322. See Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d at 1103 (holding that the district court did not err by reviewing a seminar recording and a television episode on a rule 12(b)(6) motion, which were "attached to or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their accuracy and authenticity"). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).

In Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the [motion to dismiss]." 627 F.3d at 1186. The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment." 627 F.3d at 1186-87. In other cases, the Tenth Circuit has emphasized that, "[b]ecause the district court considered facts outside of the complaint . . . it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)." Nard v. City of Okla. City, 153 F. App'x 529, 534 n.4 (10th Cir. 2005)(unpublished)[15]. In Douglas v.

---

[15]Nard v. City of Okla. City is an unpublished opinion, but the Court can rely on an unpublished opinion for the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. However,

<u>Norton</u>, 167 F. App'x 698 (10th Cir. 2006)(unpublished), the Tenth Circuit addressed a charge untimely filed with the Equal Employment Opportunity Commission -- which the Tenth Circuit analogized to a statute of limitations -- and concluded that, because the requirement was not jurisdictional, the district court should have analyzed the question under rule 12(b)(6), and "because the district court considered evidentiary materials outside of Douglas' complaint, it should have treated Norton's motion as a motion for summary judgment." 167 F. App'x at 704-05.

The Court has previously ruled that, when a plaintiff references and summarizes defendants' statements in a complaint, the Court cannot rely on documents containing those statements that the defendants attach in their briefing. <u>See</u> <u>Mocek v. City of Albuquerque</u>, No. CIV 11-1009 JB/KBM, 2013 WL 312881, at *50-51 (D.N.M. Jan. 14, 2013)(Browning, J.). The Court reasoned that the statements were neither incorporated by reference nor central to the plaintiff's allegations in the complaint, because the plaintiff cited the statements only to attack the defendant's reliability and truthfulness. <u>See</u> 2013 WL 312881, at *50-51. The Court has also previously ruled that, when determining whether to toll a statute of limitations in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters

---

if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." <u>United States v. Austin</u>, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that <u>Nard v. City of Oklahoma City</u>, <u>Douglas v. Norton</u>, <u>Merswin v. Williams Cos.</u>, <u>Poche v. Joubran</u>, <u>Wallace v. United States</u>, <u>Employers' Mutual Casualty Co. v. Bartile Roofs, Inc.</u>, <u>Muller v. Culbertson</u>, and <u>Hodgson v. Farmington City</u> have persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion and Order.

attached to a motion to dismiss, which show that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired. See Great Am. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500, at *3, *22-23 (D.N.M. Aug. 23, 2012)(Browning, J.)("Crabtree"). The Court in Crabtree determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the sufficiency of its contents alone, as the complaint did not incorporate the documents by reference or refer to the documents. See 2012 WL 3656500, at *22-23; Mocek v. City of Albuquerque, 2013 WL 312881, at *50 (refusing to consider statements that were not "central to [the plaintiff's] claims").

On the other hand, in a securities class action, the Court has ruled that a defendant's operating certification, to which the plaintiffs refer in their complaint, and which was central to whether the plaintiffs adequately alleged a loss, falls within an exception to the general rule that a complaint must rest on the sufficiency of its contents alone, so the Court may consider the operating certification when ruling on the defendant's motion to dismiss without converting the motion into one for summary judgment. See Genesee Cty. Emps.' Ret. Sys. v. Thornburg Mortg. Secs. Tr. 2006-3, 825 F. Supp. 2d 1082, 1150-51 (D.N.M. 2011)(Browning, J.). See also Sec'y & Exch. Comm'n v. Goldstone, 952 F. Supp. 2d 1060, 1217-18 (D.N.M. 2013)(Browning, J.)(considering, on a motion to dismiss, emails referenced in the complaint as "documents referred to in the complaint," which are "central to the plaintiff's claim" and whose authenticity the plaintiff did not challenge); Mata v. Anderson, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning, J.)(relying on documents outside of the complaint because they

were "documents that a court can appropriately view as either part of the public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute").

## LAW REGARDING THE FINALITY OF STATE COURT JUDGMENTS IN FEDERAL COURT

Res judicata and collateral estoppel are common-law doctrines of finality, which serve to relieve parties of the costs and vexation of multiple lawsuits, conserve judicial resources, and prevent inconsistent decisions. See Allen v. McCurry, 449 U.S. 90, 94 (1980). "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)(citing Comm'r v. Sunnen, 333 U.S. 591, 597 (1948)) . Collateral estoppel precludes re-litigation of a common issue of law or fact which was necessarily decided in a prior court's final judgment. See Allen v. McCurry, 449 U.S. at 94. In determining whether a doctrine of finality applies, a decision from a state court has the same preclusive effect in federal court as the decision would have in a subsequent state court action. See Reed v. McKune, 298 F.3d 946, 949-50 (10th Cir. 2002)(citing 28 U.S.C. § 1738 ("[The] judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States . . . as they would by law or usage in the courts of such  . . . from which they are taken.")). A district court in the Tenth Circuit applying res judicata or collateral estoppel to a decision from a state court must look to the laws of that state to determine the required elements for either doctrine to preclude a claim or issue brought in federal court. See Reed v. McKune, 298 F.3d at 949 ("In determining whether a state court judgment precludes a subsequent action in ederal court, we

must . . . giv[e] it the same preclusive effect as would the courts of the state issuing the judgment." (internal quotation marks omitted)(quoting Rhodes v. Hannigan, 12 F.3d 989, 991 (10th Cir. 1993))). Thus, if a state law in state court would preclude re-litigation of a claim or an issue of law or fact, the same claim or issue is precluded in federal court. See Reed v. McKune, 298 F.3d at 949 (applying Kansas law to determine whether collateral estoppel precludes an issue of fact or law in a federal court action containing § 1983 claims).

## RELEVANT NEW MEXICO LAW REGARDING RES JUDICATA

Under New Mexico law, res judicata, also known as claim preclusion, bars re-litigation of "the same claim between the same parties or their privies when the first litigation resulted in a final judgment on the merits." Deflon v. Sawyers, 2006-NMSC-025, ¶ 2, 137 P.3d at 579. New Mexico law prescribes four elements for a party seeking to assert res judicata: "(i) the same parties or parties in privity; (ii) the identity of capacity or character of persons for or against whom the claim is made; (iii) the same subject matter; and (iv) the same cause of action in both suits." Hartnett v. Papa John's Pizza USA, Inc., 828 F. Supp. 2d at 1285-86 (citing Apodaca v. AAA Gas Co., 2003-NMCA-085, ¶ 75, 73 P.3d 215, 238-39[16]). Res judicata is a broad bar, precluding a party from bringing any claims which were, or which could have been raised in a prior proceeding finally

---

[16]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico's statement of res judicata's elements in Apodaca v. AAA Gas Co., because of the Supreme Court of New Mexico's statement of the same elements in Silva v. State, that "Application of the doctrine of *res judicata* . . . depends upon identity of prior and subsequent actions in four respects: (1) parties or privies, (2) capacity or character of persons for or against whom the claim is made, (3) cause of action, and (4) subject matter." Silva v. State, 1987-NMSC-107, ¶ 5, 745 P.2d at 382.

determined on the merits.  See Kirby v. Guardian Life Ins., 2010-NMSC-014, ¶ 61, 231 P.3d 87,

105.  To determine whether a prior suit, under res judicata, precludes a claim in a second suit, New

Mexico courts will look to: "(i) the relatedness of the facts in time, space origin, or motivation;

(ii) whether, taken together, the facts form a convenient unit for trial purposes; and (iii) whether

the treatment of the facts as a single unit conforms to the parties' expectations or business

understanding or usage."  Hartnett v. Papa John's Pizza USA, Inc., 828 F. Supp. 2d at 1285-86

(citing Bank of Santa Fe v. Marcy Plaza Assocs., 2002-NMCA-014, 40 P.3d 442[17]).  Additionally,

res judicata bars a claim only where a party had a "full and fair opportunity to litigate issues arising

out of that claim."  Kirby v. Guardian Life Ins., 2010-NMSC-014, ¶ 61, 231 P.3d at 105.

## RELEVANT NEW MEXICO LAW REGARDING ISSUE PRECLUSION ("COLLATERAL ESTOPPEL")

Under New Mexico law, "collateral estoppel, also called issue preclusion, prevents a party

from re-litigating 'ultimate facts or issues actually and necessarily decided in a prior suit.'"  Ullrich

v. Blanchard, 2007-NMCA-145, ¶ 19, 171 P.3d 774, 778 (quoting Deflon v. Sawyers, 2006-

NMSC-025, ¶ 13, 137 P.3d 577, 582; Adams v. United Steelworkers of Am., AFL-CIO, 1982-

---

[17]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico's statement in Bank of Santa Fe v. Marcy Plaza Associates, of the factors that New Mexico courts consider in determining whether res judicata precludes a claim, based on the Supreme Court of New Mexico's decision in Kirby v. Guardian Life Ins. v. Amer., 2010-NMSC-014, 231 P.3d 87, in which the Supreme Court of New Mexico cited to Bank of Santa Fe v. Marcy Plaza Associates with approval, and specifically cited to one of the factors from Bank of Santa Fe v. Marcy Plaza Associates, 2002-NMCA-014, ¶ 16, 40 P.3d 442, 446, stating that, "[u]nder *Bank of Santa Fe*, one factor required for a showing that two claims are the same is "the relatedness of the facts in time, space, origin, or motivation."  Kirby v. Guardian Life Ins. v. Amer., 2010-NMSC-014, ¶ 63, 231 P.3d at 105.

NMSC-014, ¶ 16, 640 P.2d 475, 479).   Accord Hartnett v. Papa John's Pizza USA, Inc., 828

F. Supp. 2d 1278, 1286 (D.N.M. 2011)(Browning, J.).   For collateral estoppel to apply, four

elements must be met: "(1) the parties in the current action were the same or in privity with the

parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact

or issue was actually litigated, and (4) the issue was necessarily determined."   Ullrich v. Blanchard,

2007-NMCA-145, ¶ 19, 171 P.3d at 778 (quoting City of Sunland Park, Santa Teresa Servs. Co.

v. Macias, 2003-NMCA-098, ¶ 10, 75 P.3d 816, 820).[18]   Accord Hartnett v. Papa John's Pizza

USA, Inc., 828 F. Supp. 2d at 1286.   Additionally, "[t]o give rise to estoppel, the finding of

ultimate facts in the prior action must have been final."   Silva v. State, 1987-NMSC-107, ¶ 7, 745

P.2d 380, 382 (citing C & H Constr. & Paving Co. v. Citizens Bank, 1979-NMCA-077, ¶ 27, 597

P.2d 1190, 1200 ("It is well established that the doctrines of res judicata and collateral estoppel

apply only to final judgments.").   See also City of Santa Fe v. Velarde, 1977-NMSC-040, ¶ 9, 564

---

[18]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico's statement of collateral estoppel's elements under New Mexico law, in Ulrich v. Blanchard and City of Sunland Park, Santa Teresa Servs. Co. v. Macias.  The Court bases its prediction on Silva v. State, 1987-NMSC-107, 745 P.2d 380, in which the Supreme Court of New Mexico identified the following elements of collateral estoppel under New Mexico law: "the parties in the second suit must be the same or in privity with the parties in the first suit," 1987-NMSC-107, ¶ 6, 745 P.2d at 382, and, where the causes of action in two cases are different, "the parties are precluded from relitigating only those ultimate issues and facts shown to have been actually and necessarily determined in the previous litigation," 1987-NMSC-107, ¶ 5, 745 P.2d at 382 (quotation marks omitted)(quoting City of Santa Fe v. Velarde, 1977-NMSC-040, ¶ 5, 564 P.2d 1326, 1328).  The Supreme Court of New Mexico identified the same collateral estoppel elements as the Court of Appeals of New Mexico and, therefore, the Court predicts that the Supreme Court of New Mexico would agree with the Court of Appeals' listing of those elements.

P.2d 1326, 1328 (asserting that application of the doctrines of res judicata or collateral estoppel requires a prior final decision). If the party invoking the doctrine establishes a prima facie case, then the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a fair opportunity to litigate the issue in the prior proceeding. See Padilla v. Intel Corp., 1998-NMCA-125, ¶ 4, 964 P.2d 862, 865; State v. Bishop, 1992-NMCA-034, ¶ 8, 832 P.2d 793, 795.[19] Accord Hartnett v. Papa John's Pizza USA, Inc., 828 F. Supp. 2d at 1286.

Whether the doctrine of collateral estoppel should be applied is within the trial court's discretion, and the exercise of discretion is reviewed for an abuse of discretion on appeal. See Hartnett v. Papa John's Pizza USA, Inc., 828 F. Supp. 2d at 1286; Shovelin, 1993-NMSC-015, ¶ 14, 850 P.2d at 1002. Even when all the elements of collateral estoppel are present, the trial court may consider whether countervailing equities militate against application of the doctrine. See Hartnett v. Papa John's Pizza USA, Inc., 828 F. Supp. 2d at 1286; Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor, 1993-NMCA-008, ¶ 14, 848 P.2d 1086, 1091. Collateral estoppel should be applied only where the judge determines that its application would not be

---

[19]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico's statement regarding collateral estoppel burden-shifting, in Padilla v. Intel Corp. and State v. Bishop. The Court bases its prediction on Silva v. State, 1987-NMSC-107, 745 P.2d 380, in which the Supreme Court of New Mexico stated: "This satisfied movant's burden of showing a prima facie case for summary judgment. . . . It was then respondent's burden to show there was a factual issue as to a full and fair opportunity to litigate." 1987-NMSC-107, ¶ 8, 745 P.2d at 383. The Tenth Circuit utilized the same quote from Padilla v. Intel Corp. to state the law regarding collateral estoppel burden-shifting in New Mexico. See Salguero v. City of Clovis, 366 F.3d 1168, 1173 (10th Cir. 2004).

fundamentally unfair.  See Hartnett v. Papa John's Pizza USA, Inc., 828 F. Supp. 2d at 1286;

Reeves v. Wimberly, 1988-NMCA-038, ¶ 14, 755 P.2d 75, 78;[20].

### RELEVANT FEDERAL LAW REGARDING ISSUE PRECLUSION

"[I]ssue preclusion . . . refers 'to the effect of a judgment in foreclosing relitigation of a

matter that has been litigated and decided.'"  Murdock v. Ute Indian Tribe of Uintah & Ouray

Reservation, 975 F.2d 683, 687 (10th Cir. 1992))(citing Marrese v. Am. Acad. of Orthopaedic

Surgeons, 470 U.S. 373, 376 n.1 (1985)).  The Tenth Circuit has stated that "a federal court

examining a question of federal law upon which another federal court . . . has previously

ruled . . . must rely on the federal law of [issue preclusion]."  Murdock v. Ute Indian Tribe of

Uintah & Ouray Reservation, 975 F.2d at 687 (citing Blonder-Tongue Lab., Inc. v. Univ. of Ill.

Found., 402 U.S. 313, 324 n.12 (1971); Meza v. Gen. Battery Corp., 908 F.2d 1262, 1265 (5th Cir.

1990); Fireman's Fund Ins. v. Int'l Mar. Place, 773 F.2d 1068, 1069 (9th Cir. 1985); Restatement

(Second) of Judgments § 87, at 314 (1982)("Federal law determines the effects under the rules of

---

[20]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico's statements in Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor and Reeves v. Wimberly that a court should apply collateral estoppel only where the judge determines that its application would not be fundamentally unfair, and where equities do not militate against it.  See Hyden v. Law Firm of McCormick, Forbes, Caraway & Tabor, 1993-NMCA-008, ¶ 14, 848 P.2d at 1091; Reeves v. Wimberly, 1988-NMCA-038, ¶ 14, 755 P.2d at 78.  The Court bases its prediction on the Supreme Court of New Mexico's assertion in Silva v. State that, "[i]t is clear from the cited New Mexico authorities that, in deciding whether to apply the doctrine of collateral estoppel, the trial judge may determine that its application would be fundamentally unfair and would not further the aim of the doctrine," and therefore may decide not to apply the doctrine.  1987-NMSC-107, ¶ 7, 745 P.2d at 382.  The Supreme Court of New Mexico also stated: "A growing number of jurisdictions hold that, absent fundamental unfairness in a given case, the doctrine of collateral estoppel may be applied . . . ."  1987-NMSC-107, ¶ 7, 745 P.2d at 382.

[preclusion] of a judgment of a federal court"); 18 C. Wright & A. Miller, <u>Federal Practice & Procedure: Jurisdiction</u> § 4466 (1981 & Supp. 1992)). In the Tenth Circuit, four elements must be met for issue preclusion to apply: (i) "the issue previously decided is identical with the one presented in the action in question;" (ii) "the prior action has been finally adjudicated on the merits;" (iii) "the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication;" and (iv) "the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action." <u>Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation</u>, 975 F.2d at 687.

The Tenth Circuit has not addressed whether a summary judgment order dismissing fewer than all the claims or adjudicating the rights and liabilities of fewer than all the parties may serve as the basis for issue preclusion in subsequent litigation. The Court therefore considers what other federal courts have stated regarding the finality requirement for issue preclusion. Various federal courts have discussed the finality requirement for issue preclusion. <u>See John Morrell & Co. v. Local Union 304A of United Food Commercial Workers, AFL-CIO</u>, 913 F.2d 544, 563 (8th Cir. 1990); <u>Avondale Shipyards, Inc. v. Insured Lloyd's</u>, 786 F.2d 1265, 1269 (5th Cir. 1986). Recently, several federal courts have stated that, for purposes of issue preclusion, finality in the sense of 28 U.S.C. § 1291 is not required. <u>See Miller Brewing Co. v. Joseph Schlitz Brewing Co.</u>, 605 F.2d 990, 996 (7th Cir. 1979)("To be 'final' for purposes of [issue preclusion] the decision need only be immune, as a practical matter, to reversal or amendment."); <u>Lummus Co. v. Commonwealth Oil Refining Co.</u>, 297 F.2d 80, 89 (2d Cir. 1961)("'[F]inal' also is 'a word of many meanings[;]' the law of judgments does not use it in relation to conclusiveness, as 28 U.S.C.

- 48 -

§ 1291 does, to mean only a judgment 'which ends the litigation and leaves nothing for the court to do but execute the judgment[.]'" (internal citations omitted)(quoting <u>Sw. Bell Tel. Co. v. Pub. Serv. Comm'n</u>, 262 U.S. 276, 310 (1923); <u>Catlin v. United States</u>, 324 U.S. 229, 233 (1945)); 18A C. Wright, A. Miller & E. Cooper, <u>Federal Practice & Procedure Jurisdiction</u> § 4434 (2d. ed 1984)("Recent decisions have relaxed traditional views of the finality requirement by applying issue preclusion to matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief."). <u>But</u> <u>see</u> <u>Avondale Shipyards, Inc. v. Insured Lloyd's</u>, 786 F.2d at 1269 (declining to "depart from [its] previously stated rule that an order granting partial summary judgment 'has no res judicata [(claim preclusion)] or collateral estoppel [(issue preclusion)] effect.'" (quoting <u>Golman v. Tesoro Drilling Corp.</u>, 700 F.2d 249, 253 (5th Cir. 1983))).

The <u>Restatement (Second) of Judgments</u> reflects the trend that, for purposes of issue preclusion, finality in the sense of 28 U.S.C. § 1291 is not required. The <u>Restatement (Second) of Judgments</u> states: "The rules of [preclusion] are applicable only when a final judgment is rendered. However, for purposes of issue preclusion . . . , 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." <u>Restatement (Second) of Judgments</u> § 13 (1982). It further states that a "more pliant view of finality . . . is appropriate with respect to issue preclusion." <u>Restatement (Second) of Judgments</u> § 13 cmt. b. Under § 13 comment g, labeled criteria for determining finality in the application of issue preclusion, the <u>Restatement (Second) of Judgments</u> states:

Usually there is no occasion to interpret finality less strictly when the question is

one of issue preclusion, that is, when the question is whether decision of a given issue in an action may be carried over to a second action in which it is again being litigated. . . . But to hold invariably that that kind of carry-over is not to be permitted until a final judgment in the strict sense has been reached in the first action can involve hardship -- either needless duplication of effort and expense in the second action to decide the same issue, or, alternatively, postponement of decision of the issue in the second action for a possibly lengthy period of time until the first action has gone to a complete finish. In particular circumstances the wisest course is to regard the prior decision of the issue as final for the purpose of issue preclusion without awaiting the end judgment. Before doing so, the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion. The test of finality, however, is whether the conclusion in question is procedurally definite and not whether the court might have had doubts in reaching the decision.

Restatement (Second) of Judgments §  13 cmt. g.

Based on the cases that the Court has found, federal courts are split regarding whether a summary judgment order resolving fewer than all the claims is final for purposes of issue preclusion. In Avondale Shipyards, Inc. v. Insured Lloyd's, the United States Court of Appeals for the Fifth Circuit "declined to depart from [its] previously stated rule that an order granting partial summary judgment [on certain issues] 'has no [claim preclusion] or [issue preclusion] effect.'" Avondale Shipyards, Inc. v. Insured Lloyd's, 786 F.2d at 1269 (citation omitted). In analyzing whether it should depart from its previously stated rule, the Fifth Circuit stated:

> We are aware of respected authority to the effect that for the purpose of issue preclusion . . . the degree of finality required respecting the prior adjudication may in many instances be less than is appropriate for claim preclusion . . . . However, "[t]he most prominent [of these] decisions have involved issues that were resolved by appeal prior to final judgment in the first

action." Wright, Miller & Cooper, <u>Federal Practice and Procedure: Jurisdiction</u> § 4434 at 321. <u>See</u>, <u>e.g.</u>, <u>Lummus Co. v. Commonwealth Oil Ref. Co.</u>, 297 F.2d 80, 87-90 (2d Cir. 1961), <u>cert. denied</u>, 368 U.S. 986 . . . (1962); <u>Zdanok v. Glidden Co.</u>, 327 F.2d 944, 955 (2d Cir.), <u>cert. denied</u>, 377 U.S. 934 . . . (1964); <u>Miller Brewing Co. v. Jos. Schlitz Brewing Co.</u>, 605 F.2d 990, 995-96 (7th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1102 . . . (1980); <u>Dyndul v. Dyndul</u>, 620 F.2d 409, 411-12 (3d Cir. 1980)(appeal available but foregone). <u>Lummus</u>, generally viewed as the leading case in this area, expressly recognizes the importance of "the opportunity of review" of the prior decision. 297 F.2d at 89.

We are not aware of any federal appellate decision which has applied preclusion to a prior nonfinal ruling as to which appellate review was unavailable, nor any which contradicts our above-cited opinions stating that partial summary judgment orders under Rule 56(d) are not preclusive. Hence, even were we to follow <u>Lummus</u>, we would not extend it to such a situation. We recognize that there is highly respected authority suggesting a contrary approach. <u>See</u> <u>Restatement (Second) Judgments</u> § 13, illustration 2. The principal case relied on for this view is <u>Sherman v. Jacobson</u>, 247 F. Supp. 261, 268-69 (S.D.N.Y. 1965).

We respectfully disagree with <u>Sherman</u>. A recognized text states that "[t]here are some serious problems with" the broad <u>Restatement</u> formulation that the prior determination is issue preclusive if "sufficiently firm to be accorded conclusive effect," gives <u>Sherman</u> as an example, and observes that such an approach "seems calculated to create more problems than it would solve." 1B Moore's <u>Federal Practice</u>, ¶ 0.441[4] at 747. While the <u>Restatement</u> and another respected text assert that the availability of appellate review is a significant consideration in determining whether an otherwise nonfinal prior order should be issue preclusive, the practical effect of <u>Sherman</u> seems to render appealability almost irrelevant. It appears to us that under a <u>Sherman</u>-type approach, the result is either that nearly every interlocutory ruling will be issue preclusive, or that it will be almost impossible to determine in advance which will be preclusive and which not. The former alternative renders the availability of appellate review virtually irrelevant; the latter undermines predictability and efficiency. Further, issue preclusion is normally denied where the issue determined is not essential to the judgment (this is based both on a diminished confidence due to the lack of essentiality and on the unavailability of appellate review, <u>see</u> <u>Restatement (Second) Judgments</u> § 27, comments <u>h & i</u>; § 28, comment <u>a</u>). Such denial is difficult to reconcile with the allowance of issue preclusion to rulings in a partial summary judgment order, as to which not only is appeal presently unavailable but it is also impossible to know whether appeal will ever be available and whether any issue thus ruled on will be essential to the judgment in the case. Moreover, <u>Sherman</u> rests in part on the premise that

availability of relief under Rule 60(b) with respect to judgments which are final in the usual sense renders them just as subject to revocation or modification by the court which rendered them as are orders under Rule 56(d). 247 F. Supp. at 269. We have rejected this premise. Zimzores v. Veterans Administration, supra. See also Acha v. Beame, 570 F.2d 57, 63 (2nd Cir. 1978).

Avondale Shipyards, Inc. v. Insured Lloyd's, 786 F.2d at 1270-71 (footnotes omitted).[21]

---

[21]In Sherman v. Jacobson, the District Court for the Southern District of New York stated:

Although there is no question that a prerequisite for application of the doctrine of [issue preclusion] is a final judgment, Restatement, Judgments § 41 (1942), the concept of finality is not easily defined. It is true that 'finality' has sometimes been equated with 'appealability' in the context of a particular case, e.g., United States v. Physic, 175 F.2d 338 (2d Cir. 1949); United States v. One 1946 Plymouth Sedan Automobile, 167 F.2d 3 (7th Cir. 1948); Restatement, Judgments § 41, comment a (1942). However, 'final' in the [claim preclusion] or [issue preclusion] sense is not identical to 'final' in the rule governing the jurisdiction of appellate courts. Lummus Co. v. Commonwealth Oil Ref. Co., 297 F.2d 80, 89 (2d Cir. 1961), cert. denied, Dawson v. Lummus Co., 368 U.S. 986 . . . (1962). An examination of the policies underlying [claim preclusion] and [issue preclusion] and the requirement that judgments be 'final' to be appealable shows why this is so.

. . . .

Bearing this in mind, there must still be determined exactly what the requirement of finality entails in the [issue preclusion] context. A judgment may be final, despite the fact that an appeal from it has not been decided, whether because the appeal is pending, United States v. Nysco Labs., Inc., 318 F.2d 817 (2d Cir. 1963) (per curiam), or the party has lost its right to appeal because of the circumstances of the case, United States v. Munsingwear, Inc., supra (case became moot), or the law does not provide for review, Johnson Co. v. Wharton, 152 U.S. 252 . . . (1894) (jurisdictional amount required for appeal not satisfied). The form of the adjudication is not decisive, 2 Freeman, Judgments § 666 (5th ed. 1925), nor is the label, such as 'interlocutory,' given the decision. Bee Mach. Co. v. Freeman, 131 F.2d 190 (1st Cir. 1942), aff'd, 319 U.S. 448 . . . (1943). The judgment may be final as to some matters, even though the litigation continues as to others, Restatement, Judgments § 41, comment c (1942), and the decision may have

Several federal district courts have similarly found that a summary judgment order resolving fewer than all the claims in the case is not a final judgment and thus cannot serve a basis for issue preclusion. <u>See</u> <u>In re Loughery</u>, No. 09-69033-PWB, 2010 WL 4642131, at *6, 8 (Bankr. N.D. Ga. Oct. 12, 2010)(concluding that the district court's order granting in part and denying in part summary judgment, which found the defendant liable under one of the plaintiff's claims, but not the plaintiffs' other claims, did not satisfy the finality requirement of issue preclusion, because, using the guidance in the <u>Restatement(Second) of Judgments</u> § 13 comment g, although the parties were heard and the district court supported its decision with a reasoned opinion, the order was not subject to appeal and was not reviewed on appeal -- it was interlocutory in nature, did not end the action and was subject to revision under rule 54(b) at any time before the entry of judgment); <u>Am. Cas. Co. of Reading v. Sentry Fed. Sav. Bank</u>, 867 F. Supp. 50, 56 (D. Mass. 1994)(Young, J.)(noting that the trend seems to be toward expanding the notion of finality for purposes of issue preclusion, but that most of the courts that have expanded the notion of finality have done so when there has been opportunity for appellate review, and declining to treat a partial summary judgment, resolving only one issue in the case, as final when "no final judgment [has been] entered and there has been no opportunity for appeal").

Other federal district courts, however, have found that a summary judgment order resolving fewer than all the claims in the case is a final decision for purpose of issue preclusion.

---

adjudicated liability only, leaving the assessment of damages in abeyance. <u>Zdanok v. Glidden Co.</u>, 327 F.2d 944, 955 (2d Cir.), cert. denied, 377 U.S. 934 . . . (1964).

<u>Sherman v. Jacobson</u>, 247 F. Supp. at 268.

See Shakman v. Democratic Party Org. of Cook Cty., No. 03-C-4819, 2004 WL 407015, at *8

(N.D. Ill. Jan. 28, 2004)("[T]he partial summary judgment grant [on one of the plaintiffs' claims]

is a final decision for purposes of issue preclusion." (citing Amcast Indus. Corp. v. Detrex Corp.,

45 F.3d 155, 158 (7th Cir. 1995)("[A] good deal more latitude is allowed [regarding finality] when

[issue preclusion] is invoked rather than [claim preclusion]."))); Gilldorn Sav. Ass'n v. Commerce

Sav. Ass'n, 804 F.2d 390, 393 (7th Cir. 1979)); Siemens Med. Sys., Inc. v. Nuclear Cardiology

Sys., Inc., 945 F. Supp. 1421, 1433 (D. Colo. 1996)(Babcock, J.).  In Siemens Medical Systems,

Inc. v. Nuclear Cardiology Systems, Inc., the Honorable Lewis Babcock, United States District

Judge for the District of Colorado, declined to follow Avondale Shipyards, Inc. v. Insured Lloyd's,

in determining whether a prior summary judgment order granting summary judgment on one of

the plaintiff's claims against the defendant, stating:

> I am not persuaded by the Fifth Circuit's reasoning, at least as it applies
> here.  Although Rule 54(b) provides that an order that is not explicitly made final
> is subject to later revision, it would be pedantic to contend that all interlocutory
> orders are therefore "tentative" in any real sense.  It presupposes that a party will
> move for reconsideration of the order and that the court would grant it.
> Significantly, where, as here, a party has settled and dismissed the case with
> prejudice, Fed. R. Civ. P. 54(b) no longer applies, and whatever orders have been
> entered into the case are frozen, not subject to reconsideration.

> In addition, the Fifth Circuit has recently recognized an inconsistency in its
> own decisions.  Jury verdicts, like partial summary judgment orders, are subject to
> revision under Fed. R. Civ. P. 54(b) until they are entered as final.  The Fifth Circuit,
> however, gives preclusive effect to such nonfinal jury verdicts.  RecoverEdge L.P.
> v. Pentecost, 44 F.3d 1284, 1295 (5th Cir. 1995).  The court has recognized this
> incongruity but has not yet addressed it.  Marine Shale Processors, Inc. v. United
> States Environmental Protection Agency, 81 F.3d 1371, 1380 n.2 (5th Cir. 1996).

> Further, the Fifth Circuit's rationale ignores other policy concerns.  If a
> partial summary judgment is never to have preclusive effect, a party involved in a

series of suits against different litigants will have the option to avoid preclusive effects in future suits simply by settling the current suit whenever an unfavorable summary judgment order is issued. This would be directly contrary to the goal of judicial economy that [issue preclusion] is designed to promote. Parklane [Hosiery Co. v. Shore], 439 U.S. [322,] 326, . . . . So long as it would not be inequitable to do so, it makes inimitable sense to preserve and use whatever firm judicial decisions have been made previously on a particular issue. To accomplish that, however, the power to determine the preclusive effect of judgments must not be left in the hands of parties who are interested in avoiding such effects.

Siemens Med. Sys., Inc. v. Nuclear Cardiology Sys., Inc., 945 F. Supp. at 1435.

Collateral estoppel is an affirmative defense on which the party raising the defense bears the burden of proof. See Fed. R. Civ. P. 8(c); Nwosun v. Gen. Mills Rests., Inc., 124 F.3d 1255, 1256 (10th Cir. 1997), cert. denied, 523 U.S. 1064 (1998). A defendant may properly raise the defense in a rule 12(b)(6) motion when the facts necessary to support the defense are apparent on the pleadings' face. See Prospero Assocs. v. Burroughs Corp., 714 F.2d 1022, 1024 (10th Cir. 1983)("The motion is also procedurally defective," because "[t]he affirmative defense of res judicata does not appear on the face of the Complaint."); Miller v. Shell Oil Co., 345 F.2d 891, 893 (10th Cir. 1965)(reversing court's decision to grant a motion to dismiss based on defense of res judicata, where the facts that would support the defense were not in the complaint). See also Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000)(acknowledging that a rule 12(b)(6) motion to dismiss may raise the res judicata affirmative defense, but only if the defense clearly appears on the complaint's face). Furthermore, "it must be remembered that disputes over material issues of fact cannot be resolved on a motion to dismiss . . . but must be reserved for resolution at trial by the appropriate trier," and thus the affirmative defense of collateral estoppel can raise no disputed

issues of fact.  C. Wright & A. Miller, <u>Federal Practice & Procedure</u> § 1277, at 328-30, 332 (3d ed. 1998).

> When there is no disputed issue of fact raised by an affirmative defense, or the facts are completely disclosed on the face of the pleadings, and realistically nothing further can be developed by pretrial discovery or a trial on the issue raised by the defense, the recent cases seem to agree that the matter may be disposed of by a motion to dismiss under Rule 12(b).

Wright & Miller, <u>supra</u>.  <u>See</u> <u>Scott v. Kuhlmann</u>, 746 F.2d 1377, 1378 (9th Cir. 1984)("Ordinarily affirmative defenses such as collateral estoppel may not be raised by motion to dismiss, but this is not true when, as here, the defense raises no disputed issues of fact").  Alternatively, the party asserting collateral estoppel through a motion to dismiss may request the court to take judicial notice of additional documents filed of record in the prior case.  <u>See</u> <u>Merswin v. Williams Cos.</u>, No. 09-5096, 2010 WL 373672, at *2 (10th Cir. 2010)(unpublished)(citations omitted).  <u>See</u> <u>also</u> <u>Andrews v. Daw</u>, 201 F.3d at 524 n.1 (stating that, "when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."  (citations omitted). )).

## <u>RELEVANT LAW REGARDING LAW OF THE CASE</u>

"Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" <u>Poche v. Joubran</u>, 389 F. App'x 768, 774 (10th Cir. 2010)(unpublished)(quoting <u>Dobbs v. Anthem</u>, 600 F.3d 1275, 1279 (10th Cir. 2010)).  The Tenth Circuit has "acknowledged, however, that 'the rule [of law of the case] is a flexible one that allows courts to depart from erroneous prior rulings, as the underlying policy of the rule is one of efficiency, not restraint of judicial power.'" <u>Been v.</u>

O.K. Indus., Inc., 495 F.3d 1217, 1225 (10th Cir. 2007)(quoting Prairie Band Potawatomi Nation v. Wagnon, 476 F.3d 818, 823 (10th Cir. 2007). The Tenth Circuit has stated that this flexibility means "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" Been v. O.K. Indus., Inc., 495 F.3d at 1225 (quoting Avitia v. Metro. Club of Chicago, Inc., 49 F.3d 1219, 1227 (7th Cir. 1995). See also Homans v. City of Albuquerque, 366 F.3d 900, 904 (10th Cir. 2004)("[T]he doctrine is discretionary rather than mandatory."). "If the original ruling was issued by a higher court, a district court should depart from the ruling only in exceptionally narrow circumstances." Been v. O.K. Indus., Inc., 495 F.3d at 1225 (citing McIlravy v. Kerr-McGee Coal Corp., 204 F.3d 1031, 1035 (10th Cir. 2000)).

Only "final judgments may qualify as law of the case." Poche v. Joubran, 389 F. App'x at 774 (quoting Unioil, Inc. v. Elledge (In re Unioil, Inc.), 962 F.2d 988, 993 (10th Cir. 1992)). The doctrine is inapplicable where "a ruling remains subject to reconsideration." Wallace v. United States, 372 F. App'x 826, 828 (10th Cir. 2010)(unpublished)(internal quotation marks omitted)(quoting In re Unioil, Inc., 962 F.2d at 993). This means that "district courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., Inc., 495 F.3d at 1225 (citing Harlow v. Children's Hosp., 432 F.3d 50, 55 (1st Cir. 2005); United States v. Smith, 389 F.3d 944, 949 (9th Cir. 2004)(explaining that a district court may review its prior rulings so long as it retains jurisdiction over the case)).

Similarly, this Court has stated that "[l]aw of the case is a doctrine that binds the trial court after an appeal." Lane v. Page, 727 F. Supp. 2d 1214, 1230 n.9 (D.N.M. 2010)(Browning, J.)(citation omitted). In Clark v. State Farm Mutual Automobile Insurance, 590 F.3d 1134 (10th

Cir. 2009), the Tenth Circuit stated:

> Under the law of the case doctrine, a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time.

590 F.3d at 1140.

The law-of-the-case "doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Arizona v. California, 460 U.S. 605, 618 (1983). "A complementary theory, the mandate rule, 'generally requires [district] court conformity with the articulated appellate remand,' but the mandate rule 'is a discretion-guiding rule subject to exception in the interests of justice." United States v. Webb, 88 F.3d 585, 587 (10th Cir. 1996)(quoting United States v. Moore, 83 F.3d 1231, 1234 (10th Cir. 1996)).

> The doctrine has particular relevance following a remand order issued by an appellate court. "[W]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and ordinarily will be followed by both the trial court on remand and the appellate court in any subsequent appeal." *Rohrbaugh v. Celotex Corp.*, 53 F.3d 1181, 1183 (10th Cir. 1995). The law of the case doctrine is intended to prevent "continued re-argument of issues already decided," *Gage v. Gen. Motors Corp.*, 796 F.2d 345, 349 (10th Cir. 1986), and to preserve scarce court resources -- to avoid "in short, Dickens's *Jarndyce v. Jarndyce* syndrome." *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000).
>
> . . . .
>
> [T]hree "exceptionally narrow" grounds justify departing from the law of the case doctrine: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice." *McIlravy*, 204 F.3d at 1035.

Huffman v. Saul Holdings Ltd. P'ship, 262 F.3d 1128, 1132-33 (10th Cir. 2001). Although the law-of-the-case doctrine "is designed to promote finality and prevent re-litigation of previously decided issues," it "does not serve to limit a court's power." Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1251 (10th Cir. 2011). "The doctrine applies to issues previously decided either explicitly or by necessary implication." Copart, Inc. v. Admin. Review Bd., 495 F.3d 1197, 1201 (10th Cir. 2007). See Employers' Mut. Cas. Co. v. Bartile Roofs, Inc., 478 F. App'x 493, 498 (10th Cir. 2012)(unpublished)(holding that, "to the extent that [the defendant] attempts to circumvent our prior legal conclusion concerning what constitutes an 'accident' under the [relevant insurance] policies, the law of the case doctrine bars the attempt").

The Tenth Circuit has long held that there are

three grounds under the "law of the case" doctrine by which we might conclude an issue was implicitly resolved in a prior appeal, as follows: (1) resolution of the issue was a necessary step in resolving the earlier appeal; (2) resolution of the issue would abrogate the prior decision and so must have been considered in the prior appeal; and (3) the issue is so closely related to the earlier appeal its resolution involves no additional consideration and so might have been resolved but unstated.

Copart, Inc. v. Admin. Review Bd., 495 F.3d at 1201-02.

In New Mexico, under law of the case doctrine, "a decision by an appeals court on an issue of law made in one stage of a lawsuit becomes binding on subsequent trial courts as well as subsequent appeals courts during the course of that litigation." State ex rel. King v. UU Bar Ranch Ltd. P'ship, 2009-NMSC-010, ¶ 21, 205 P.3d 816, 820. See Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co., 1972-NMSC-018, ¶ 13, 494 P.2d 971, 973 ("The doctrine of law of the case has long been recognized in New Mexico, since before statehood . . . ."). Law of the case

doctrine "generally applies to questions of law, not 'purely fact' questions." State ex rel. King v. UU Bar Ranch Ltd. P'ship, 2009-NMSC-010, ¶ 21, 205 P.3d at 820 (quoting Gruschus v. C.R. Davis Constr. Co., 1967-NMSC-074, ¶ 18, 426 P.2d 589, 592). The Supreme Court of New Mexico has noted that law of the case doctrine is "discretionary and flexible," Trujillo v. City of Albuquerque, 1998-NMSC-031, ¶ 41, 965 P.2d 305, 316, and is not a doctrine "of inflexible law," Reese v. State, 1987-NMSC-110, ¶ 5, 745 P.2d 1153, 1155. The Supreme Court of New Mexico stated the majority understanding of the law of the case doctrine in New Mexico:

> [S]ince the doctrine of the law of the case is merely one of practice or court policy, and not of inflexible law, so that appellate courts are not absolutely bound thereby, but may exercise a certain degree of discretion in applying it, there are many holdings in which the courts have retreated from any inflexible rule requiring the doctrine to be applied regardless of error in the former decision, and it has been said that the doctrine should not be utilized to accomplish an obvious injustice, or applied where the former appellate decision was clearly, palpably, or manifestly erroneous or unjust.

Reese v. State, 1987-NMSC-110, ¶ 5, 745 P.2d at 1155 (quoting 5 Am. Jur. 2d Appeal and Error § 750 at 194 (1962)). The Supreme Court of New Mexico "may deviate from the law of the case doctrine . . . if to apply the doctrine would result in a manifest injustice." Reese v. State, 1987-NMSC-110, ¶ 6, 745 P.2d at 1155.

## NEW MEXICO LAW REGARDING NEGLIGENCE PER SE

To establish a negligence per se claim, a plaintiff must prove: (i) that there is a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly; (ii) that the defendant violated the statute; (iii) that the plaintiff must be in the class of persons which the statute seeks to protect; and (iv) that the harm or injury to the plaintiff must generally be that which the Legislature, through the statute, sought to prevent. See Rimbert v. Eli Lilly &

Co., 577 F. Supp. 2d 1174, 1204 (D.N.M. 2008)(Browning, J.)[22](citing Johnstone v. City of

Albuquerque, 2006-NMCA-119, ¶ 16, 145 P.3d 76, 82[23]).  To hold a defendant liable under a claim

of negligence per se, the plaintiff must show that the defendant violated a specific statute.

See Parker v. E. I. DuPont deNemours & Co., 1995-NMCA-086, ¶ 40, 909 P.2d 1, 12.   New

Mexico Uniform Civil Jury Instruction UJI 13-1501 provides:

> There [was a] [were] statute[s] in force in this state, at the time of the occurrence in
> question, which provided that:
>
> > (Quote or paraphrase the applicable part of the statute in question. If
> > more than one statute is in question, list each statute separately)
>
> If you find from the evidence that _____ (party) violated [this] [any one of
> these] statute[s], then _____'s conduct constitutes negligence as a matter of law,
> [unless you further find that such violation was excusable or justified].
>
> [To legally justify or excuse a violation of a statute, the violator must sustain the
> burden of showing that [s]he did that which might reasonably be expected of a
> person of ordinary prudence, acting under similar circumstances, who desired to
> comply with the law.]

---

[22]The Court entered this Opinion on August 22, 2008.  On October 9, 2008, the Honorable James O. Browning, United States District Judge for the District of New Mexico, recused himself, and the case was reassigned to the Honorable Judith C. Herrera, United States District Judge for the District of New Mexico.  On August 3, 2011, the Tenth Circuit reversed on other grounds.  See Rimbert v. Eli Lilly and Co., 647 F.3d 1247 (10th Cir. 2011).

[23]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico's statement in Johnstone v. City of Albuquerque, 2006-NMCA-119, ¶ 16, 145 P.3d at 82, of the elements required for a negligence per se claim under New Mexico law, based on the Supreme Court of New Mexico's decision in Archibeque v. Homrich, 1975-NMSC-066, 542 P.2d 820, in which the Supreme Court of New Mexico recited the same test for negligence per se in New Mexico.  1975-NMSC-066, ¶ 15, 542 P.2d at 825.

N.M.R.A. Civ. UJI 13-1501. This instruction appears in Chapter Fifteen, Statutes and Ordinances, and not in Chapter Sixteen, Tort Law -- Negligence. The "Directions for Use" for UJI 13-1501 notes that "UJI 13-1503 should be used in addition to this instruction when there is an issue of proximate cause." N.M.R.A., Civ. UJI 13-1501, Directions for Use. N.M.R.A., Civ. UJI 13-1503 provides:

> Negligence resulting from a violation of a[n] [statute] [or] [ordinance] is no different in effect from that resulting from other acts or omissions constituting negligence. In each case the negligence is of no consequence unless it was a cause of or contributed to, an injury found by you to have been suffered by the plaintiff.

N.M.R.A. Civ. UJI 13-1503.

## NEW MEXICO LAW REGARDING CIVIL CONSPIRACY

"A civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." Los Alamos Nat'l Bank v. Martinez Surveying Servs., LLC, 2006-NMCA-081, ¶ 21, 139 P.3d 201, 207[24] (internal quotations and citations omitted). A civil-conspiracy claim's purpose is to "impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members."

---

[24]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico's statement in Los Alamos National Bank v. Martinez Surveying Services, LLC, that "civil conspiracy requires a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." 2006-NMCA-081, ¶ 21, 139 P.3d at 207. The Court bases its prediction on the Supreme Court of New Mexico's decision in Armijo v. National Surety Corp., 1954-NMSC-024, 268 P.2d 339, in which the Supreme Court of New Mexico stated the definition of conspiracy in criminal or civil cases as "a combination between two or more persons to do a criminal or unlawful act or a lawful act by criminal or unlawful means." 1954-NMSC-024, ¶ 30, 268 P.2d at 346.

Seeds v. Lucero, 2005-NMCA-067, ¶ 12, 113 P.3d 859, 862[25] (internal quotations and citations omitted). In Seeds v. Lucero, the Court of Appeals of New Mexico listed a civil conspiracy claim's elements and compared a civil conspiracy to a criminal conspiracy:

> Civil conspiracy consists of showing [(i)] that a conspiracy between two or more individuals existed; [(ii)] that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and [(iii)] that the plaintiff was damaged as a result of such acts. Unlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators. Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense.

2005-NMCA-067, ¶ 18, 113 P.3d at 863-64 (internal quotations and citations omitted). A civil conspiracy alone is not actionable "unless a civil action in damages would lie against one of the conspirators, if the act was done by him alone . . . ." Armijo v. Nat'l Sur. Corp., 1954-NMSC-024, ¶ 30, 268 P.2d 339, 347.

With regard to corporate employees and employers, courts in other jurisdictions have held that the intra-corporate conspiracy doctrine establishes that "an agent is not liable for conspiring with the principal when the agent is acting in an official capacity on behalf of the principal." Royal Airline Linen v. Weinstein, No. YC049715, 2007 WL 178896, at *6 (Cal. Ct. App. Jan. 25,

---

[25]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico's statement in Seeds v. Lucero, that a civil-conspiracy claim's purpose is to "impute liability to make members of the conspiracy jointly and severally liable for the torts of any of its members." 2005-NMCA-067, ¶ 12, 113 P.3d at 862. The Court bases its prediction on the Supreme Court of New Mexico's decision in Armijo v. National Surety Corp., in which the Supreme Court of New Mexico stated that, for civil conspiracy, the "object of the civil action is to recover any damages resulting from carrying out the conspiracy." 1954-NMSC-024, ¶ 30, 268 P.2d at 346.

2007)(quoting <u>Berg & Berg Enter., LLC v. Sherwood Partners, Inc.</u>, 131 Cal. App. 4th 802, 817 (2005)).

> A corporate employee cannot conspire with his or her corporate employer; that would be tantamount to a person conspiring with himself. Thus when a corporate employee acts in his or her authorized capacity on behalf of his or her corporate employer, there can be no claim of conspiracy between the corporate employer and the corporate employee.

<u>Royal Airline Linen v. Weinstein</u>, 2007 WL 178896, at *6 (quoting <u>Janken v. GM Hughes Elec.</u>, 46 Cal. App. 4th 55, 78 (1996)). The intra-corporate conspiracy doctrine is a bar to liability, however, only when the agent acted solely in an official capacity; if the agent acted for his own benefit, there may be liability. <u>See</u> <u>Equal Emp't Opportunity Comm'n v. MTS Corp.</u>, 937 F. Supp. 1503, 1513 n.3 (D.N.M. 1996)(Hansen, J.)(citing Nevada state law and stating that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage."); <u>Zic v. Italian Gov't Travel Office</u>, 130 F. Supp. 2d 991, 997 (N.D. Ill. 2001)(Bucklo, J.)(stating that the intra-corporate conspiracy doctrine does not apply where an individual agent acts out of self-interest); <u>Nelson v. Fontenot</u>, 784 F. Supp. 1258, 1261 (E.D. Tex. 1992)(Schell, J.)(noting that, while a corporation cannot conspire with itself, a conspiracy may be established where individual defendants are named and those defendants act outside the scope of their employment for personal reasons (citing <u>Garza v. City of Omaha</u>, 814 F.2d 553, 556 (8th Cir. 1987))); <u>Royal Airline Linen v. Weinstein</u>, 2007 WL 178896, at *6 (citing <u>Everest Investors 8 v. Whitehall Real Estate Ltd. P'ship XI</u>, 100 Cal. App. 4th 1102, 1107 (2002)). The intra-corporate conspiracy doctrine also does not apply where the corporation conspires with a third party. <u>See</u>

Zic v. Italian Gov't Travel Office, 130 F. Supp. 2d at 997 (citing Mehl v. Navistar Int'l Corp., 670

F. Supp. 239, 241 (N.D. Ill. 1987)(Bua, J.)).

## NEW MEXICO LAW REGARDING INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The Supreme Court of New Mexico has adopted the Restatement (Second) of Torts'

approach for intentional infliction of emotional distress. See Baldonado v. El Paso Nat. Gas Co.,

2008-NMSC-005, ¶ 26, 176 P.3d 277, 283. The Restatement (Second) provides:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
> > (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
> >
> > (b) to any other person who is present at the time, if such distress results in bodily harm.

Baldonado v. El Paso Nat. Gas Co., 2008-NMSC-005, ¶ 26, 176 P.3d at 283 (quoting Restatement

(Second) of Torts § 46). The elements of intentional infliction of emotional distress are: "[(i)] the

conduct in question was extreme and outrageous; [(ii)] the conduct of the defendant was intentional

or in reckless disregard of the plaintiff; [(iii)] the plaintiffs mental distress was extreme and severe;

[and (iv)] there is a causal connection between the defendant's conduct and the claimant's mental

distress." Baldonado v. El Paso Nat. Gas Co., 2008-NMSC-005, ¶ 27, 176 P.3d at 283 (internal

quotations omitted)(quoting Trujillo v. N. Rio Arriba Elec. Co-op, Inc., 2002-NMSC-004, ¶ 25,

41 P.3d 333, 342). The Supreme Court of New Mexico interprets these elements as "merely

restat[ing] the first prong of the *Restatement* test." Baldonado v. El Paso Nat. Gas Co., 2008-NMSC-005, ¶ 27, 176 P.3d at 283. Most intentional infliction of emotional distress claims arise from a preexisting relationship between the plaintiff and the defendant -- such as employer/employee. See Baldonado v. El Paso Nat. Gas Co., 2008-NMSC-005, ¶ 27, 176 P.3d at 283.

"Extreme and outrageous conduct is described as conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Silverman v. Progressive Broad., Inc., 1998-NMCA-107, ¶ 32, 964 P.2d 61, 70[26] (internal quotations omitted). Severe emotional distress means "a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances." Silverman v. Progressive Broad., Inc., 1998-NMCA-107, ¶ 33, 964 P.2d at 71 (internal quotations omitted). "Improper treatment does not constitute severe emotional distress as contemplated under the tort." Silverman v. Progressive Broad., Inc., 1998-NMCA-107, ¶ 33, 964 P.2d at 71.

In Equal Employment Opportunity Commission v. University of Phoenix, Inc., 505 F. Supp. 2d 1045 (D.N.M. 2007)(Browning, J.), Loretta Grado, an employee working as a Program Specialist at the University of Phoenix, intervened in a lawsuit that the Equal Employment

---

[26]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico's definition of extreme and outrageous conduct provided in Silverman v. Progressive Broad., Inc., 1998-NMCA-107, ¶ 32, 964 P.2d at 70. The Court bases its prediction on the Supreme Court of New Mexico's statement of the same definition of extreme and outrageous conduct, in Newberry v. Allied Stores, Inc., 1989-NMSC-024, ¶ 28, 773 P.2d 1231, 1239.

Opportunity Commission ("EEOC") filed against the University of Phoenix, asserting claims for, among other things, intentional infliction of emotional distress. See 505 F. Supp. 2d at 1049-53. The University of Phoenix moved for summary judgment, asking the Court to grant judgment in its favor on all of her claims. See 505 F. Supp. 2d at 1049-53. The Court granted summary judgment in the University of Phoenix's favor on Grado's intentional infliction of emotional distress claim. See 505 F. Supp. 2d at 1062-63. The Court concluded that Grado had not presented evidence of extreme and severe emotional distress where she had alleged that the campus director's behavior towards her

> made her feel like vomiting, caused her to have between five and ten nightmares, caused her to lose sleep, led her to seek medical assistance, led her to take some sample medications her physician provided, and prevented her from caring for her children for a month, because she was too tired and emotionally distracted to do so.

505 F. Supp. 2d at 1062. The Court explained that Grado presented evidence that she had suffered emotional distress similar to that of which the plaintiff complained in Trujillo v. Northern Rio Arriba Electric Cooperative Inc., 2002-NMSC-004, 41 P.3d 333. See Equal Emp't Opportunity Comm'n v. Univ. of Phoenix, Inc., 505 F. Supp. 2d at 1063. The Court explained that, in Trujillo v. Northern Rio Arriba Electric Cooperative, Inc., the plaintiff presented evidence that he felt "lousy," was depressed, was prescribed Prozac, slept long hours, and displayed erratic eating habits. 505 F. Supp. 2d at 1062-63 (citing Trujillo v. N. Rio Arriba Elec. Coop., Inc., 41 2002-NMSC-004, ¶ 28, 41 P.3d at 333). The Court concluded:

> The New Mexico Supreme Court held that such evidence was insufficient to satisfy the extreme and severe emotional distress element of an intentional infliction of emotional distress claim. . . . Applying New Mexico precedent to this case, the Court finds that the evidence of distress Grado presents is similarly insufficient to

meet the tort claim's extreme and severe element. As such, the Court concludes that the University is entitled to summary judgment on Grado's intentional infliction of emotional distress claim.

Equal Emp't Opportunity Comm'n v. Univ. of Phoenix, Inc., 505 F. Supp. 2d at 1063.

## LAW REGARDING DIVERSITY JURISDICTION AND ERIE[27]

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1983)("Erie"), a federal district court sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007). Accord Mem. Hosp. v. Healthcare Realty Inc., 509 F.3d 1225, 1229 (10th Cir. 2007). The Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." Guidance Endodontics, LLC v. Dentsply Int'l., Inc., 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.). "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an Erie prediction should look first to the words of the state supreme court." Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).[28] If the Court finds only an opinion from the Court

---

[27]Although the Court in this case has federal question jurisdiction and supplemental jurisdiction over the claims, the Court includes this legal section, because it illustrates the Court's approach to determining what the Supreme Court of New Mexico would do if presented with an issue which it has not previously considered, based on the Court's interpretation of Court of Appeals of New Mexico cases.

[28]In performing its Erie-mandated duty to predict what a state supreme court would do if faced with a case, see Comm'r v. Estate of Bosch, 387 U.S. 456 (1987), a federal court may sometimes contradict the state supreme court's own precedent if the federal court concludes that

of Appeals of New Mexico, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." <u>Mosley v. Titus</u>, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.)(noting that where the only opinion on point is "from the Court of Appeals, . . . the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it.")(citing <u>Wade v. EMCASCO Ins.</u>, 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions

---

the state supreme court would, given the opportunity, overrule its earlier holding, <u>see</u> <u>Anderson Living Tr. v. WPX Energy Prod., LLC</u>, 27 F. Supp. 3d at 1247 n.30. Courts should, obviously, be reticent to formulate an <u>Erie</u> prediction that conflicts with state-court precedent; even if the prediction turns out to be correct, such predictions produce disparate results between cases filed in state and federal courts, as the old state supreme court precedent usually binds state trial courts. The factors to which a federal court should look before making an <u>Erie</u> prediction that a state supreme court will overrule its prior precedent vary depending upon the case, but some consistent ones include: (i) the age of the state supreme court decision from which the federal court is considering departing -- the younger the state case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the state courts -- especially the state supreme court -- have placed on the state decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the state decision articulates, especially if the state supreme court has explicitly called an older case's holding into question; (iv) changes in the composition of the state supreme court, especially if mostly dissenting justices from the earlier state decision remain on the court; and (v) the decision's patent illogic or its inapplicability to modern times. <u>See</u> <u>Peña v. Greffet</u>, 110 F. Supp. 3d at 1132 n.17. In short, a state supreme court case that a federal court <u>Erie</u> predicts will be overruled is likely to be very old, neglected by subsequent state-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

rendered by lower courts in the relevant state"))).[29]  The Court may also rely on decisions by the

---

[29]The Supreme Court of the United States has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

> The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State.  An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.  We have declared that principle in *West v. American Telephone and Telegraph Co.*, 311 U.S. 223 (1940), decided this day.  It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.

> . . .  We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.

> . . . .

> The question has practical aspects of great importance in the proper administration of justice in the federal courts.  It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.  In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

Fid. Union Tr. Co. v. Field, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted).  The Supreme Court has softened this position over the years; federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the

Tenth Circuit interpreting New Mexico law.  See Anderson Living Tr. v. WPX Energy Prod., LLC,

27 F. Supp. 3d at 1243 & n.30.[30]  Ultimately, "the Court's task is to predict what the state supreme

_____

highest court of the State has not spoken on the point."  Comm'r v. Estate of Bosch, 387 U.S. at 465 (citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)).  See 17A James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed. 1999)("Moore's")("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions." (emphasis and title case omitted)).).

[30]In determining the proper weight to accord Tenth Circuit precedent interpreting New Mexico law, the Court must balance the need for uniformity between federal court and state court interpretations of state law with the need for uniformity among federal judges.  If the Court adheres too rigidly to Tenth Circuit case law, ignoring changes undergone by a state's law in the ensuing years, then parties litigating state-law claims will be subject to a different body of substantive law, depending on whether they litigate in state court or federal court.  This result frustrates the purpose of Erie, which held that federal courts must apply state court interpretations of state law, rather than their own, in part so that parties achieve a consistent result regardless of the forum.  This consideration pulls the Court toward according Tenth Circuit precedent less weight, and according state court decisions issued in the ensuing years more weight.  On the other hand, when the state law is unclear, it is desirable for there to at least be uniformity among federal judges as to its proper interpretation.  Otherwise, different federal judges within the same circuit or even the same district, as district courts' decisions are not binding, even upon themselves would be free to adopt differing interpretations of a state's law.  This consideration pulls the Court towards a stronger respect for vertical stare decisis, because a Tenth Circuit decision on point regardless whether it accurately reflects state law at least provides consistency at the federal level, so long federal district judges are required to follow it.

The Court must decide how to weigh Tenth Circuit case law against more-recent state court decisions, choosing a point on the spectrum between the two extremes: rigidly adhering to Tenth Circuit precedent unless there is intervening case law directly on point from the state's highest court, on one end; and independently interpreting the state law, regarding the Tenth Circuit precedent as no more than persuasive authority, on the other.  In striking this balance, the Court notes that it is generally more concerned about systemic inconsistency between the federal courts and the state courts than it is about inconsistency among federal judges.  Judges, even those within a jurisdiction with ostensibly identical governing law, sometimes interpret and apply the law differently from one another; this inconsistency is part and parcel of a common-law judicial system.  More importantly, litigants seeking to use forum selection to gain a substantive legal advantage cannot easily manipulate such inconsistency: cases are assigned randomly to district judges in this and many federal districts; and, regardless, litigants cannot know for certain how a

given judge will interpret the state law, even if they could determine the identity of the judge pre-filing or pre-removal. All litigants know in advance is that whomever federal district judge they are assigned will look to the entirety of the state's common law in making his or her determination -- the same as a state judge would. Systemic inconsistency between the federal courts and state courts, on the other hand, not only threatens the principles of federalism, but litigants may more easily manipulate the inconsistency. When the Tenth Circuit issues an opinion interpreting state law, and the state courts subsequently shift away from that interpretation, litigants -- if the district courts strictly adhere to the Tenth Circuit opinion -- have a definite substantive advantage in choosing the federal forum over the state forum, or vice versa.

The Court further notes that district courts may be in a better position than the Tenth Circuit to be responsive to changes in state law. Tenth Circuit decisions interpreting a particular state's law on a specific issue are further apart in time than the collective district courts' are. More importantly, the Tenth Circuit does not typically address such issues with the frequency that the state's courts themselves do. As such, Tenth Circuit precedent can lag behind developments in state law developments that the district courts may be nimble enough to perceive and adopt. Additionally, much of the benefit of having a consistent Tenth Circuit-wide interpretation of a particular state's law is wasted. Other than Oklahoma, every state encompassed by the Tenth Circuit contains only one federal judicial district, and there is relatively little need for federal judges in Wyoming and Kansas to have a uniform body of New Mexico law to which to look. Last, the Court notes, respectfully, that district courts may be in a better position than the Tenth Circuit to develop expertise on the state law of the state in which they sit. Every federal judicial district in the nation, except the District of Wyoming, covers at most one state. It is perhaps a more workable design for each district court to keep track of legal developments in the state law of its own state(s) than it is for the Tenth Circuit to monitor separate legal developments in eight states.

Having outlined the relevant considerations, the Court thinks the proper stance on vertical stare decisis in the context of federal court interpretations of state law is as follows: the Tenth Circuit's cases are binding as to their precise holding what the state law was on the day the opinion was published -- but lack the positive precedential force that its cases interpreting a federal statute or the Constitution of the United States of America possess. A district court considering a state law issue after the publication of a Tenth Circuit opinion on point may not come to a contrary conclusion based <u>only</u> on state court cases available to and considered by the Tenth Circuit, but it may come to such a conclusion based on intervening state court cases.

When interpreting state law, the Tenth Circuit does not and cannot issue a case holding that *x* is the law in New Mexico; it holds that the <u>proper interpretation</u> of New Mexico law, at the time the opinion is released, is *x*. Its holdings are descriptive, not prescriptive -- interpretive, not normative. Because federal judicial opinions lack independent substantive force on state law issues, but possess such force regarding federal law issues, the Court thinks the following is not an unfair summary of the judicial interpretive process: (i) when interpreting federal law, the federal

appellate courts consider the existing body of law, and then issue a holding that both reflects and influences the body of law; that holding subsequently becomes a part of the body of law; but (ii) when interpreting state law, the federal appellate courts consider the existing body of law, and then issue a holding that only reflects the body of law; that holding does not subsequently become a part of the body of law. The federal district courts are bound to conclude that the Tenth Circuit's reflection of the then-existing body of law was accurate. The question is whether they should build a doctrine atop the case and use the existence of the Tenth Circuit's case to avoid any responsibility to independently consider the whole body of state law that exists when the time comes that diversity litigants raise the issue in their courtrooms. Giving such effect to the Tenth Circuit's interpretations of state law is at tension with Erie, giving independent substantive effect to federal judicial decisions -- i.e., applying federal law -- in a case brought in diversity.

The purpose of Erie is well-known and simple, and the Court should not complicate it beyond recognition: it is that the same substantive law governs litigants' cases regardless whether they are brought in a federal or state forum. For simplicity's sake, most courts have settled on the formulation that "the federal court must attempt to predict how the states' highest court would rule if confronted with the issue." Moore's § 124.22[3] (citing Comm'r v. Estate of Bosch, 387 U.S. at 465 ("[A]n intermediate appellate state court [decision] is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.")(citation and internal quotation marks omitted). This may not be the most precise formulation if the goal is to ensure identical outcomes in state and federal court -- the Honorable Milton I. Shadur, United States District Judge, for the Northern District of Illinois looks to state procedural rules to determine in which state appellate circuit the suit would have been filed were it not in federal court, and then applies the state law as that circuit court interprets it, see Abbott Laboratories v. Granite State Ins., 573 F. Supp. 193, 196-200 (N.D. Ill. 1983)(noting that the approach of predicting the state supreme court's holdings will often lead to litigants obtaining a different result in federal court than they would in state court, where only the law of the circuit in which they filed -- and certainly not nonexistent, speculative state supreme court law -- governs) -- but it is a workable solution that has achieved consensus. See Allstate Ins. v. Menards, Inc., 285 F.3d 630, 637 (7th Cir. 2002)("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). This formulation, built out of ease-of-use, does not relieve courts of their Supreme Court-mandated obligation to consider state appellate and trial court decisions. To the contrary, even non-judicial writings by influential authors, statements by state supreme court justices, the closeness of the vote on a prior case addressing the issue, and personnel changes on the court -- considerations that would never inform a federal court's analysis of federal law --may validly come into play. The question is whether the district courts must abdicate, across-the-board, the "would decide" aspect of the Erie analysis to their parent appellate courts when the Court of Appeals has declared an interpretation

_____

of state law.

The <u>Erie</u> doctrine results in federal cases that interpret state law withering with time.  While cases interpreting federal law become more powerful over time -- forming the groundwork for doctrines, growing upward from one application (Congress may create a national bank) to many (Congress may set quotas on wheat-growing for personal consumption), expanding outward from the general (states must grant criminal jury trials) to the specific (the jury need not be twelve people, nor must it be unanimous) -- federal cases interpreting state law often become stale.  New state court cases -- even when not directly rebuking the federal court's statement of law --alter the common-law legal landscape with their dicta, their insinuations, and their tone.  The Supreme Court, which picks its cases sparingly and for maximum effect, almost never grants certiorari to resolve issues of state law.

The Court's views on <u>Erie</u>, of course, mean little if the Tenth Circuit does not agree.  In <u>Wankier v. Crown Equipment Corp.</u>, the Tenth Circuit said that,

> [w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do.  In performing this ventriloquial function, however, the federal court is bound by ordinary principles of *stare decisis*.  Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue.

<u>Wankier v. Crown Equip. Corp.</u>, 353 F.3d 862, 866 (10th Cir. 2003)(McConnell, J.).  From this passage, it seems clear the Tenth Circuit only permits a district court to deviate from its view of state law on the basis of a subsequent case "of the state's highest court."  <u>See</u> <u>The American Heritage Dictionary of the English Language</u> 1402 (William Morris ed., New College ed. 1976)(defining "unless" as "[e]xcept on the condition that; except under the circumstances that").  A more aggressive reading of the passage -- namely the requirement that the intervening case "resolv[e] the issue" -- might additionally compel the determination that any intervening case law must definitively and directly contradict the Tenth Circuit interpretation in order to be considered "intervening."

It is difficult to know whether Judge McConnell's limitation of "intervening decision" to cases from the highest state court was an oversight or intentional.  Most of the Tenth Circuit's previous formulations of this rule have defined intervening decisions inclusively as all subsequent decisions of "that state's courts," a term which seems to include trial and intermediate appellate courts.  Even <u>Koch v. Koch Industries, Inc.</u>, 203 F.3d 1202, 1231 (10th Cir. 2000), the primary authority upon which <u>Wankier v. Crown Equipment Corp.</u> relies, uses the more inclusive definition.  In fact, <u>Wankier v. Crown Equipment Corp.</u> quotes its relevant passage:

court would do." <u>Wade v. EMCASCO Ins. Co.</u>, 483 F.3d at 666. <u>Accord</u> <u>Mosley v. Titus</u>, 762

F. Supp. 2d at 1332 (citation omitted); <u>Rimbert v. Eli Lilly & Co.</u>, 577 F. Supp. 2d at 1188-89

(quoting <u>Wade v. EMCASCO Ins.</u>, 483 F.3d at 665-66).

## LAW REGARDING FEDERAL-QUESTION JURISDICTION

A federal district court has "original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal-question

jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly

---

> In the absence of intervening Utah authority indicating that a plaintiff is not required to prove a safer, feasible alternative design, we are bound to follow the rule of *Allen* [*v. Minnstar, Inc.*, 8 F.3d 1470 (10th Cir. 1993), a Tenth Circuit case interpreting an issue of Utah law], as was the district court. "Following the doctrine of stare decisis, one panel of this court must follow a prior panel's interpretation of state law, absent a supervening declaration to the contrary by that state's courts or an intervening change in the state's law." <u>Koch v. Koch Indus., Inc.</u>, 203 F.3d at 1231.

<u>Wankier v. Crown Equip. Corp.</u>, 353 F.3d at 867.

Whether the decision to limit the intervening authority a district court can consider was intentional or not, the Tenth Circuit has picked it up and run with it. In <u>Kokins v. Teleflex, Inc.</u>, the Tenth Circuit, quoting <u>Wankier v. Crown Equipment Corp.</u>, refused to consider an opinion from the Court of Appeals of Colorado holding directly the opposite of an earlier Tenth Circuit interpretation of Colorado law. <u>See</u> <u>Kokins v. Teleflex, Inc.</u>, 621 F.3d 1290, 1297 (10th Cir. 2010)(Holmes, J.)("[T]he Colorado Court of Appeals decided *Biosera*[*, Inc. v. Forma Scientific, Inc.*, 941 P.2d 284 (Colo. Ct. App. 1998)], so it is not an 'intervening decision of the state's *highest court*.'")(emphasis in original)(quoting <u>Wankier v. Crown Equip. Corp.</u>, 353 F.3d at 866).

The Tenth Circuit has set forth a stringent restriction on its district courts' ability to independently administer the <u>Erie</u> doctrine. More importantly, the Tenth Circuit's view may be at tension with the above-quoted Supreme Court precedent, as well as its own prior case law. <u>Moore's</u> lists the Tenth Circuit as having been, at one time, a "court[ that] hold[s] that a prior federal appellate decision [interpreting state law] is persuasive." <u>Moore's</u> § 124.22[4] (citing <u>State Farm Mut. Auto. Ins. Co. v. Travelers Indem. Co.</u>, 433 F.2d 311, 312 (10th Cir. 1970)). Still, the Court is bound to abide by the Tenth Circuit's interpretation of <u>Erie</u>.

pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987)(citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-13 (1936)). As "the master of the claim," the plaintiff may choose to sue in state court rather than in federal court "by exclusive reliance on state law." Caterpillar, Inc. v. Williams, 482 U.S. at 392.

The defendant may not try to sneak a federal question through the back door by raising a federal defense, for "it is now settled law that a case may not be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Caterpillar, Inc. v. Williams, 482 U.S. at 393 (citing Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. 1, 12 (1983)). See Nicodemus v. Union Pac. Corp., 318 F.3d 1231, 1236 (10th Cir. 2003)("It is well settled that '[a] defense that raises a federal question is inadequate to confer federal jurisdiction.'" (quoting Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986))). While a plaintiff is free to plead a federal question in his complaint, "a defendant cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." Caterpillar, Inc. v. Williams, 482 U.S. at 399. Even the plaintiff can go only so far in attempting to invoke federal-question jurisdiction, because "[a]ny statements in the complaint which go beyond a statement of the plaintiff's claim and anticipate or reply to a probable defense are to be disregarded" in deciding whether federal-question jurisdiction exists. Mescalero Apache Tribe v. Martinez, 519 F.2d 479, 481 (10th Cir. 1975).

In addition to the requirement that the federal question appear on the complaint's face, a "plaintiff's cause of action must either be: (i) created by federal law; or (ii) if it is a state-created cause of action, 'its resolution must necessarily turn on a substantial question of federal law.'" Nicodemus v. Union Pac. Corp., 318 F.3d at 1235 (quoting Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. at 808). As for the second method, beyond the requirement of a "substantial" federal-law question at the case's heart, the federal question must also be "actually disputed," and its resolution must be necessary to the case's resolution. Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). Finally, the exercise of federal-question jurisdiction must also be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. at 313. In particular, the court must determine whether recognition of federal-question jurisdiction will federalize a "garden variety" state law claim that will overwhelm the judiciary with cases traditionally heard in state courts. Grable & Sons Metal Prods. v. Darue Eng'g & Mfg., 545 U.S. at 318-19 (explaining that "there must always be an assessment of any disruptive portent in exercising federal jurisdiction" in accepting "garden variety" state law claims). See also David L. Hanselman, Supreme Court Federal Removal Jurisdiction, for the Defense at 25, 65 (Sept. 2005)("The most important consideration is whether removal would federalize a garden-variety tort, contract, or fraud claim, or whether there is some uniquely federal aspect of the case that, if removed, could be adjudicated in federal court without subjecting the federal courts to a flood of original filings or removals.").

The Supreme Court has underscored that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. at 813. Indeed, the Supreme Court has "forcefully reiterated" that district courts must exercise "prudence and restraint" when determining whether a state cause of action presents a federal question, because "determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system," Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. at 810. See Morris v. City of Hobart, 39 F.3d 1105, 1111 (10th Cir. 1994).

Under the well-pleaded complaint rule, the federal question giving rise to jurisdiction must appear on the complaint's face. See Karnes v. Boeing Co., 335 F.3d 1189, 1192 (10th Cir. 2003). This rule "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). See Schmeling v. NORDAM, 97 F.3d 1336, 1339 (10th Cir. 1996).

Where a federal question appears on the well-pleaded complaint's face, federal jurisdiction is not automatic, and requires not only a contested federal issue, but a substantial one, indicating a serious federal interest in seeking the advantages thought to be inherent in a federal forum. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 313. The federal issue will qualify for a federal forum if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 313-14.

In Bar J Sand & Gravel, Inc. v. Western Mobil New Mexico, Inc., No. CIV 05-0800

JB\WPL, 2005 WL 3663689 (D.N.M. Sept. 29, 2005)(Browning, J.), the plaintiff's complaint

stated causes of action for breach of contract, breach of the covenant of good faith and fair dealing,

and unfair trade practices. See 2005 WL 3663689, at *7. The defendants argued that a federal

question was apparent on the complaint's face

> because, as a necessary first step in proving a breach of contract, Bar J must show
> that a valid contract actually exists between Bar J and the Defendants. To establish
> that the parties entered into a valid contract, Bar J must show that all conditions
> precedent were met, including Bar J's possession of a valid [Sand and Gravel]
> Permit [that the Pueblo of San Felipe issued to Bar J Trucking, Inc.]. In turn,
> whether Bar J acquired a valid Permit requires reference to the federal regulations
> governing the issuance of those permits. Reaching the last link in their chain of
> argument, the Defendants assert that the federal question is whether the creation of
> the Permit complied with those regulations.

2005 WL 3663689, at *8 (internal citations omitted). The Court determined that the defendants'

argument confused "a condition precedent to contract performance with a condition precedent to

contract formation," and that the argument was raising an issue of federal law as a potential

defense, rather than as an element of the plaintiff's case; accordingly, the issue did not appear on

the face of the plaintiff's complaint. 2005 WL 3663689, at *8-9 (emphasis in original). The

defendants also argued that a decision whether the plaintiffs validly assigned the permit to the

defendants would raise an issue of federal law, because, "[u]nder federal regulations, an

assignment of the Permit would be invalid without approval by the Secretary of the Interior"; the

Court rejected this argument, because the plaintiff did not request "vindication of any assignment"

in the complaint, and the Court determined the plaintiff was justified in that choice. 2005 WL

3663689, at *9.  The Court further determined that the Supreme Court's decision in <u>Grable & Sons</u>

<u>Metal Products, Inc. v. Darue Engineering & Manufacturing</u> did not change the result, because,

> [u]nlike <u>Grable</u>, Bar J does not premise its breach of contract claim on any point of
> federal law.  Bar J does not assert that it has a right to recover from the Defendants
> because of the existence of some federal law.  Bar J argues neither that the
> Defendants violated a federal statute nor that the [contract's] validity requires the
> interpretation or application of any provision of the United States Code.

<u>Bar J Sand & Gravel, Inc. v. W. Mobil N.M. Inc.</u>, 2005 WL 3663689, at *12 (internal citations

omitted).  The Court concluded that, because the plaintiff grounded its right to relief in "basic

contract law," without "referencing any federal law," the well-pleaded complaint did not raise an

issue of federal law and, thus, the Court did not have federal-question jurisdiction.  2005 WL

3663689, at *13.

In <u>Olsen v. Quality Continuum Hospice, Inc.</u>, 380 F. Supp. 2d 1225 (D.N.M.

2004)(Browning, J.), the Court determined that the plaintiff's claims did not present any federal

questions; although the plaintiff asserted that the defendants violated the "United States Social

Security Act of 1968 [and] . . . the Medicare program,"[31] the Court concluded that those provisions

do not create a private right of action and, thus, did not create the plaintiff's causes of action.  380

F. Supp. 2d at 1229.  The Court also determined that, because the plaintiff's causes of action were

essentially medical malpractice claims and arose under New Mexico common law or New Mexico

statutes, they would not depend on resolution of a question of federal law.  <u>See</u> 380 F. Supp. 2d at

1230-31.

---

[31]Social Security Act of 1965, Pub. L. 89-97, 79 Stat. 286, and Medicare Prescription Drug,
Improvement, and Modernization Act of 2003, Pub. L. 108-173, 117 Stat. 2066.

To reiterate, a plaintiff may not, however, circumvent federal jurisdiction by omitting federal issues that are essential to his or her claim. See Schmeling v. NORDAM, 97 F.3d at 1345 n.2. "A case arises under federal law if its 'well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Morris v. City of Hobart, 39 F.3d at 1111 (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Tr., 463 U.S. at 27-28). Thus, even though a plaintiff asserts claims only under state law, federal-question jurisdiction may be appropriate if the state-law claims implicate significant federal issues. See Nicodemus v. Union Pac. Corp., 440 F.3d at 1232. As well, jurisdiction requires more than just a federal question: "It is by now axiomatic that 'federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum.'" Nicodemus v. Union Pac. Corp., 440 F.3d at 1232 (quoting Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. at 313). See Lucero v. Ortiz, 163 F. Supp. 3d 920, 922 (D.N.M. 2015)(Browning, J.)(remanding case to state court where federal question jurisdiction did not exist, because grounds for removal were based on a cross claim); Williams v. Bd. of Regents of Univ. of N.M., 990 F. Supp. 2d 1121, 1145-47 (D.N.M. 2014)(Browning, J.)(concluding that a plaintiff's state law claims formed the same case or controversy as a federal claim, warranting jurisdiction over the federal claim and supplemental jurisdiction over the state clams); Shay v. RWC Consulting Group, No. CIV 13–0140 JB\ACT, 2014 WL 3421068, at *1 (D.N.M. June 30, 2014)(Browning, J.)(dismissing federal-question claims, and remanding state claims that were all which remained).

# LAW REGARDING SUPPLEMENTAL JURISDICTION

It is a fundamental precept of American law that the federal courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). Federal courts "possess only that power authorized by [the] Constitution and statute." Kokkonen v. Guardian Life Ins. of Am., 511 U.S. 375, 377 (1994). Among the powers that Congress has bestowed upon the courts is the power to hear controversies arising under federal law -- federal-question jurisdiction -- and controversies arising between citizens of different states -- diversity jurisdiction. See 28 U.S.C. §§ 1331-32.

## 1. Congressional Authority.

Although a statutory basis is necessary for federal courts to exercise jurisdiction over a controversy, "it is well established -- in certain classes of cases -- that, once a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. at 552. The Supreme Court has long subscribed to the concept of supplemental jurisdiction recognized in three common-law doctrines -- pendent,[32] ancillary,[33] and

---

[32]Black's Law Dictionary defines "pendent jurisdiction" as: "A court's jurisdiction to hear and determine a claim over which it would not otherwise have jurisdiction, because the claim arises from the same transaction or occurrence as another claim that is properly before the court." Jurisdiction, Black's Law Dictionary (10th ed. 2014).

[33]Black's Law Dictionary defines "ancillary jurisdiction" as: "court's jurisdiction to adjudicate claims and proceedings related to a claim that is properly before the court." Jurisdiction, Black's Law Dictionary, supra.

pendent-party[34] jurisdictions -- the former two of which survive today. The term "supplemental jurisdiction" is now used to refer collectively to the doctrines of ancillary jurisdiction and pendent jurisdiction. 28 U.S.C. § 1367, statutorily codifying Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365 (1978)(outlining the doctrine of ancillary jurisdiction), and United Mine Workers of Am. v. Gibbs, 383 U.S. 715 (1966)(outlining the doctrine of pendent jurisdiction), and invalidating Finley v. United States, 490 U.S. 545 (1989)(outlining the now-defunct doctrine of pendent-party jurisdiction). Federal courts may exercise pendent jurisdiction over state-law claims when "state and federal claims . . . derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. at 725. Supplemental jurisdiction gives federal courts the flexibility to hear a cause of action after the introduction of third parties whose insertion into the litigation lacks support of any independent grounds for federal jurisdiction, when those parties share a common interest in the outcome of the litigation and are logical participants in it. See Owen Equip. & Erection Co. v. Kroger, 437 U.S. at 375 n.18.

In 1988, the Honorable William H. Rehnquist, then-Chief Justice of the Supreme Court of the United States, created the Federal Courts Study Committee to analyze the federal court system and to recommend reforms. See James v. Chavez, 2011 WL 6013547, at *5 (D.N.M. 2011)(Browning, J.)(citing 16 James Wm. Moore et al., Moore's Federal Practice § 106.04[5]). In

---

[34]Black's Law Dictionary defines "pendent-party jurisdiction" as: "A court's jurisdiction to adjudicate a claim against a party who is not otherwise subject to the court's jurisdiction, because the claim by or against that party arises from the same transaction or occurrence as another claim that is properly before the court." Jurisdiction, Black's Law Dictionary, supra.

response to the Committee's findings regarding "pendent" and "ancillary" jurisdiction, Congress codified the application of the two doctrines when it passed the Judicial Improvements Act of 1990[35]:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  In enacting 28 U.S.C. § 1367, Congress conferred upon federal district courts "supplemental forms of jurisdiction . . . [that] enable them to take full advantage of the rules on claim and party joinder to deal economically -- in single rather than multiple litigation -- with matters arising from the same transaction or occurrence."  Report of the Federal Courts Study Committee, Part II.2.B.2.b. (April 2, 1990), <u>reprinted in</u> 22 Conn. L. Rev. 733, 787 (1990).

2.      **District Court Discretion.**

The Tenth Circuit has followed the Supreme Court's lead in classifying supplemental jurisdiction, not as a litigant's right, but as a matter of judicial discretion.  <u>See</u> <u>Estate of Harshman v. Jackson Hole Mountain Resort Corp.</u>, 379 F.3d 1161, 1165 (10th Cir. 2004)(citing <u>City of Chi. v. Int'l Coll. of Surgeons</u>, 522 U.S. 156, 173 (1997)).  In circumstances where the supplemental jurisdiction statute may support supplemental jurisdiction, the district court retains discretion to decline to exercise that jurisdiction.  The traditional analysis, based on the Supreme Court's

---

[35]The Judicial Improvements Act of 1990 is codified at: 5 U.S.C. § 8440c; 17 U.S.C. §§ 106A, 120; 28 U.S.C. §§ 178, 471-82, 1367, 1658; 47 U.S.C. § 303c.

opinion in United Mine Workers v. Gibbs, compelled courts to consider "judicial economy, convenience and fairness to litigants" when deciding whether to exercise supplemental jurisdiction. 383 U.S. at 726. Similarly, Congress' supplemental jurisdiction statute enumerates four factors that the court should consider:

I.      the claim raises a novel or complex issue of State law,

II.     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

III.    the district court has dismissed all claims over which it has original jurisdiction, or

IV.     in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In applying these factors, district courts should seek to exercise supplemental jurisdiction in an effort to "vindicate values of economy, convenience, fairness, and comity." Estate of Harshman v. Jackson Hole Mountain Resort Corp., 379 F.3d at 1164.

Numerous courts have acknowledged that 28 U.S.C. § 1367(c) necessarily changed the district courts' supplemental jurisdiction discretion analysis and that, unless one of the conditions of 28 U.S.C. § 1367(c) exists, courts are not free to decline jurisdiction. See Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 447 (2d Cir. 1998)("[S]ection 1367 has indeed altered *Gibbs*' discretionary analysis."); McLaurin v. Prater, 30 F.3d 982, 985 (8th Cir. 1994)("The statute plainly allows the district court to reject jurisdiction over supplemental claims only in the four instances described therein."); Exec. Software N. Am. v. U.S. Dist. Court, 24 F.3d 1545, 1557 (9th Cir. 1994)("By codifying preexisting applications of *Gibbs* in subsections (c)(1)-

(3), however, it is clear that Congress intended the exercise of discretion to be triggered by the court's identification of a factual predicate that corresponds to one of the section 1367(c) categories."); Palmer v. Hosp. Auth., 22 F.3d 1559, 1569 (11th Cir. 1994) ("[S]upplemental jurisdiction must be exercised in the absence of any of the four factors of section 1367(c)."); Bonadeo v. Lujan, No. CIV 08-0812 JB/ACT, 2009 WL 1324119, at *9 (D.N.M. April 30, 2009)(Browning, J.)("28 U.S.C. § 1367(c) changed the district courts' supplemental jurisdiction discretion analysis to prohibit courts from declining jurisdiction unless one of the conditions of 28 U.S.C. § 1367(c) exists."). Other district courts in the Tenth Circuit besides this Court have reached the same conclusion. See Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. 1082, 1084 (D. Kan. 1995)(Crow, J.)("[A]ny exercise of discretion declining jurisdiction over pendent claims or parties cannot occur until 'triggered' by the existence of one of the four conditions enumerated."). See also S.R. v. Hilldale Indep. Sch. Dist. No. I-29 of Muskogee Cty., 2008 WL 2185420, at *5 (E.D. Okla. 2008)(White, J.)(citing Gudenkauf v. Stauffer Commc'ns, Inc., 896 F. Supp. at 1084).

The Tenth Circuit has held that district courts should generally decline jurisdiction over state claims when federal claims no longer remain: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." Koch v. City of Del City, 660 F.3d at 1228, 1248 (10th Cir. 2011)(quoting Smith v. City of Enid ex rel. Enid City Comm'n, 149 F.3d 1151, 1156 (10th Cir. 1998)). The Supreme Court has also recognized:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers of Amer. v. Gibbs, 383 U.S. at 726. The Court has previously stated that a district court should usually decline to exercise supplemental jurisdiction when one of the 28 U.S.C. § 1367(c) factors applies. See Armijo v. New Mexico, No. CIV 08-0335 JB/ACT, 2009 WL 3672828, at *4 (D.N.M. Sept. 30, 2009)(Browning, J.). The Tenth Circuit has recognized that a district court does not "abuse discretion" when it declines to exercise supplemental jurisdiction over a claim "under 28 U.S.C. § 1367(c)(3) . . . where it 'has dismissed all claims over which it has original jurisdiction.'" Muller v. Culbertson, 408 F. App'x 194, 197 (10th Cir. 2011)(unpublished)(quoting 28 U.S.C. § 1367(c)(3)). See Williams v. Bd. of Regents of Univ. of N.M., 990 F. Supp. 2d at 1145-47 (concluding that a plaintiff's state law claims formed the same case or controversy as a federal claim, warranting jurisdiction over the federal claim and supplemental jurisdiction over the state clams); Shay v. RWC Consulting Group, 2014 WL 3421068, at *1 (dismissing federal-question claims, and remanding state claims that were all which remained).

## ANALYSIS

The Court concludes that: (i) the Court will take judicial notice of the documents attached to the Motion and listed in the Request, for the reasons discussed supra n.2; (ii) under New Mexico and federal law, Mayer is not collaterally estopped from relitigating the easement's existence, and (iii) New Mexico law regarding collateral estoppel applies. Additionally, the Court concludes that

Mayer's Complaint states a claim against the Jones and Long Defendants for negligence per se and civil conspiracy, because a valid, final judgment on the merits to which the Court may give preclusive effect has not determined whether they trespassed on her land, but the Complaint does not state a claim against the Jones and Long Defendants for intentional infliction of emotional distress, because the Complaint does not sufficiently plead all elements of intentional infliction of emotional distress, as required under New Mexico law. Accordingly, the Court grants the Request and grants the Motion to Dismiss in part and denies the Motion to Dismiss in part.

## I.    MAYER IS NOT COLLATERALLY ESTOPPED FROM LITIGATING THE ISSUE OF TRESPASS.

The Jones and Long Defendants argue that Mayer is collaterally estopped from litigating the issue of trespass under New Mexico and federal law, because she had a full and fair opportunity to litigate the issue in the 2009 State Court Proceeding. See Motion at 10-13. The Court has federal original jurisdiction over the case, because Mayer's Complaint asserts federal constitutional claims under 42 U.S.C. § 1983. See Complaint ¶ 12, at 2. See also Caterpillar, Inc. v. Williams, 482 U.S. at 392 (citing Gully v. First Nat'l Bank, 299 U.S. at 112-13 (Federal-question jurisdiction exists when "a federal question is presented on the face of the plaintiff's properly pleaded complaint."). Although the Court's jurisdiction is based on federal questions, New Mexico law governs the inquiry, because Mayer asserts the preclusive effect in federal court of a state court judgment. See, e.g., Reed v. McKune, 298 F.3d at 949 (applying Kansas law to determine whether collateral estoppel precludes an issue of fact or law in a federal court action containing § 1983 claims). The Supreme Court has stated:

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "[I]thas long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481-82 . . . (1982); *see also Allen v. McCurry*, 449 U.S. 90, 96 . . . (1980). Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts. *See Kremer*, *supra*, 456 U.S. at 478, 481-83 . . . . Cf. *Riley v. New York Trust Co.*, 315 U.S. 343, 349. . . (1942)(discussing preclusive effect of state judgment in proceedings in another State).

Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. at 380. Furthermore, the Tenth Circuit has stated that, in a § 1983 action, "a federal court is required to give preclusive effect to a state court judgment to the same extent that a court in that state would." Gutierrez v. Cobos, No. CIV 12-980 JH\GBW, 2014 WL 12684475, at *20 (D.N.M. Sept. 23, 2014)(Herrera, J.)(citing Hubbert v. City of Moore, 923 F.2d 769, 772 (10th Cir. 1991)). This rule is particularly the case, when the Defendants seek to have a state court judgment be preclusive only on the state law claims, as the Jones and Long Defendants, who are Defendants only on state claims. See 18B Wright & Miller, Federal Practice & Procedure § 4470 (2d ed. 2018)(discussing the application of state issue-preclusion law and stating that "[i]ssues of state law application may arise in subsequent litigation of claims in exclusive federal jurisdiction because federal law does not apply to the question, which is controlled directly by state law . . . . Issue preclusion is most secure, regardless of the basis for exclusive federal jurisdiction, when the federal court itself would apply state law to the issue.").

Under New Mexico law,

> [b]efore collateral estoppel is applied to preclude litigation of an issue, however, the moving party must demonstrate that (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation. *Silva v. State* . . . 745 P.2d 380, 382-84 (1987). If the movant introduces sufficient evidence to meet all elements of this test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation. *Id.* . . . at 382. This issue is within the competence of the trial court, and we review the trial court's determination for an abuse of discretion. *See id.* . . . 384.

Shovelin, 1993-NMSC-015, ¶ 10, 850 P.2d at 1000. The Supreme Court of New Mexico stated that whether a party had a full and fair opportunity to litigate an issue depends on factors "including, but not limited to, the incentive for vigorous prosecution or defense of the prior litigation; procedural differences between the prior and current litigation, including the presence or absence of a jury; and the possibility of inconsistent verdicts." Shovelin, 1993-NMSC-015, ¶ 15, 850 P.2d at 1002. To "give rise to estoppel, the finding of ultimate facts in the prior action must have been final." Silva v. State, 1987-NMSC-107, ¶ 7, 745 P.2d at 382. See id., 1987-NMSC-107, ¶ 25, 745 P.2d at 387 ("Moreover, the doctrine of collateral estoppel can only be invoked where a final judgment has been entered.").

Even if federal collateral estoppel applies, the Supreme Court of New Mexico stated that there is "little difference" between the New Mexico and the Tenth Circuit elements of collateral estoppel. Deflon v. Sawyers, 2006-NMSC-025, ¶ 13, 137 P.3d at 583. In the Tenth Circuit, collateral estoppel requires that four elements be met:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the

party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

United States v. Rogers, 960 F.2d 1501, 1508 (10th Cir. 1992). The Court concludes that, even if federal collateral estoppel applies, Mayer is not collaterally estopped from relitigating the issue of the easement's existence, because of the lack of a valid final judgment on the merits in the state court proceeding, to which the Court may give preclusive effect.

The first element under Shovelin is that the party to be estopped was a party to the prior proceeding. See Gutierrez v. Cobos, 2014 WL 12684475, at *21. Mayer was a party. The Jones and Long Defendants were intervenors, but even if they were not parties, the first element would still be met, because New Mexico long ago dispensed with the "same parties" requirement and held that, when a defendant "seeks to preclude a plaintiff from relitigating an issue the plaintiff has previously litigated and lost," the doctrine of defensive collateral estoppel may be applied "regardless of whether defendant was privy to the prior suit . . . ." Silva v. State, 1987-NMSC-107, ¶ 11, 745 P.2d at 384. The Jones and Long Defendants, by intervening, became parties to the 2009 State Court Proceeding and, therefore, the first element is met.

The second Shovelin element is met, because the causes of action between the case before the Court and the 2009 State Court Proceeding are different. In the 2009 State Court Proceeding, Mayer brought the following claims: trespass to land and chattels, negligence per se, and petition for temporary and permanent injunction. See Motion at 11. In this federal question action, Mayer alleges state law negligence per se, civil conspiracy, and intentional infliction of emotional distress claims against the Jones and Long Defendants. See Motion at 11. The Jones and Long Defendants

allege that, although Mayer alleges negligence per se in both the state and the federal actions, in the State Complaint, she alleges negligence per se against Smith, and not against the Jones and Long Defendants. See Motion at 11. The Court agrees that, considering the different state law claims in each proceeding, asserted against different defendants, the causes of action are different. See City of Santa Fe v. Velarde, 1977-NMSC-040, ¶¶ 5-7, 564 P.2d at 1328 (stating that, unless causes of action in two cases are identical in all respects, parties are precluded from relitigating only the ultimate issues and facts shown to have been actually and necessarily determined in the first litigation, and concluding that, even with identical parties and similar or identical subject matter, causes of action may be different if different claims are asserted).

The third and fourth elements under Shovelin are that the issue was actually litigated and necessarily determined. The Jones and Long Defendants contend that whether they trespassed on Mayer's land "was already litigated in the 2009 State Court Proceeding," and that because the state district court and the Court of Appeals of New Mexico determined the easement is valid, "there could be no 'trespass,' or 'negligence per se' resulting from any such 'trespass.'" Motion at 12 (quoting Complaint ¶ 52, at 7). The state district court concluded, following a 2012 bench trial, that there exists a valid easement appurtenant[36] over Mayer's property, servicing a dominant estate owned by the Long Defendants. See Second Judicial District Judgment at 2. Judge Campbell

---

[36]An easement appurtenant "is an easement that benefits one parcel of land, known as the dominant estate, to the detriment of another parcel of land, known as the servient estate. Easements appurtenant are attached to the land and are transferred automatically when the servient or dominant tenement is sold to a new owner." Easements, Justia, https://www.justia.com/real-estate/docs/easements/ (last visited Dec. 12, 2018).

concluded that the easement was intended for household purposes, and historically restricted to occasional use as a hiking and vehicle trail. See Second Judicial District Judgment at 2. Judge Campbell concluded that the Long Defendants have no authority to expand the historic use, boundaries or "existing cleared portion of the easement." Second Judicial District Judgment at 2. Judge Campbell ordered that Mayer's fence along the tree line within the easement remain. See Second Judicial District Judgment at 2. Judge Campbell also concluded that Mayer has the right to restrict use of the easement to anyone outside of the dominant estate, using reasonable means. See Second Judicial District Judgment at 2-3. On appeal, the Court of Appeals of New Mexico reversed the state district court's decision and remanded the case for further proceedings consistent with the opinion. See 2015 Court of Appeals Opinion at 2. The Court of Appeals of New Mexico examined the property history and determined that the Jones Defendants owned the dominant estate at the time of the easement's purchase, and subsequently sold a portion of the estate to the Long Defendants. See 2015 Court of Appeals Opinion at 4-5. The Court of Appeals of New Mexico determined that the easement remained "the only vehicular access to Tract 5B, which Jones still owns." 2015 Court of Appeals Opinion at 5. The Court of Appeals stated that, on appeal, "neither party attacks the validity of the original twenty-foot easement." 2015 Court of Appeals Opinion at 5. Accordingly, the Court of Appeals of New Mexico treated the easement's existence and terms as facts on appeal. See 2015 Court of Appeals Opinion at 5. The Court of Appeals of New Mexico determined that a twenty-foot easement is unambiguously reserved for the Jones and Long Defendants' use. See 2015 Court of Appeals Opinion at 9. The state district court and the Court of Appeals of New Mexico necessarily determined the issue of the easement's

validity, and its terms and ownership to determine that Mayer must remove the fence within the easement. See Silva v. State, 1987-NMSC-107, ¶ 10, 745 P.2d at 384 (determining that issue preclusion does not apply when the ultimate fact issues are different). The Court of Appeals of New Mexico "remanded for proceedings consistent with this Opinion regarding the fate of the trees within the fence, and other such matters as may be required by this Opinion." 2015 Court of Appeals Opinion at 24.

Although the four Shovelin elements are met, to "give rise to estoppel, the finding of ultimate facts in the prior action must have been final." Silva v. State, 1987-NMSC-107, ¶ 7, 745 P.2d at 382. See id. at 387 ("Moreover, the doctrine of collateral estoppel can only be invoked where a final judgment has been entered."). Here, there is no final judgment.[37]  In the Order

---

[37]The Court recognizes that some of the Supreme Court of New Mexico's articulations of collateral estoppel's elements under New Mexico law omit the final judgment requirement. See, e.g., Shovelin, 1993-NMSC-015, ¶ 10, 850 P.2d at 1000. The Jones and Long Defendants contend that New Mexico's collateral estoppel test differs from federal collateral estoppel, because New Mexico collateral estoppel does not require a final judgment. See Tr. at 7:10-13 (Dow). The Court notes, however, that several Supreme Court of New Mexico decisions employ "final judgment," Silva v. State, 1987-NMSC-107, ¶¶ 59-60, 745 P.2d at 391or "final adjudication on the merits," Shovelin, 1993-NMSC-015, ¶ 10, 850 P.2d at 1000, in enumerating the requirements for collateral estoppel's application under New Mexico law.  In Shovelin, the Supreme Court of New Mexico cites to Silva v. State, 1987-NMSC-107, 745 P.2d 380, in which the Supreme Court of New Mexico states: "The rules of res judicata are applicable when a final judgment has been entered. . . . Collateral estoppel also applies only where there has been a final judgment."  1987-NMSC-107, ¶¶ 59-60, 745 P.2d at 391.  See also City of Santa Fe v. Velarde, 1977-NMSC-040, ¶ 9, 564 P.2d at 1328 (referencing as a collateral estoppel requirement a "prior final decision"); Atencio v. Vigil, 1974-NMSC-034, ¶ 8, 521 P.2d 646, 648 (referencing a "judgment on the merits" as a requirement for both res judicata and collateral estoppel); Miller v. Miller, 1971-NMSC-104, ¶ 13, 490 P.2d 672, 676 (holding that, in the context of collateral estoppel and res judicata, "parties to a suit and their privies are bound by final decisions" and later using the term "final judgment"); C & H Constr. & Paving Co. v. Citizens Bank, 1979-NMCA-077, ¶ 27, 597 P.2d 1190, 1200 ("It

Vacating Judgment, the state district court stated that "the current status of the case is confusing and uncertain, . . . ." Order Vacating Judgment at 2. The state district court denied the Motion for Order to Show Cause, concluding that it "depends entirely on a valid and enforceable Amended Judgment having been entered, which does not exist." Order Vacating Judgment at 2. Following the Order Vacating Judgment, the Jones and Long Defendants filed the Motion to Enter Amended Judgment. See Motion to Enter Amended Judgment at 1. Then, on April 17, 2017, the Second Judicial District Court denied the Motion to Enter Amended Judgment, "because the Court of Appeals remanded this matter for further proceedings and some issues have yet to be determined." Dist. Ct. MOO at 1. The Dist. Ct. MOO states: "Intervenors move for entry of a final judgment and order on the Court of Appeals mandate filed October 13, 2015. The motion is denied because the Court of Appeals remanded this matter for further proceedings and some issues have yet to be determined." Dist. Ct. MOO at 1. The Dist. Ct. MOO set the matter "for a continuation of the bench trial that was truncated by the improper granting of a dismissal in Plaintiff's favor." Dist. Ct. MOO at 2. The Dist. Ct. MOO denied entry of a final judgment and concluded that the 2015 Court of Appeals Opinion left issues to be determined on remand to the state district court. Dist. Ct. MOO at 2. Unlike the Securities and Exchange Commission ("SEC") case in United States v. Rogers, which was "adjudicated on the merits, and affirmed by the Ninth Circuit, . . . thus

---

is well established that the doctrines of res judicata and collateral estoppel apply only to final judgments."). Although some Supreme Court of New Mexico decisions do not list a final judgment among the requirements for collateral estoppel's application, the Court concludes that the Supreme Court of New Mexico has consistently concluded that there must be a final judgment for collateral estoppel to apply.

finalizing the SEC action," the 2015 Court of Appeals Opinion did not finalize Mayer's action.

United States v. Rogers, 960 F.2d at 1509.

Under New Mexico law, "an order or judgment is not considered final unless all issues of law and

fact have been determined and the case disposed of by the trial court to the fullest extent possible."

Exec. Sports Club, Inc. v. First Plaza Tr., 1998-NMSC-008 ¶ 5, 957 P.2d 63, 65 (internal quotation

marks omitted)(quoting B.L. Goldberg & Assocs. v. Uptown, Inc., 1985-NMSC-084 ¶ 3, 705 P.2d

683, 684). "However, this rule is neither absolute nor inflexible." Exec. Sports Club, Inc. v. First

Plaza Tr., 1998-NMSC-008 ¶ 5, 957 P.2d at 65. The Supreme Court of New Mexico has

specifically addressed situations in which an order "practically dispose[s] of the merits of the

action" even though further proceedings are necessary "to carry the order into effect." Foster v.

Addington, 1944-NMSC-029 ¶ 7, 148 P.2d 373, 374. The Supreme Court of New Mexico has

stated:

> We probably can do little better than to propose the following guidelines, which may answer some but undoubtedly will not answer all of the difficult questions falling into the twilight zone. Where a judgment declares the rights and liabilities of the parties to the underlying controversy, a question remaining to be decided thereafter will not prevent the judgment from being final if resolution of that question will not alter the judgment or moot or revise decisions embodied therein. *See Budinich* [v. Becton Dickinson and Co.], 486 U.S. [196,] 199 [(1988)] . . . . Where a postjudgment request, such as one for attorney's fees, raises issues "collateral to" and "separate from" the decision on the merits, such a request will not destroy the finality of the decision, *see id.* at 199-200 . . . ; proceedings to carry out or give effect to the judgment do not render the judgment nonfinal, because the trial court always retains jurisdiction to enforce its unsuperseded judgment, *see Prudential Ins. Co. of America v. Anaya*, [1967-NMSC-132 ¶ 34,] 78 N.M. at 107, 428 P.2d at 646; *Armijo v. Pettit*, [1930-NMSC-018 ¶ 2,] 34 N.M. at 561, 286 P. at 828.

Kelly Inn No. 102, Inc. v. Kapnison, 1992-NMSC-005 ¶ 21, 824 P.2d 1033, 1040. The Jones and

Long Defendants aver that, in New Mexico, a dismissal made under N.M.R.A. 1-041(B) "operates as an adjudication upon the merits." Motion at 8 (quoting N.M.R.A. 1-041(B)).[38] Here, however, although Judge Campbell entered a directed verdict, pursuant to N.M.R.A. 1-041(B) after the 2012 bench trial, see Second Judicial District Judgment, the Court of Appeals of New Mexico reversed Judge Campbell's judgment regarding the scope of the easement and the ownership of the dominant estate, see 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶¶ 34-35, 350 P.3d at 1200. The Court of Appeals of New Mexico did not enter a judgment, but instead remanded the case to the district court, which, as described above, entered a judgment which was later vacated. See 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 36, 350 P.3d at 1200-01; October Amended Judgment at 1; Order Vacating Judgment at 2. Accordingly, there is no final

---

[38]The full text of N.M.R.A. 1-041(B) states:

**Involuntary Dismissal; Effect Thereof.** For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 1-052 NMRA. Unless the court in its order for dismissal otherwise specifies, a dismissal under this paragraph and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 1-019 NMRA, operates as an adjudication upon the merits.

N.M.R.A. 1-041(B).

adjudication on the merits in the form of a final judgment, as the Supreme Court of New Mexico

requires, see supra n.36, in the pending state court case.

Under New Mexico law-of-the-case doctrine, the 2015 Court of Appeals Opinion is not a

final judgment for the purposes of collateral estoppel. The Supreme Court of New Mexico stated

the theory underlying the law-of-the-case doctrine as follows:

> The doctrine of the law of the case is not a rule to which we are bound by any legislative enactment. In so far (sic) as we are bound, it is because we have so bound ourselves, or choose so to bind ourselves by our decisions. By those courts which refuse, under some circumstances, to be bound by it, it is pointed out that when we conclude that a former decision is erroneous, and we still have the opportunity to correct it as affecting those parties whose interests are concerned in the original ruling, we should apply the law of the land rather than the law of the case. . . . [W]e feel that it is better and more just to apply in this case what we find to be the law of the land. As affects the parties concerned, the evil effects of so doing are trivial as compared to the unfortunate consequences of perpetuating the error.

Reese v. State, 1987-NMSC-110, ¶ 4, 745 P.2d 1153, 1154 (internal quotation marks

omitted)(quoting Farmers' State Bank v. Clayton Nat'l Bank, 1925-NMSC-026 ¶ 24, 245 P. 543,

548). The Supreme Court of New Mexico went on to state its agreement

with the majority understanding of the doctrine of the law of the case, which has been stated as follows:

> [S]ince the doctrine of the law of the case is merely one of practice or court policy, and not of inflexible law, so that appellate courts are not absolutely bound thereby, but may exercise a certain degree of discretion in applying it, there are many holdings in which the courts have retreated from any inflexible rule requiring the doctrine to be applied regardless of error in the former decision, and it has been said that the doctrine should not be utilized to accomplish an obvious injustice, or applied where the former appellate decisions was clearly, palpably, or manifestly erroneous or unjust.

5 Am. Jur.2d *Appeal and Error* § 750 at 194 (1962).

Reese v. State, 1987-NMSC-110, ¶ 5, 745 P.2d at 1155.  Although the Dist. Ct. MOO concludes

that the 2015 Court of Appeals Opinion establishes that the "Plaintiff's fence, which is inside the

twenty-foot easement, is encroaching and must be removed," Dist. Ct. MOO at 2, the Dist. Ct.

MOO states that the 2015 Court of Appeals Opinion "did not determine the fate of the trees within

Plaintiff's fence nor did the Court of Appeals determine whether the dominant estate holders [ -

- the Jones and Long Defendants -- ] have subjected the servient estate [ -- Mayer's estate -- ] to

an additional burden not contemplated by the grant of easement," Dist. Ct. MOO at 2.  Another

New Mexico appellate court could determine that the 2015 Court of Appeals Opinion's conclusion

that the fence is within the twenty-foot easement was erroneous, and could issue a different ruling,

because no final judgment has yet been entered in the case, and law-of-the-case doctrine in New

Mexico allows courts to deviate from the law of the case "if to apply the doctrine would result in

a manifest injustice."  Reese v. State, 1987-NMSC-110, ¶ 6, 745 P.2d at 1155.[39]  The 2015 Court

_____

[39]Although the Supreme Court of New Mexico states that prior appellate court decisions
bind subsequent appellate courts under the law-of-the-case doctrine, see State ex rel. King v. UU
Bar Ranch Ltd. P'ship, 2009-NMSC-010, ¶ 21, 205 P.3d at 820, the Supreme Court of New
Mexico also states that the doctrine is "discretionary and flexible," Trujillo v. City of Albuquerque,
1998-NMSC-031, ¶ 41, 965 P.2d at 316, and is not a doctrine "of inflexible law,"  Reese v. State,
1987-NMSC-110, ¶ 5, 745 P.2d at 1155.  Subsequent appellate courts may revisit the decisions of
prior appellate courts "if to apply the doctrine would result in a manifest injustice."  Reese v. State,
1987-NMSC-110, ¶ 6, 745 P.2d at 1155.  Unlike New Mexico, other states adopt a less flexible
formulation of law-of-the-case doctrine.  See, e.g., State v. Collier, 952 P.2d 1326, 1329 (Kan.
1998)(stating that law of the case, while not entirely inflexible, "must be adhered to where the
question is one of great doubt, has been thoroughly considered, and is one whose decision involves
no serious injury to general rights.");  Bartlett v. Davis Corp., 547 P.2d 800, 802 (Kan.
1976)("[W]hen a second appeal in the same action is brought to this court, the first decision is the
law of the case on all questions involved and decided in the first appeal and such questions will
not be reconsidered.").  In New Mexico, because of the doctrine's discretionary nature, see Trujillo

of Appeals Opinion is not binding on New Mexico courts, nor is it a final judgment to which the Court may grant preclusive effect for collateral estoppel purposes.

Even under the federal test for collateral estoppel, the Jones and Long Defendants are not entitled to issue preclusion regarding trespass. The first factor is whether the issue presented is identical with the issue previously decided. See United States v. Rogers, 960 F.2d at 1508. The trespass issue is the same as the issue that the Court of Appeals of New Mexico previously addressed. In the present case, Mayer asserts that the Jones and Long Defendants "entered upon the lands of Ms. Mayer without her permission" in violation of N.M. Stat. Ann. § 30-14-1(D), the trespass statute. Complaint ¶¶ 53-54, at 7. The Court of Appeals of New Mexico concludes that the "language granting the easement is unambiguous," and that the easement belongs to the Jones, their heirs, and assigns. Motion at 5-6 (quoting Dist. Ct. MOO at 1-2). The Court of Appeals of New Mexico treated the validity of the easement and of its terms as an easement appurtenant as facts on appeal, because neither party challenged them on appeal. See 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 6, 350 P.3d at 1194. The Court of Appeals of New Mexico concluded that the Jones and Long Defendants, the dominant estate holders, must have access to the easement's full twenty feet. See 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 19, 350 P.3d at 1197. Mayer alleges that the Jones and Long Defendants entered her property without

_____

v. City of Albuquerque, 1998-NMSC-031, ¶ 41, 965 P.2d at 316, appellate courts may conceivably revisit an issue until entry of a final judgment. Although it is unlikely any appellate court will revisit these issues, or even that the parties will contest these issues at any trial, that there is a possibility of reconsideration precludes the Court from holding them as preclusive in this case. If the state court decision becomes final, the Jones and Long Defendants may ask the Court to revisit the issue.

notice, intending to cut the easement's trees.  See Complaint ¶ 28, at 4.  Although the Complaint does not further clarify whether the Jones and Long Defendants entered part of Mayer's property not included in the easement, the claims Mayer asserts against the Jones and Long Defendants relate to actions taken on the easement.  Because the Court of Appeals of New Mexico concluded that the easement belongs to the Jones and Long Defendants, the identical issue of trespass has been decided.

The second factor is whether the prior action has been finally adjudicated on the merits. See United States v. Rogers, 960 F.2d at 1508.  "Adjudication on the merits requires that the adjudication be necessary to the judgment."  Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation, 975 F.2d at 687 (citing Block v. Comm'rs, 99 U.S. 686, 693 (1878)("[A] judgment of a court of competent jurisdiction is [as between the parties or their privies] everywhere conclusive evidence of every fact upon which it must necessarily have been founded.")).  After the 2012 bench trial, Judge Campbell granted Mayer's motion for a directed verdict, see Second Judicial District Judgment, and concluded that Mayer's is the servient estate, the Longs' estate is the dominant estate, and the easement is historically restricted to "occasional use as a hiking trail . . . and restricted use (2 to 3 times a year) as a vehicle trail for the cutting and collecting of firewood on their property."  Second Judicial District Judgment ¶¶ 2-4, at 2.  Judge Campbell concluded that the dominant estate belongs to the Longs.  See Second Judicial District Judgment ¶ 3, at 2.  The Jones and Long Defendants appealed Judge Campbell's directed verdict to the Court of Appeals of New Mexico, and the Court of Appeals of New Mexico issued a final decision on March 2, 2015.  See generally 2015 Court of Appeals Opinion, 2015-NMCA-060, 350 P.3d 1191.

"On appeal, neither party attacks the validity of the original twenty-foot easement. Similarly, both parties agree that the easement is appurtenant. We therefore treat the validity and terms of the appurtenant easement as fact on appeal." 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 6, 350 P.3d at 1194. The Court of Appeals of New Mexico determined that "there is an unambiguous reservation of a twenty-foot easement" over Mayer's land. 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 12, 350 P.3d at 1195. The Court of Appeals of New Mexico concluded that "[b]oth Intervenors own the dominant estate and possess the right of ingress and egress for household and non-commercial purposes over the easement." 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 36, 350 P.3d at 1200. In the 2015 Court of Appeals Opinion, the Court of Appeals of New Mexico determined that Mayer's land is subject to a valid, twenty-foot easement belonging to the Jones and Long Defendants. See 2015 Court of Appeals Opinion, 2015-NMCA-060, ¶ 36, 350 P.3d at 1200. Determining the easement's validity and ownership was necessary to the Court of Appeals' decision that Mayer needed to remove her fence from the easement.

Although, because the second requirement is not met, Mayer is not collaterally estopped from relitigating the easement's existence and the Court may end its analysis at this point, the Court briefly addresses the third and fourth factors. The third factor is whether Mayer, the party against whom the doctrine of collateral estoppel is invoked, was a party or in privity with a party to the prior adjudication. The "Supreme Court generally holds that collateral estoppel does not apply to nonparties in the prior action." Keller Tank Servs. II, Inc. v. Comm'r of Int. Rev., 854 F.3d 1178, 1193 (10th Cir. 2017)(citing Taylor v. Sturgell, 553 U.S. 880, 893 (2008)). Mayer is a party in this federal case and is a party in the 2009 State Court Proceeding. Accordingly, the third

factor is satisfied.  Fourth, the party against whom the doctrine is raised, Mayer, must have had a full and fair opportunity to litigate the issue of the easement's validity in the prior action.

> The inquiry into whether a party had a full and fair opportunity to litigate an issue "[o]ften . . . will focus on whether there were significant procedural limitations in the prior proceedings, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties."

Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation, 975 F.2d at 689 (quoting SIL-FLO, Inc. v. SFHC, Inc., 917 F.2d 1507, 1521 (10th Cir. 1990)).  After considering these factors, the Court concludes that the fourth requirement for collateral estoppel is met.  The state district court reached the issue of the easement's validity.  Mayer, and the Long and Jones Defendants filed witness lists, Mayer filed proposed findings of facts and conclusions of law, the Jones and Long Defendants filed proposed judgments, the state district court entered a judgment, and the Jones and Long Defendants appealed that judgment to the Court of Appeals of New Mexico.  See Motion at 12.  The Jones and Long Defendants assert that a surveyor conducted a boundary survey, identified survey markings and property corners, and produced a map which the Jones and Long Defendants presented at the 2012 bench trial.  See Response at 3.  The Jones and Long Defendants contend that Mayer "did not present any documentation or provide any surveys of her own property to dispute the boundaries presented by the Jones Defendants."  Response at 3.  The Jones and Long Defendants assert that "[t]he court accepted the boundary survey into evidence, did not require the parties to conduct a survey, and made a decision based on the boundary survey provided by the Jones Defendants."  Response at 3.  The Court has not identified any limitations, procedural or otherwise, on Mayer's ability to litigate the easement's validity, and the Court is certain that Mayer

had an incentive to litigate the issue. Because there is no final judgment in the state court proceeding, the Court concludes that Mayer is not collaterally estopped from raising the issue of the easement's validity under either New Mexico or federal law.[40]

## II. BECAUSE MAYER IS NOT COLLATERALLY ESTOPPED FROM LITIGATING THE EASEMENT'S VALIDITY, HER COMPLAINT STATES A PLAUSIBLE CLAIM FOR RELIEF AGAINST THE JONES AND LONG DEFENDANTS.

Mayer asserts the following claims against the Jones and Long Defendants: (i) negligence per se for intentionally entering Mayer's property, and damaging and destroying her trees, see Complaint ¶ 53, at 7; (ii) civil conspiracy for conspiring to achieve economic and strategic goals benefiting the Defendants and their co-conspirators to Mayer's harm and detriment, see Complaint ¶¶ 62-66, at 8-9; and (iii) intentional infliction of emotional distress for intentionally or recklessly causing Mayer extreme, severe, and continuous mental distress, see Complaint ¶¶ 67-72, at 9. The Jones and Long Defendants argue that Mayer's negligence per se, civil conspiracy, and intentional infliction of emotional distress claims fail, because the Jones and Long Defendants had a legal right to be on the easement. See Motion at 14.

The Jones and Long Defendants assert that Mayer grounds her negligence per se claim against them in their alleged violation of the New Mexico trespass statute in N.M. Stat. Ann. § 30-14-1 (D). See Motion at 14 (citing Complaint ¶ 54, at 7). The Jones and Long Defendants argue that, because they were not "upon the lands of another without prior permission," Mayer cannot sustain her negligence per se claim against them. Motion at 15 (quoting N.M. Stat. Ann. § 30-14-

---

[40]If the 2009 State Court Proceeding case ends with a final judgment while this case is pending, the Defendants are free to ask the Court to revisit the collateral estoppel issue.

1(D)). Mayer alleges that the Jones and Long Defendants violated N.M. Stat. Ann. § 30-14-1.1(D), which states:

> In the event any person enters upon the lands of another without prior permission and injures, damages or destroys any part of the realty or its improvements, including buildings, structure, trees, shrubs or other natural features, he shall be liable to the owner, lessee or person in lawful possession for damages in an amount equal to double the amount of the appraised value of the damage of the property injured or destroyed.

Complaint ¶ 54, at 7-8 (quoting N.M. Stat. Ann. § 30-14-1.1(D)). New Mexico Uniform Civil Jury Instruction UJI 13-1501 provides that, to support a finding of negligence per se, a plaintiff must show a defendant violated a specific statute. See N.M.R.A. Civ. UJI 13-1501. Here, the state district court and the Court of Appeals of New Mexico's rulings establish that Jones and Long Defendants had a valid easement over Mayer's property, and the trees they cut were within that easement. See, e.g., Complaint ¶ 28, at 4 (alleging that the Jones and Long Defendants entered Mayer's property without notice, intending to cut the trees on the easement). However, as discussed in Part I of the Analysis, the 2015 Court of Appeals Opinion is not a final judgment, and on appeal a second time, the Court of Appeals of New Mexico could reexamine the easement's existence in the state court proceeding and, therefore, the parties are not collaterally estopped from relitigating it in this case.[41] The Court concludes, therefore, that the Jones and Long Defendants could, based on the Complaint's allegations and the documents of which the Court has taken

---

[41]The Court finds it unlikely that the parties will relitigate whether the easement exists or is twenty-feet in width. It is more likely that the parties' ongoing dispute will center on questions such as where exactly the easement is located, and whether the Jones and Long Defendants entered Mayer's property outside of the easement, or remained within the easement, when Mayer initially called the BCSO for assistance.

judicial notice, have "enter[ed] upon the lands of another without prior permission," pursuant to N.M. Stat. Ann. § 30-14-1.1(D). To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. See Bell Atl. Corp. v. Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d at 1000. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556). Accepting all well-pleaded factual allegations as true, viewing those allegations in the light most favorable to the non-moving party, and drawing all reasonable inferences in the plaintiff's favor, the Court concludes that Mayer has stated a claim for relief under negligence per se that is plausible on its face. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322.

The Jones and Long Defendants assert that, to sustain a civil conspiracy claim under New Mexico law, Mayer must show: "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." Motion at 15 (quoting Ettenson v. Burke, 2001-NMCA-003, ¶ 12, 17 P.3d at 445). The Jones and Long Defendants argue that Mayer fails to show a conspiracy among the Jones and Long Defendants, and the Bernalillo County Defendants, when the BCSO arrived on the property only in response to Mayer's call, that Mayer fails to provide "specific wrongful acts" done pursuant to the alleged conspiracy, and that Mayer fails to show that those acts damaged her. Motion at 15 (quoting Ettenson v. Burke, 2001-NMCA-003, ¶ 12, 17 P.3d at 445). The Jones and Long Defendants assert that, while they cut the trees on

the easement, they did not remove them, and so Mayer cannot assert that they performed a wrongful act. See Motion at 16.

Under New Mexico law, civil conspiracy is not an independent claim and is actionable only if "a civil action in damages would lie against one of the conspirators, if the act was done by him alone." Armijo v. Nat'l Sur. Corp., 1954-NMSC-024, ¶ 30, 268 P.2d at 347. "Generally, to state a cause of action for conspiracy, the complaint must allege: (1) the existence of the conspiracy; (2) the wrongful act or acts done pursuant to the conspiracy, and (3) the damage resulting from such act or acts." Las Luminarias of the N.M. Council of the Blind v. Isengard, 1978-NMCA-117, ¶ 5, 587 P.2d 444, 447.[42] "The existence of the conspiracy must be pled either by direct allegations or by allegation of circumstances from which a conclusion of the existence of a conspiracy may be reasonably inferred." Las Luminarias of the N.M. Council of the Blind v. Isengard, 1978-NMCA-117, ¶ 5, 587 P.2d at 447 (citing 16 Am. Jur. 2d Conspiracy § 58 (1964)). In her Complaint, Mayer alleges that the "Defendants acted in concert and conspired with one

---

[42]The Court is confident that, if presented with the issue, the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico's statement of the elements of a civil conspiracy claim in Las Luminarias of the N.M. Council of the Blind v. Isengard. The Court bases its prediction on the observation that numerous Court of Appeals of New Mexico cases have relied on the statement of the law regarding sufficient pleading of a civil conspiracy claim in Las Luminarias of the N.M. Council of the Blind v. Isengard. See, e.g., Valles v. Silverman, 2004-NMCA-019, ¶ 28, 84 P.3d 1056, 1064, cert. denied, Valles v. Walmart, 2004-NMCERT-001, 85 P.3d 802 (Table). In the nearly 41 years since the Court of Appeals of New Mexico issued its opinion in Las Luminarias of the N.M. Council of the Blind v. Isengard, the Supreme Court of New Mexico has not overruled it and, while the Court declines to read too much into a denial of certiorari or a failure to comment, the Court notes that the Court of Appeals of New Mexico has relied on Las Luminarias of the N.M. Council of the Blind v. Isengard numerous times in the past 41 years.

another and others to achieve economic and strategic goals that benefited Defendants and their co-conspirators to the detriment and harm of Plaintiff," and that she "suffered damages as a result of Defendants' conspiracy." Complaint ¶¶ 63-64, at 8-9. Although Mayer asserts the claim against all Defendants, Mayer does not clearly identify the timeframe in which the conspiracy allegedly took place or even the specific objects of the alleged conspiracy. See Bell Atl. Corp. v. Twombly, 550 U.S. at 565 n.10. See also MEI Tech., Inc. v. Detector Networks Int'l, LLC, No. CIV 09-0425 RB/LFG, 2009 WL 10665560, at *4 (D.N.M. July 6, 2009)(Brack, J.). Taking the factual allegations in the light most favorable to Mayer, the independent, unlawful act upon which to predicate her claim of civil conspiracy might be the Jones and Long Defendants' alleged negligence per se, see Complaint ¶ 62, at 8, or the BCSO's arrival at her property in "such large numbers to frighten and intimidate her," see Complaint ¶ 45, at 6. Although Mayer does not clarify what the alleged civil conspiracy's timeframe is or its specific objects, Mayer has alleged the existence of the conspiracy, wrongful acts done pursuant to it, and damage resulting from those acts. The Court concludes that Mayer has stated a claim for civil conspiracy.

### III. MAYER'S COMPLAINT DOES NOT STATE A PLAUSIBLE INTENTIONAL-INFLICTION-OF-EMOTIONAL-DISTRESS CLAIM AGAINST THE JONES AND LONG DEFENDANTS.

Mayer does not state a claim for intentional infliction of emotional distress upon which relief may be granted. The Jones and Long Defendants argue that Mayer's claim against them for intentional infliction of emotional distress fails, because Mayer cannot show reckless or intentional conduct on their part, when the Jones and Long Defendants had a right to be on and use the easement. See Motion at 16-17. The Jones and Long Defendants also argue that "there is

insufficient evidence to support the view that any alleged emotional distress experienced by Plaintiff due to the Jones/Long Defendants' actions was severe." Motion at 17. Mayer asserts that the Defendants' conduct was extreme and outrageous, that they intentionally or recklessly caused her emotional distress, and that her distress, which the Defendants' conduct caused, was extreme, severe and continuing. <u>See</u> Complaint ¶¶ 67-71, at 9. "Extreme and outrageous conduct is . . . conduct 'beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Sanders v. Lutz</u>, 1989-NMSC-076, ¶ 18, 784 P.2d 12, 15 (quoting <u>Restatement (Second) of Torts</u>, <u>supra</u> § 46). "Mere provocation, without more, is inadequate, no matter how unjustified." <u>Sanders v. Lutz</u>, 1989-NMSC-076, ¶ 18, 784 P.2d at 15. "To recover for the intentional infliction of emotional distress, it must be shown that the party's conduct was extreme and outrageous and was done with the intent to cause severe emotional distress." <u>Sanders v. Lutz</u>, 1989-NMSC-076, ¶ 18, 784 P.2d at 15. Even accepting as true all well-pleaded factual allegations in the complaint, viewing those allegations in the light most favorable to the non-moving party, and drawing all reasonable inferences in Mayer's favor, the Court sees no facts to suggest that the Jones and Long Defendants intended to cause Mayer severe emotional distress, when the Jones and Long Defendants believed they entered an easement that they owned, after litigating the issue against Mayer in the New Mexico courts. Moreover, even if the Jones and Long Defendants intended to cause Mayer severe emotional distress, their action of cutting Mayer's trees is not extreme and outrageous. The conduct here falls well below the rare

circumstances in which the New Mexico courts have recognized the cause of action.[43]  Mayer has failed to state a claim for intentional infliction of emotional distress upon which relief can be granted.

The Court concludes that: (i) the Court will take judicial notice of the contents of the documents attached to the Motion and listed in the Request, while being careful not to take judicial notice of the statements in the documents for the truth of the matters asserted therein; (ii) New Mexico law applies, and under New Mexico law, Mayer is not collaterally estopped from relitigating the easement's existence; and (iii) Mayer's Complaint states negligence per se and civil conspiracy claims against the Jones and Long Defendants, but does not state a claim for intentional

---

[43]The Supreme Court of New Mexico has stated: "Most of the intentional infliction of emotional distress cases in New Mexico have involved [formal legal] relationships," such as employer-employee relationships.  Baldonado v. El Paso Nat. Gas Co., 2008-NMSC-005, ¶ 29, 176 P.3d at 294.  The Supreme Court of New Mexico listed the following cases:

> See, e.g., Trujillo [v. N. Rio Arriba Elec. Co-op, Inc.], 2002-NMSC-004, ¶¶ 1-2, 131 N.M. 60, 41 P.3d 333 (employer-employee and Human Rights Act); Coates v. Wal-Mart Stores, Inc., 1999-NMSC-013, ¶ 1, 127 N.M. 47, 976 P.2d 999 (employer-employee and Workers' Compensation Act); Jaynes v. Strong-Thorne Mortuary, Inc., 1998-NMSC-004, ¶ 13, 124 N.M. 613, 954 P.2d 45 (contract for burial); Sanders v. Lutz, 109 N.M. 193, 194, 784 P.2d 12, 13 (1989)(agreement granting easement); Newberry v. Allied Stores, Inc., 108 N.M. 424, 425, 773 P.2d 1231, 1232 (1989)(employer-employee); Silverman v. Progressive Broad., Inc., 1998-NMCA-107, ¶ 1, 125 N.M. 500, 964 P.2d 125 (employer-employee and federal Civil Rights Act); Stock v. Grantham, 1998-NMCA-081, ¶¶ 1, 22, 125 N.M. 564, 964 P.2d 125 (employer-employee and Human Rights Act); Stieber v. Journal Publ'g Co., 120 N.M. 270, 271, 901 P.2d 201, 202 (Ct. App. 1995)(employer-employee); Hakkila [v. Hakkila], 112 N.M. [172,] 173, 812 P.2d [1320,] 1321 (husband-wife); Dominguez [v. Stone], 97 N.M. [211,] 212, 638 P.2d [423,] 424 (employer-employee and Human Rights Act).

Baldonado v. El Paso Nat. Gas Co., 2008-NMSC-005, ¶ 29, 176 P.3d at 294.

infliction of emotional distress. Concluding that Mayer has stated claims against the Jones and Long Defendants upon which relief may be granted, the Court does not dismiss the Jones and Long Defendants from the case. The Court grants the Request and grants the Motion to Dismiss in part.

**IT IS ORDERED** that: (i) the Jones and Long Defendants' First Amended Request for Judicial Notice in Support of Their Motion to Dismiss, filed September 21, 2018 (Doc. 30), is granted; and (ii) the requests in the Motion to Dismiss by Defendants Marilyn Jones, Gary Jones, Robert Long, Stephanie Long, and Nathaniel Jones [sic] and Memorandum In Support, filed September 21, 2018 (Doc. 31), are granted in part and denied in part; and (iii) the Court dismisses Plaintiff Jenika Mayer's claim in her Complaint for Negligence Per Se, Civil Conspiracy, Intentional Infliction of Emotional Distress, Violation of New Mexico Tort Claims Act, and the Fourteenth Amendment of the U.S. Constitution ¶ 1, at 1, filed in federal court December 24, 2018 (Doc. 45), against the Jones and Long Defendants for intentional infliction of emotional distress.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alex Chisholm
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

Patrick Trujillo
Sandoval County
Bernalillo, New Mexico

-and-

Brandon Huss
Mark L. Drebing
New Mexico Association of Counties
Santa Fe, New Mexico

    *Attorneys for Defendant Bernalillo County*

Mark Dow
Cynthia L. Weisman
Melanie L. Ben
Bauman, Dow, & Stambaugh, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendants Marilyn Jones, Gary Jones, Robert Long, Stephanie Long, and Nathanial Long*